**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

ROBERT V. TOWNES, IV,       )
Individually and on behalf of all    )
Persons similarly situated,      )
                            )
             Plaintiff,    )
                            )
v.                        )    C.A. No.: 04-1488-JJF
                            )
TRANS UNION, LLC and       )
TRUELINK, INC.,          )
                            )
            Defendant,   )
                            )
STEVEN G. MILLETT and     )
MELODY J. MILLETT,       )
Individually and on behalf of all    )
Persons similarly situated,      )
                            )
            Intervenors   )

## BRIEF IN SUPPORT OF MOTION FOR LEAVE TO INTERVENE

Christopher J. Curtin
ERISMAN & CURTIN
DE Bar Id. No. 0226
Erisman & Curtin
629 Mount Lebanon Road
Wilmington, Delaware 19803
Phone: (302) 478-5577
Facsimile: (302) 478-5494
Email: ccurtin659@aol.com

COUNSEL FOR STEVEN G. MILLETT
AND MELODY J. MILLETT, INTERVENORS

FILED:  May 15, 2007

-1-

## TABLE OF CONTENTS

                                                                                    Page

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

NATURE OF THE PROCEEDINGS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

SUMMARY OF ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

     A.     The Townes Complaint. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

     B.     The Millett Complaint. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

     C.     History of Negotiations Regarding a Potential Joint Settlement. . . . . 9

     D.     The Settlement Agreement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

     E.     This Court's Order Granting Preliminary Approval

            of Settlement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

     F.     Status of the Millett Action. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

     A.     The Standard for Intervention of Right. . . . . . . . . . . . . . . . . . . . . . 18

     B.     The Motion to Intervene is Timely. . . . . . . . . . . . . . . . . . . . . . . . . . 20

     C.     The Interests of the Prospective Class Members in the Millett

            Action Are Not Adequately Represented in the Townes Action. . . . 21

     D.     Intervenors Should be Allowed to Intervene as a Matter of Right

            on Behalf of Themselves and all Similarly Situated Persons. . . . . . . 23

**E.**    **The Ability of Class Members to Object at the Fairness Hearing**

**Does Not Provide an Adequate Remedy to the Prospective**

**Class Members in the Millett Action.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . **24**

**CONCLUSION.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **25**

## **TABLE OF AUTHORITIES**

**Cases**                                                                                    **Page**

Brody v. Spang, 957 F.2d 1108 (3rd Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21-22

In re Community Bank of Northern Virginia, 418 F.3d 277 (3rd Cir. 2005). . . . .  19-21, 23

Liberty Mutual Insurance Co. v. Treesdale, Inc., 419 F.3d 216 (3rd Cir. 2005). . .  18-19, 23

McKowan Lowe & Co., Ltd. v. Jasmine, Ltd., 295 F.3d 380 (3rd Cir. 2002). . . . . . . . . . 21

Mountain Top Condominium Assoc. v. Dave Stabbert Master Builder, Inc.,

   72 F.3d 361 (3rd Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Trbovich v. United Mine Workers, 404 U.S. 528 (1972). . . . . . . . . . . . . . . . . . . . . . . 21

United States v. Alcan Aluminum, Inc., 25 F.3d 1174 (1994). . . . . . . . . . . . . . . . . 21-22


**Other Authorities**                                                                        **Page**

FED.R.CIV.P. 24(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## NATURE OF THE PROCEEDINGS

This Brief pertains to the Motion for Leave to Intervene filed by Steven G. Millett and Melody J. Millett ("Intervenors"). Intervenors are filing this Motion in an effort to protect the interests of a class of similarly situated persons in a separate prospective class action that is currently pending in the United States District Court for the District of Delaware before the Honorable Sue L. Robinson.

## SUMMARY OF ARGUMENT

1. Intervenors are entitled to intervene in this action, an behalf of themselves and the class of similarly situated persons that they seek to represent, pursuant to Federal Rule of Civil Procedure 24(a), because the interests of Intervenors and the class that they seek to represent will be significantly impaired and impeded by the settlement that has been proposed by Plaintiff and Defendants in this action.

## STATEMENT OF FACTS

Plaintiff and Defendants in the case of <u>Robert V. Townes, IV v. Trans Union, et al.</u>, Case No. 04-1488-JJF, District of Delaware ("Townes Action"), have entered into a class settlement agreement that has been preliminarily approved by this Court. Intervenors are named plaintiffs in a separate class action, <u>Millett v. Truelink, Inc.</u>, C.A. No. 05-599-SLR, District of Delaware ("Millett Action"). One of the defendants in the Millett Action, Truelink, Inc., is also a defendant in the Townes Action.

Intervenors believe that the interests of the class of persons for whom they seek certification in the Millett Action will be substantially impaired by the class settlement agreement for which this Court has granted preliminary approval. The proposed settlement agreement in the Townes Action defines the scope of the settlement class in an unreasonably broad manner that encompasses the completely separate class that is represented in the Millett Action. Intervenors are concerned that the over broad settlement agreement in the Townes Action will have the effect of permanently eliminating the claims of the Millett class without providing the Millett class with any relief that relates to the specific claims that are at issue in the Millett class action. In short, Intervenors are concerned that the Townes settlement, due to its overly broad language, might have the effect of barring a class of claimants from pursuing their claims in litigation, while affording that class no effective relief under the settlement agreement.

### A.    The Townes Complaint.

The Complaint in the Townes Action ("Townes Complaint") states claims related to credit repair services. The Townes Complaint alleges that each of the Defendants are "credit repair organizations." (D.I. 1; Townes Complaint, ¶ 1, attached hereto as Exhibit A).[1] The Townes Complaint alleges that Defendants "operate in violation of the

---

[1]    Pursuant to Local Rule 7.1.3(a)(F), Intervenors provide docket number references for all court documents cited herein. However, given that this motion discusses two separate actions with separate case numbers, it may be confusing to reference documents by docket number. Therefore, Intervenors are also providing copies of all referenced documents as exhibits to their Motion.

consumer protection provisions of the federal Credit Repair Organizations Act ('CROA')."  (D.I. 1; Townes Complaint, ¶ 1, attached hereto as Exhibit A).

The Plaintiff in the Townes Action purchased services from Defendants "in order to improve his credit record, credit history, and credit rating."  (D.I. 1; Townes Complaint, ¶ 4, attached hereto as Exhibit A).  The services that Plaintiff purchased from Defendants "included identification of specific factors to help the consumer obtain favorable consideration by lenders in evaluating the capacity and creditworthiness of the consumer [and] summaries and explanations of debt and credit scores to enable the consumer to improve his or her score over time."  (D.I. 1; Townes Complaint, ¶ 8, attached hereto as Exhibit A).

The Townes Complaint focuses almost exclusively upon alleged violations of the CROA.  (D.I. 1; Townes Complaint, ¶¶ 1, 10-12, 14-18, 21 and 25-27, attached hereto as Exhibit A).[2]  The Townes Complaint does not contain any references to any services that pertain to protecting consumers from identity theft.

In short, the Townes Complaint focuses solely upon representations that were made and actions that were taken with regard to the provision of **credit repair services**. The services at issue in the Townes Complaint are services offered to improve a person's **credit record, credit history, and credit rating**.  The Townes Complaint alleges that

---

[2]

> The Townes Complaint contains a brief count stating a claim of unjust enrichment.  (D.I. 1; Townes Complaint, ¶¶ 28-30, attached hereto as Exhibit A). However, this count merely seeks reimbursement of the money that was received through the conduct that constituted violations of the CROA.  Furthermore, the Prayer for Relief speaks solely in terms of relief under the CROA.

Defendants' conduct violates the CROA.  The Townes Complaint does not address any services that are intended to provide protection from identity theft, nor state any claims that pertain to the provision of such services.

### B.    The Millett Complaint.

The Fourth Amended Complaint in the Millett Action ("Millett Complaint") states claims relating to services that purport to protect consumers against identity theft.  (D.I. 76; Millett Complaint, attached hereto as Exhibit B).  The Millett Complaint alleges that Truelink sold identity theft protection services under the names Credit Monitoring or Online Credit Monitoring ("Credit Monitoring").  (D.I. 76; Millett Complaint, ¶ 8, attached hereto as Exhibit B).  More specifically, the Millett Complaint alleges that Truelink marketed its services as "[p]rotecting members against identity theft and fraud" and "[a]llowing members to immediately find out about fraudulent activity."  (D.I. 76; Millett Complaint, ¶ 10, attached hereto as Exhibit B).  The Millett Complaint also alleges that Truelink incorporated these same promises into the contract by which it sold Credit Monitoring.  (D.I. 76; Millett Complaint, ¶ 16, attached hereto as Exhibit B).

Count I of the Millett Complaint alleges that Truelink has violated the Kansas Consumer Protection Act in that Truelink has promised to provide identity theft protection services but Truelink has failed to provide the services that were promised or has provided services that were different in content and quality from the services that were promised.  (D.I. 76; Millett Complaint, ¶¶ 33-47, attached hereto as Exhibit B). Count II of the Millett Complaint alleges that Truelink has breached its promise to

provide identity theft protection services in that Truelink has failed to provide the services that were promised.  (D.I. 76; Millett Complaint, ¶¶ 48-53, attached hereto as Exhibit B).

The Millett Complaint also originally contained counts stating claims for violations of the CROA and the Credit Reporting Agencies Act.  However, these counts were voluntarily dismissed by Intervenors on March 5, 2007 because Intervenors did not want to encroach upon the CROA claims being pursued in the Townes Action.  (D.I. 98; Declaration of Michael W. Blanton, ¶ 6, attached hereto as Exhibit E).

In short, the Millett Complaint focuses solely upon representations that were made and actions that were taken with regard to the provision of **_identity theft protection services_**.  The services at issue in the Millett Complaint are services that are offered to protect consumers from identity theft and credit fraud.  The Millett Complaint alleges that Truelink's conduct violates the Kansas Consumer Protection Act and constitutes a breach of contract.  These allegations specifically pertain to the provision of **_identity theft protection services_**.


**C.**    **History of Negotiations Regarding a Potential Joint Settlement.**

Beginning in late 2006, counsel for Intervenors ("Intervenor's Counsel") engaged in negotiations with counsel for the Defendants in the Townes Action ("Defense Counsel") regarding the possibility of a joint settlement agreement that would dispose of both the Townes Action and the Millett Action.  (Declaration of Michael W. Blanton, ¶ 7, attached hereto as Exhibit E).  The contours of these negotiations are substantially described by a series of emails that were exchanged in late January 2007.  (Declaration of

Michael W. Blanton, ¶ 8, attached hereto as Exhibit E; Email Correspondence of January 18, 2007, attached hereto Exhibit E1; Email Correspondence of January 24, 2007, attached hereto as Exhibit E2; Email Correspondence of January 25, 2007, attached hereto as Exhibit E3).

The settlement agreement that was discussed by Intervenor's Counsel and Defense Counsel consisted, among other things, of the following components: (1) in-kind relief for class members consisting of free services of the consumer's choice, (2) addition of language to the contract by which Truelink sells Credit Monitoring to inform the consumer regarding the limited ability of Credit Monitoring to provide identity theft protection, and (3) an injunction that would enjoin the use of certain language in advertising/marketing materials for Credit Monitoring in order to avoid misleading representations regarding the identity theft protection capabilities of Credit Monitoring. (Declaration of Michael W. Blanton, ¶ 9, attached hereto as Exhibit E; Email Correspondence of January 25, 2007, attached hereto as Exhibit E3).

Settlement negotiations between Intervenor's Counsel and Defense Counsel subsequently broke down and Intervenors were not aware that the parties to the Townes Action had reached their own settlement agreement until they received notice of such settlement on May 10, 2007. (Declaration of Michael W. Blanton, ¶ 10, attached hereto as Exhibit E; Notice from Townes Action, attached hereto as Exhibit F). As noted below, that separate settlement agreement addresses the claims raised by the Plaintiffs in the Townes Action but does not address the claims raised by Intervenors in the Millett Action.

D.    **The Settlement Agreement.**

The parties in the Townes Action have entered into a Stipulation of Settlement Between Lead Plaintiff and Defendants ("Settlement Agreement").  The Settlement Agreement provides that it is intended "to fully and finally compromise, resolve, discharge and settle the Released Claims, as defined herein."  (D.I. 66; Settlement Agreement, p. 1, attached hereto as Exhibit C).  The term "Released Parties" is defined to include Truelink, Inc.  (D.I. 66; Settlement Agreement, ¶ 2.21, attached hereto as Exhibit C).

The Settlement Agreement defines the term "Settlement Class" in broad language as follows:

> "Settlement Class" or "Class" means all individuals, regardless of where they reside, who, between December 1, 1999 and the date of entry of the Hearing Order, entered into an agreement with any of the Defendants to purchase any of the Offerings through Defendants' Websites, but did not later obtain a complete refund from any source, and received said Offering.  "Settlement Class" or "Class," however, shall not include: (I) all judicial officers in the United States and their families through third degree of relationship; (ii) all officers, directors, employees or counsel of the Released Parties; (iii) all persons who have already settled or otherwise compromised their claims against the Defendants; (iv) all person who Opt-Out; and (v) all persons who are named plaintiffs in any action pending against any of the Defendants on the date of entry of the Hearing Order wherein the recovery sought is encompassed by the Released Claims.

(D.I. 66; Settlement Agreement, ¶ 2.24, attached hereto as Exhibit C).

The Settlement Agreement defines the term "Released Claims" in broad language as follows:

> "Released Claims" means any and all claims, actions, demands, causes of action, suits, obligations, damages, rights or liabilities, of any nature and description whatsoever, known or unknown, present or future, concealed

or hidden, liquidated or unliquidated, fixed or contingent, anticipated or unanticipated, whether statutory, in tort, contract, law, equity or others, that have been, could have been or might in the future be asserted by Plaintiff in the <u>Townes</u> Action or the Settlement Class members or any of their respective heirs, spouses, executors, administrators, partners, attorneys, predecessors, successors, assigns, agents and/or representatives, and/or anyone acting or purporting to act on their behalf, arising out of the offering, marketing, sale, purchase, delivery, or use of, or representations and advertisements concerning, the Offerings.  Released Claims include, but are not limited to, all claimed or unclaimed compensatory damages, damages for emotional distress, damages for physical injury, damages for reputational injury, statutory damages, consequential damages, incidental damages, punitive and exemplary damages, as well as all claims for disgorgement, or equitable, declaratory or injunctive relief under any federal or state statute or common law or other theory.  Released Claims further include interest, costs and fees arising out of any of the claims asserted or that could have been asserted in the <u>Townes</u> Action.  Released Claims do not include claims under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*. ("FCRA"), as amended as of the date of this Agreement.  Notwithstanding the foregoing, nothing in this Agreement shall be deemed a release of the Parties' respective rights and obligations under this Agreement."

(D.I. 66; Settlement Agreement, ¶ 2.20, attached hereto as Exhibit C).

The Settlement Agreement provides that, in exchange for the release from future liability, Defendants agree to make changes to their contracts and marketing materials. (D.I. 66; Settlement Agreement, ¶¶ 5.1.1 - 5.1.6, attached hereto as Exhibit C).  With one limited exception, all of these changes pertain to credit repair services.  (D.I. 66; Settlement Agreement, ¶¶ 5.1.1 - 5.1.5, attached hereto as Exhibit C).  The exception is a section which provides that Defendants will provide the following disclaimer on their websites:

A disclaimer explaining that Defendants' credit monitoring Offerings monitor only the credit file associated with the purchasing consumer, and do not monitor, compare or cross-reference the credit file associated with

the purchasing consumer to any other credit file(s) maintained by the
applicable credit bureau(s).

(D.I. 66; Settlement Agreement, ¶ 5.1.6, attached hereto as Exhibit C).  None of the

proposed changes involve contract or marketing language that specifically involves

identity theft protection services.  (D.I. 66; Settlement Agreement, ¶¶ 5.1.1 - 5.1.6,

attached hereto as Exhibit C).  These changes to contract and marketing language are

referred to collectively in the Settlement Agreement as "Injunctive Relief."  (D.I. 66;

Settlement Agreement, p. 21, attached hereto as Exhibit C).

The Settlement Agreement also provides for in-kind relief ("In-Kind Relief") as

follows: "Defendants, through TrueLink, will provide three (3) months of Trans Union

Credit Monitoring, as it is offered by TrueLink as of March 1, 2007, (the "In-Kind

Relief") to each Class member who purchased any Offering from Defendants."

The release provision of the Settlement Agreement provides for a broad release of

all Released Parties from all Released Claims, stating in pertinent part as follows:

> Release: Upon the Effective Date, Plaintiff and each member of the
> Settlement Class, their respective spouses, heirs, executors, administrators,
> representatives, agents, attorneys, partners, successors, predecessors and
> assigns and all those acting or purporting to act on their behalf with
> respect to the Offerings marketed and sold by the Defendants(s), shall
> conclusively be deemed to have fully, finally and forever released,
> relinquished and discharged the Released Parties from and against any and
> all of the Related Claims.

(D.I. 66; Settlement Agreement, ¶ 7.1, attached hereto as Exhibit C).

**E.    This Court's Order Granting Preliminary Approval of Settlement.**

On April 16, 2007, this Court issued its Hearing Order in which this Court preliminarily approved the Settlement Agreement ("Preliminary Order").  (D.I. 69; Preliminary Order attached hereto as Exhibit D).  The Preliminary Order specifically bars other parties from pursuing similar class claims, stating in pertinent part as follows: "Prosecution by any member of the Settlement Class of any action or claim that is subject to the release and dismissal contemplated by the Settlement is hereby enjoined."  (D.I. 69; Preliminary Order, ¶ 4, attached hereto as Exhibit D).  The Preliminary Order also provides that a Fairness hearing shall be held on September 11, 2007, and that class members may contest the proposed settlement at that hearing.  (D.I. 69; Preliminary Order, ¶¶ 11 & 12, attached hereto as Exhibit D).  The Preliminary Order further provides that "[a]ny member of the Class who does not opt out, in accordance with instructions provided in the Notice, postmarked on or before August 27, 2007, shall be bound by the proposed Settlement."  (D.I. 69; Preliminary Order, ¶ 16, attached hereto as Exhibit D).


**F.    Status of the Millett Action.**

Discovery in the Millett Action closes on July 15, 2007.  (D.I. 82; Scheduling Order from Millett Action, p. 3, attached hereto as Exhibit F)  To date, Intervenors have engaged in substantial discovery pertaining to class issues including written discovery, depositions and review of more than 20,000 documents.  (Declaration of Michael W. Blanton, ¶ 11, attached hereto as Exhibit E).

-14-

Intervenors motion for class certification in the Millett Action is due August 15, 2007. (D.I. 82; Scheduling Order from Millett Action, p. 4, attached hereto as Exhibit F). Truelink's brief in opposition to motion for certification is due within thirty (30) days of service of that motion. (D.I. 82; Scheduling Order from Millett Action, p. 3, attached hereto as Exhibit F).

## **ARGUMENT**

As noted above, the allegations and claims stated in the Townes Complaint and the Millett Complaint are qualitatively different. The Townes Complaint states claims relating to credit repair services and seeks relief under the CROA. In contrast, the Millett Complaint states claims relating to identity theft protection services and seeks relief under the Kansas Consumer Protection Act and under a theory of breach of contract.

The nature of the claims and the relief sought in the Townes Complaint and the Millett Complaint are clearly distinct. However, there are two significant similarities between the cases. First, the cases share a common Defendant in that both complaints state claims against Truelink, Inc. Second, both complaints state claims relating to a service referred to as "Credit Monitoring."

Clearly, the fact that two lawsuits are brought against the same defendant does not make those lawsuits identical or even similar. Thus, the fact that the Townes Complaint and the Millett Complaint state claims against Truelink, Inc. does not establish an identity of interest among the plaintiffs in the Townes Action and the Millett Action.

The fact that both complaints state claims in relation to the Credit Monitoring service requires more detailed consideration. Although both complaints state claims in relation to the Credit Monitoring service, the aspects of the Credit Monitoring service that are at issue in the two complaints are totally different. The Townes Complaint focuses upon credit repair services that are offered under the umbrella of the Credit Monitoring service. The Millett Complaint focuses upon identity theft protection services that are offered under the umbrella of the Credit Monitoring service. Thus, while both complaints invoke the name of the Credit Monitoring service, the complaints are really addressing totally different aspects of the Credit Monitoring service.

The distinction between the various services that are offered under the umbrella of the Credit Monitoring service is crucial. This distinction may be better illustrated by way of an analogy. For example, an automobile manufacturer may manufacture and market a particular vehicle and that vehicle may be the subject of two different lawsuits. One lawsuit may argue that the vehicle is defective because the steering mechanism does not work properly and the other lawsuit may argue that the vehicle is defective because the brakes do not work properly. Although both claims pertain to the same vehicle, and both claims allege a defect in the vehicle, the claims are clearly distinct and the interests of the persons bringing those claims are similarly distinct. In this case, the claims and interests involved in the Millett Action and the Townes Action are likewise distinct.

Unfortunately, although the claims and interests that are at issue in the Millett Action and the Townes Action are distinct, the parties in the Townes Action have now

-16-

entered into a settlement agreement that attempts to dispose of the totally separate claims that are at issue in the Millett Action.

The Settlement Agreement includes a very broad release provision. The exceptional breadth of the release provision is exhibited by the definition of Released Claims which states in pertinent part as follows:

> "Released Claims" means any and all claims, actions, demands, causes of action, suits, obligations, damages, rights or liabilities, of any nature and description whatsoever, known or unknown, present or future, concealed or hidden, liquidated or unliquidated, fixed or contingent, anticipated or unanticipated, whether statutory, in tort, contract, law, equity or others, that have been, could have been or might in the future be asserted by Plaintiff in the <u>Townes</u> Action or the Settlement Class members or any of their respective heirs, spouses, executors, administrators, partners, attorneys, predecessors, successors, assigns, agents and/or representatives, and/or anyone acting or purporting to act on their behalf, arising out of the offering, marketing, sale, purchase, delivery, or use of, or representations and advertisements concerning, the Offerings.

(D.I. 66; Settlement Agreement, ¶ 2.20, attached hereto as Exhibit C). Pursuant to this definition of Released Claims, the Settlement Agreement would release all claims of any type pertaining to Credit Monitoring, regardless of whether those claims had anything to do with credit repair services. This definition is so broad that it would incorporate many persons who do not fall within the class identified in the Townes Complaint. More to the point, this definition would include persons who fall within the class identified in the Millett Complaint.

In a nutshell, the problem with the Settlement Agreement is that it purports to settle claims on behalf of a group of persons who do not fall within the class that is identified in the underlying complaint. Furthermore, the relief granted under the

-17-

Settlement Agreement would be of no benefit to persons bringing different types of claims against the Defendants.  In short, the Settlement Agreement purports to dispose of all claims against the Defendants in relation to an entire class of services, but only provides relief to a small subgroup of persons pursuing claims in relation to those services.

Intervenors have sought intervention in this action in order to protect the interests of similarly situated persons whose claims against Truelink, Inc. might be eliminated by a settlement agreement that provides them with no meaningful relief.

### A.    The Standard for Intervention of Right.

Intervention of right is provided for in Federal Rule of Civil Procedure 24.  That Rule states in pertinent part as follows:

> Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

FED.R.CIV.P. 24(a).

The Third Circuit has interpreted this Rule as setting forth four requirements for intervention of right: "1) a timely application for leave to intervene, 2) a sufficient interest in the underlying litigation, 3) a threat that the interest will be impaired or affected by the disposition of the underlying action, and 4) that the existing parties to the action do not adequately represent the prospective intervenor's interests."  Liberty Mutual Insurance

Co. v. Treesdale, Inc., 419 F.3d 216, 220 (3rd Cir. 2005).  However, in class actions, the

Third Circuit has dispensed with the second and third elements:

> In the class action context, the second and third prongs of the Rule
> 24(a)(2) inquiry are satisfied by the very nature of Rule 23 representative
> litigation. Therefore, when absent class members seek intervention as a
> matter of right, the gravamen of a court's analysis must be on the
> timeliness of the motion to intervene and on the adequacy of
> representation.

In re Community Bank of Northern Virginia, 418 F.3d 277, 314 (3rd Cir. 2005).

Even if the Third Circuit had not dispensed with the second and third prongs of

the test for intervention of right, in this case there can be no serious doubt that the second

and third prongs are met.  As noted previously, the release in the Settlement Agreement is

so broad that it would effectively encompass any type of claim stated against the

Defendants with respect to the Credit Monitoring service by anyone who has purchased

the service since 1999.  Furthermore, this Court has issued an order enjoining any

member of the Settlement Class from pursuing any action against Defendants that is the

subject of the release.  Thus, the interests of the prospective class members in the Millett

Action are directly effected and their ability to pursue their class claims against Truelink

are directly impaired.

Given that the second and third prongs of the test for intervention of right are not

in issue,  Intervenors will focus upon the issues of timeliness and inadequate

representation.

**B.**    **The Motion to Intervene is Timely.**

"Timeliness of an intervention request 'is determined by the totality of the circumstances.'" In re Community Bank of Northern Virginia, 418 F.3d at 314. "Among the factors to be considered are:  (1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay." Id. at 314.

In class action litigation, the Third Circuit has recognized that "[t]he time frame in which a class member may file a motion to intervene challenging the adequacy of class representation must be at least as long as the time in which s/he may opt-out of the class." Id.  In In re Community Bank of Northern Virginia, the Court held that a motion to intervene in a class action was timely when filed six weeks before the fairness hearing. Id.  The Court further noted that when a motion to intervene is filed within the opt-out period, it is presumptively timely.  Id.

In this case, the Motion to Intervene falls well within the parameters set forth by the Third Circuit.  The Notice of potential class settlement in the Townes Action was distributed on May 10, 2007.  Intervenors' first learned about the Settlement Agreement from this Notice.  Intervenor's thereafter filed their Motion to Intervene within one week of the Notice.  This response was amply diligent.  In fact, the Third Circuit has recognized that a class member has no duty to attempt intervention prior to the time that notice is distributed to the class:  "'Not until the existence and limits of the class have been established and notice of membership has been sent does a class member have any duty to take note of the suit or to exercise any responsibility with respect to it in order to

-20-

profit from the eventual outcome of the case.'" Id. (Quoting McKowan Lowe & Co., Ltd.
v. Jasmine, Ltd., 295 F.3d 380 (3rd Cir. 2002)).

Because Intervenors filed their Motion to Intervene less than one week after the
Notice was distributed, the Motion to Intervene is timely.

### C. The Interests of the Prospective Class Members in the Millett Action Are Not Adequately Represented in the Townes Action.

The Third Circuit has recognized that the burden of establishing inadequate
representation is minimal.  See, e.g., Brody v. Spang, 957 F.2d 1108, 1123 (3rd Cir. 1992);
Commonwealth of Pennsylvania v. Rizzo, 530 F.2d 501, 505 (3rd Cir. 1976).  "'[T]he
requirement of the Rule is satisfied if the applicant shows that representation of his
interest 'may be' inadequate; and the burden of making that showing should be treated as
minimal.'"  Mountain Top Condominium Assoc. v. Dave Stabbert Master Builder, Inc.,
72 F.3d 361, 368 (3rd Cir. 1995) (Quoting Trbovich v. United Mine Workers, 404 U.S.
528 (1972)).

"Representation will be considered inadequate on any of the following three
grounds: (1) that although the applicant's interests are similar to those of a party, they
diverge sufficiently that the existing party cannot devote proper attention to the
applicant's interests; (2) that there is collusion between the representative party and the
opposing party; or (3) that the representative party is not diligently prosecuting the suit."
Brody, 957 F.2d at 1123; see also United States v. Alcan Aluminum, Inc., 25 F.3d 1174,

1186 n.15 (1994).  In this case, Intervenors have established inadequate representation on the first of the above-referenced grounds.

The interests of the Plaintiffs in the Townes Action and the interests of the prospective class members in the Millett Action diverge sufficiently that the Plaintiffs in the Townes Action cannot devote proper attention to the interests of the prospective class members in the Millett Action.  As noted previously, the Townes Action focuses exclusively upon credit repair services and potential violations of the CROA.  In contrast, the Millett Action focuses upon identity theft protection services and potential violations of the Kansas Consumer Protection Act and contract law.  The focus of the two actions is clearly so different that the Plaintiffs in the Townes Action cannot be expected to adequately represent the interests of the prospective class members in the Millett Action.

Not only is it unreasonable to expect that the Plaintiffs in the Townes Action could adequately represent the interests of the prospective class members in the Millett Action; it is clear that the Plaintiffs in the Townes Action have actually failed to protect the interests of the prospective class members in the Millett Action.  As noted previously, the Plaintiffs in the Townes action have obtained a settlement that provides relief that is geared to the credit repair aspects of the Credit Monitoring service.  The injunctive relief in the Settlement Agreement deals almost exclusively with language in the contract and marketing materials that pertains to credit repair services.  There is essentially nothing in the Settlement Agreement that is geared to provide relief that is relevant to the identity theft protection aspects of the Credit Monitoring service.

In short, the Settlement Agreement provides relief that is specific to the claims stated in the Townes Action, but the Settlement Agreement does not provide any relief that is specific to the claims stated in the Millett Action.

Because the Plaintiffs in the Townes Action cannot be expected to adequately protect the interest of the prospective class members in the Millett Action, and have not protected the interests of those prospective class members, this Court should find that Intervenors have satisfied the inadequate-representation prong of the test for intervention of right.

**D.    Intervenors Should be Allowed to Intervene as a Matter of Right on Behalf of Themselves and all Similarly Situated Persons.**

As noted above, the requirements for intervention of right are "1) a timely application for leave to intervene, 2) a sufficient interest in the underlying litigation, 3) a threat that the interest will be impaired or affected by the disposition of the underlying action, and 4) that the existing parties to the action do not adequately represent the prospective intervenor's interests." Liberty Mutual Insurance Co., 419 F.3d at 220.

The second and third prongs of this test are automatically met in the context of a class action. In re Community Bank of Northern Virginia, 418 F.3d at 314. Therefore, the only issues before this Court are (1) whether the Motion to Intervene is timely and (2) whether the named plaintiffs in the Townes action inadequately represent the interest of the prospective class members in the Millett Action. For the reasons explained above,

both of these prongs are met.  Therefore, this Court should find that Intervenors are entitled to intervene as a matter of right.

**E.    The Ability of Class Members to Object at the Fairness Hearing Does Not Provide an Adequate Remedy to the Prospective Class Members in the Millett Action.**

Although the individual members of the prospective class in the Millett Action have the right to object to the Settlement Agreement at the Fairness Hearing on September 11, 2007, this right does not provide an adequate means to protect the interests of the prospective class in the Millett Action.

The motion for class certification in the Millett Action is due on August 15, 2007. Thus, Intervenors will need to determine by August 15, 2007 whether they have the right to seek relief on behalf of the class that has been identified in the Millett Action.  Clearly, if Intervenor were forced to wait until September 11, 2007 to know if the Settlement Agreement will be affirmed in its present form, this would severely impede the ability of Intervenors to pursue class certification.  Intervenors anticipate that Truelink will attempt to raise the preliminarily approved Settlement Agreement as a defense to certification in the Millett Action.  Thus, Intervenors need to determine the status of the Settlement Agreement as soon as possible.

Aside from scheduling issues, there is also an issue of collective representation that must be considered.  In the Millett Action, the interests of the prospective class members are being collectively represented by Intervenors.  If Intervenors are allowed to intervene in the Townes Action, Intervenors could likewise represent the collective

-24-

interests of the prospective class members in the Millett Action. However, if prospective members of the class in the Millett Action were required to individually object at the Fairness Hearing, then the prospective class members would lose the benefits of collective representation.

Given the scheduling limitations in the Millett Action, and the need for collective representation of the prospective class in the Millett Action, intervention is the only feasible vehicle by which the prospective class members in the Millett Action can voice their objections to the over broad Settlement Agreement in the Townes Action.

## **CONCLUSION**

For the reasons stated herein, Intervenors respectfully request that this Court grant Intervenors' leave to intervene in the Townes Action for the purpose of challenging the Settlement Agreement and participating in any future settlement negotiations between the parties to the Townes Action.

Respectfully submitted,


/s/ Christopher J. Curtin
Christopher J. Curtin
DE Bar Id. No. 0226
Erisman & Curtin
629 Mount Lebanon Road
Wilmington, Delaware 19803
Phone: (302) 478-5577
Facsimile: (302) 478-5494
Email: ccurtin659@aol.com

/s/ Barry R. Grissom
Barry R. Grissom, Esq.
KS Bar. Id. No. 10866
7270 W. 98th Terrace
Building 7, Suite 220
Overland Park, Kansas 66212
Phone: (913) 341-6616

and

Michael W. Blanton,
MO Bar. Id. No. 46490
Swanson Midgley, LLC
2420 Pershing Road, Ste. 400
Kansas City, Missouri 64108
Phone: (816) 842-6100

COUNSEL FOR INTERVENORS

## <u>CERTIFICATE OF SERVICE</u>

I, Christopher J. Curtin, Esq., hereby certify that on May 15, 2007, I electronically

filed the foregoing Brief In Support of Motion for Leave to Intervene with the Clerk of the

District Court using CM/ECF, which will send notification of such filing to the following:

William M. Lafferty, Esq.
Jerry Clyde Harris, Jr., Esq.
Morris Nichols Arsht & Tunnell
1201 N. Market St.
Wilmington, DE 19801

ERISMAN & CURTIN

<u>/s/ Christopher J. Curtin</u>
Christopher J. Curtin
DE Bar Id. No. 0226
Erisman & Curtin
629 Mount Lebanon road
Wilmington, Delaware 19803
Phone: (302) 478-5577
Facsimile: (302) 478-5494
Email: ccurtin659@aol.com

DATE: May 15, 2007