# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| ROBERT V. TOWNES IV, individually and on Behalf of All Others Similarly Situated, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 04-1488 |
| TRANSUNION LLC and TRUELINK, INC., | ) ) | **REDACTED VERSION** |
| Defendants. | ) ) | |

## DEFENDANTS' BRIEF IN OPPOSITION
## TO MOTION FOR LEAVE TO INTERVENE

William M. Lafferty (#2755)
**Morris, Nichols, Arsht & Tunnell LLP**
1201 N. Market Street
Wilmington, DE 19899
Phone: (302) 658-9200
Fax: (302) 658-3989

<u>Of Counsel:</u>
Michael O'Neil
Paula D. Friedman
**DLA Piper US LLP**
203 North LaSalle Street, Suite 1900
Chicago, IL 60601-1293
Phone: (312) 368-4000
Fax:    (312) 236-7516

Counsel for Defendants

Original Filing Date: June 4, 2007
Redacted Filing Date: June 11, 2007

# TABLE OF CONTENTS

Page

NATURE AND STAGE OF THE PROCEEDINGS ........................................................1

SUMMARY OF ARGUMENT.......................................................................................1

STATEMENT OF FACTS..............................................................................................2

    A.    The Relevant Class Action Litigation ................................................2

        1.    The Townes Action ...............................................................2

        2.    Related Class Litigation Against Defendants' Competitors.....................4

        3.    Related Class Litigation Brought By Proposed Intervenors......................7

        4.    The Millett Action ..............................................................11

    B.    The Stipulation of Settlement in the Townes Action ...........................15

ARGUMENT.................................................................................................................17

    A.    The Proposed Intervenors Have No Cognizable Interest Which Must be Protected. .........................................................................................18

        1.    The Milletts are not members of the Settlement Class in Townes, and therefore have no individual interest that would support intervention ...........................................................................19

        2.    The Milletts' desire to represent the putative class is insufficient ...........20

        3.    The Milletts cannot intervene on behalf of a proposed class ..................22

    B.    The Milletts Fail To Establish Impairment To Their Interests Or To The Interests Of A Proposed Class..........................................................23

        1.    As the Settlement does not affect the Milletts, it poses no threat to a cognizable interest ..........................................................23

        2.    The ability of class members to opt out of the Settlement undercuts any possible impairment of their interests................................23

        3.    The Settlement Class is not broader than the class alleged in the Townes Complaint...........................................................25

    C.    Plaintiff And Class Counsel In Townes Are Adequately Representing The Class..............................................................................................26

    D.    Proposed Intervenors Rebuffed the Parties' Prior Efforts to Coordinate the Competing Lawsuits, and Their Motion is Untimely .............................30

CONCLUSION .............................................................................................................33

## TABLE OF AUTHORITIES

Page

### FEDERAL CASES

*Alaniz v. California Processors, Inc.*,
   73 F.R.D. 269 .................................................................................................................24

*Bradburn Parent/Teacher Store, Inc. v. 3M*,
   2004 U.S.Dist. LEXIS 25246 ......................................................................................19

*Brody By and Through Sugzdinis v. Spang*,
   957 F.2d 1108 .............................................................................................................23

*In re Community Bank of Northern Virginia*,
   418 F.3d 277 ........................................................................................................19, 21

*Donaldson v. Pharmacia Pension Plan*,
   2006 U.S.Dist. LEXIS 28607 ......................................................................................14

*Duffy v. Delaware County Board Of Prison Inspectors*,
   1991 U.S.Dist. LEXIS 13342 ......................................................................................22

*Equal Employment Opportunity Commission v. Customer Companies, Inc.*,
   2003 U.S.Dist. LEXIS 191897 ....................................................................................19

*In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liability Litigation*,
   55 F.R.D. 768 .............................................................................................................24

*Harris v. Pernsley*,
   820 F.2d 592 .............................................................................................18, 21, 23,

*Kleissler v. U.S. Forest Svc.*,
   157 F.3d 964 ...............................................................................................................18

*Liberty Mutual Insurance Co. v. Treesdale, Inc.*,
   419 F.3d 216 ........................................................................................................18, 23

*In re Lorazepam and Clorazepate Antitrust Lit.*,
   205 F.R.D. 363 ...........................................................................................................24

*Marshall v. Holiday Magic, Inc.*,
   550 F.2d 1173 .......................................................................................................25, 30

*Mountain Top Condo. Associate v. Dave Stabbert Master Builder, Inc.*,
   72 F.3d 361 .........................................................................................................18, 31, 32

*New Orleans Public Serv. Inc. v. United Gas Pipe Line Co.*,
   32 F.2d 452 ............................................................................................18, 21

*In re Safeguard Sec. Lit.*,
   20 F.R.D. 43 ...................................................................................21, 23, 26, 31

*Shore v. Parklane Hosiery Co., Inc.*,
   1978 U.S.Dist. LEXIS 14211 ...............................................................24, 30

*U.S. v. Alcan Aluminum, Inc.*,
   25 F.3d 1174 .............................................................................18, 21, 22, 31

*In re World Health Alternatives, Inc. Sec. Litigation*,
   2007 U.S.Dist. LEXIS 6987 ...........................................................................19

*Wyatt v. Hanan*, 170 F.R.D. 189 ...........................................................................29

## FEDERAL STATUTES

Credit Repair Organizations Act, 15 U.S.C. § 1679 <u>et</u> <u>seq</u> ...................................... 1

Fed. R. Civ. P. 23(g) ..............................................................................................21

Fed. R. Civ. P. 24(a) ..............................................................................................18

## UNREPORTED DECISIONS

*Millett v. Experian*, Order Granting in Part and Denying in Part
   Motion for Summary Judgment.......................................................10, 28, 29

## OTHER AUTHORITIES

Fed. R. Civ. P. 23(g)(2)(A) advisory committee's note ....................................21

Manual For Complex Litigation (Fourth) § 21.11............................................21

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff in the above-captioned <u>Townes</u> Action brought suit against defendants Trans Union LLC ("Trans Union") and TrueLink, Inc. (now known as TransUnion Interactive, Inc.) ("TrueLink") (collectively "Defendants") on behalf of himself and a putative nationwide class for violations of the federal Credit Repair Organizations Act, 15 U.S.C. § 1679 <u>et</u> <u>seq</u>. ("CROA"), and for a claim of unjust enrichment.  On October 31, 2005, this Court granted plaintiff's counsel's Motion for Appointment of Interim Counsel and appointed plaintiff's lawyers as interim counsel for the putative class.  The plaintiff in the above-captioned action has conducted extensive discovery of both Defendants, as well as third parties.  On June 27, 2006, counsel and party representatives in the <u>Townes</u> Action participated in a settlement conference before Magistrate Thynge and settlement discussions continued over the next nine months, culminating in a class action Stipulation of Settlement signed on April 5, 2007.  On April 16, 2007, this Court preliminarily approved the Stipulation of Settlement and Defendants are in the process of advising the settlement class of the Settlement.  Steven and Melody Millett (the "Proposed Intervenors") now seek leave to intervene in the above-captioned <u>Townes</u> Action to challenge this preliminarily-approved settlement agreement.

## SUMMARY OF ARGUMENT

1.      The motion to intervene should be denied because the Proposed Intervenors have no cognizable interest which must be protected.  They are not members of the Settlement Class in the above-captioned action, and therefore have no individual interests that would support intervention. The Proposed Intervenors' desire to represent the putative class is insufficient, and they cannot intervene on behalf of a class.

2.      The motion to intervene should be denied because the Proposed Intervenors fail to establish an impairment to their interests or to the interests of the putative proposed class. As the Settlement does not affect them, it poses no threat to any cognizable interest they may have. The ability of class members to opt out of the Settlement eliminates any possible impairment of the interests of the putative class. The Settlement Class is not broader than the class alleged in the complaint.

3.      The motion to intervene should be denied because plaintiff and his counsel are adequately representing the class. The actions of Proposed Intervenors in related litigation do not demonstrate that they can serve the interests of the class in a way not currently served by plaintiff's counsel. Also, the right of members of the Settlement Class to opt out of the Settlement demonstrates the adequacy of representation.

4.      The motion to intervene should be denied because the motion is untimely, and because the Proposed Intervenors rebuffed the prior efforts of the parties in the above-captioned action to coordinate the competing lawsuits. Given the effort and expense associated with providing notice of the Settlement to the class, the parties would be prejudiced by intervention at this time.

## STATEMENT OF FACTS

A.    The Relevant Class Action Litigation.

1.      The Townes Action.

Plaintiff in the above-captioned Townes Action filed his complaint, on December 1, 2004, "on behalf of himself and a proposed nationwide class of persons who purchased services from Defendants." (D.I. 1, ¶ 1). Plaintiff alleged that the sale of such services by Defendants

2

violated the consumer disclosure and other requirements of the CROA.[1]  Citing the remedial provisions of CROA, Plaintiff on behalf of himself and the class sought "actual damages" of any amounts paid to Defendants by the class, punitive damages, and an award of attorney's fees (D.I. 1, p. 9).  Plaintiff separately alleged a claim for common-law "unjust enrichment" and sought disgorgement of monies paid by plaintiff and the class, and other injunctive relief.

Only a few months after filing the <u>Townes</u> Action, and after learning of the filing of a similar class action lawsuit in the Northern District of Alabama, Plaintiff filed a motion requesting that this Court appoint certain of his lawyers "interim counsel" under Rule 23(g)(2)(A) of the Federal Rules of Procedure.  In its ruling on the motion, this Court first noted that the Rule did not mandate the appointment of interim counsel in all circumstances.  October 31, 2005, Memorandum Order, (D.I. 27, p. 3).  Citing the 2003 Advisory Committee's Note to Rule 23(g)(2)(A), this Court noted that competing class actions may create "rivalry or uncertainty that makes formal designation of interim counsel appropriate."  The Court therefore granted plaintiff's motion and appointed plaintiff's lawyers as interim counsel for the putative class.  This Court noted that, even though the lawsuit referenced by Plaintiffs was voluntarily dismissed without prejudice, the lawsuit nonetheless "may be brought again, leading to the same leadership and unity issues" which were underlying the motion.  (<u>Id.</u>, p. 4).

Plaintiff in the above-captioned action has conducted extensive discovery of both Defendants, as well as third parties.  To date, Plaintiff's counsel have:  deposed ten (10) employees of Defendants, including the deposition of TrueLink president John Danaher, for

---

[1]  The Complaint further defines the class as anyone during the class period who purchased any "consumer" or "personal" service from defendant and such purchase was not compliant with CROA. (D.I. 1, ¶ 18).  However, because Plaintiff alleged that Defendants generally did not comply with the technical requirements of CROA, (<u>Id.</u>, ¶¶ 17 & 26), the class initially defined by the Plaintiff included all purchasers during the relevant time period.

three (3) days; served multiple sets of interrogatories, requests for production and requests for admissions on each defendant; and served subpoenas on multiple nonparties.

On June 27, 2006, counsel and party representatives participated in a settlement conference before Magistrate Thynge. Counsel continued settlement discussions over the next nine months, culminating in a class action Stipulation of Settlement signed on April 5, 2007. See infra pp. 15-17. Those settlement discussions were coordinated with negotiations occurring in similar lawsuits brought against Defendants' competitors, and the final settlement terms in the separate settlement agreements are substantively identical. (Declaration of Michael O'Neil ("O'Neil Decl.") filed herewith, ¶¶ 5-7, and compare Ex. A thereto with Stipulation of Settlement, Ex. C to Blanton Declaration).

2.    Related Class Litigation Against Defendants' Competitors.[2]

The claims asserted in the Townes Action mirror claims brought in other federal courts against Defendants' competitors in the direct-to-consumer credit reporting industry, including litigation brought by counsel for Plaintiff in the Townes Action.

i.    Equifax and Fair Isaac litigation

Plaintiff's counsel in the above-captioned Townes Action also represent the plaintiffs in both Hillis v. Equifax Consumer Services, Inc. and Fair Isaac Corp., No. 1:04 CV 03400 BBM ("Equifax"), and Slack v. Fair Isaac Corp et al., No. 3:05 CV 00257 MEJ ("Fair Isaac"), originally filed in the Northern District of California but transferred to Georgia and consolidated with Equifax. Like Townes, both the Equifax and Fair Isaac plaintiffs brought CROA claims on

---

[2] Section A.2 of the Statement of Facts describes numerous federal court cases whose docket sheets are available through each respective courts' PACER/ECF electronic case management system. The citations to the pleadings and rulings in the cases referenced herein refer to the corresponding docket item numbers for the case under discussion.

behalf of a nationwide class of people who purchased credit monitoring and other products over the Internet. Negotiations regarding settlement of the two actions, which shared common defendants and common plaintiff's counsel, were coordinated. The parties on February 5, 2007, reached a class action settlement which resolved the claims of the putative classes in both lawsuits.[3]

Subsequently, on February 6, 2007, the parties in Equifax and Fair Isaac filed with the Northern District of Georgia a joint motion to consolidate the two cases, and for preliminary approval of class action settlement. (D.I. 281 in Equifax).

The Equifax/Fair Isaac Settlement Agreement is nearly identical in structure and language to the class settlement agreement reached by the parties in the Townes Action. (See Settlement Agreement, Ex. A to O'Neil Decl.) As part of the Equifax/Fair Isaac Settlement, each class member is entitled to a free three-month credit monitoring subscription. (Id. at §V1, ¶ 71). Also like the defendants in Townes, the defendants in both Equifax and Fair Isaac have also agreed to injunctive relief which restricts the manner in which they market their products. (Id. at §V). On February 8, 2007, the Court preliminarily approved the Equifax/Fair Isaac Settlement Agreement, and set the Final Fairness Hearing for June 4, 2007. (D.I. 287 in Equifax).

      ii.     Experian litigation

Similar nationwide putative class claims under CROA were also brought against Experian North America, Inc. and its internet subsidiary Consumerinfo.com, based on their marketing and sale of direct-to-consumer credit reporting products over the Internet. See Browning v. Yahoo! Inc., et al., No. C 04 01463 HRL (Northern District of California) ("Browning") and Helms v. Consumerinfo.com, No. CV 03 HS 1439 (Northern District of

---

[3] The parties later made minor, non-substantive amendments to the proposed Settlement Agreement. The original Equifax/Fair Isaac Settlement Agreement is attached as Ex. A to the O'Neil Decl.

Alabama) ("Consumerinfo.com") (collectively "the Experian litigation"). Like here in the Townes Action, plaintiffs in the two related cases brought claims for violations of CROA and unjust enrichment.

The parties in Consumerinfo.com filed cross-motions for summary judgment on the issue of whether defendant Consumerinfo.com was a credit repair organization under the CROA. (D.I. 31 & 44 in Consumerinfo.com). On February 14, 2005, the Consumerinfo.com court granted in part and denied in part plaintiff's Motion for Summary Judgment, and ruled as a matter of law that defendant Consumerinfo.com was a credit repair organization under the CROA. (D.I. 89 in Consumerinfo.com). Approximately one month later, the Consumerinfo.com court denied Plaintiff's Motion for Class Certification. (D.I. 90 in Consumerinfo.com). Consumerinfo.com later sought interlocutory review of the District Court's ruling on the Motions for Summary Judgment and the United States Court of Appeals for the Eleventh Circuit granted the defendant's petition for permission to appeal. (D.I. 97 in Consumerinfo.com). The Eleventh Circuit stayed briefing on the appeal, as the parties in the Experian litigation conducted settlement negotiations.

As part of the nationwide class settlement that was finally reached by the parties in the Experian litigation, each class member is entitled to receive from defendants either two free months of credit monitoring or a free credit score. (D.I. 137 in Browning). In addition, the defendants agreed to remove certain language from their websites, and agreed to other restrictions on language used to market the credit monitoring product. Class members who do not opt out release all claims relating to purported credit repair services.

In an Order dated December 27, 2006, the Browning court preliminarily approved an amended class settlement agreement in the Experian litigation, and set a final approval hearing for July 31, 2007. (D.I. 137 in Browning).

3.    Related Class Litigation Brought By Proposed Intervenors.

The Proposed Intervenors here, married couple Steven G. Millett and Melody J. Millett ("Milletts" or "Proposed Intervenors"), have also brought putative class action claims against Defendant TrueLink here, as well as Equifax, Experian, Consumerinfo.com and other of the same defendants in the litigation described above. Proposed Intervenors have asserted many of the same claims, including those under CROA, arising from their purchase of the same products at issue in the other litigation against these parties. The history of the Proposed Intervenors' litigation against Defendants' competitors is (to say the least) complex, but a basic understanding of the Proposed Intervenors' prior efforts to represent classes in the related litigation is necessary to understand their pending motion here, and its underlying motives.

Proposed Intervenors originally sued seven defendants in a single complaint filed with the U.S. District Court for the District of Kansas on June 16, 2004. Millett v. Equifax Credit Information Services, Inc., et al., No. 04-2274-CM. (D.I. 1 in original suit). That complaint included individual claims brought against several data furnishers and users of credit data (Bank of America Corp. and Ford Motor Credit Co.), and also included putative class claims against Trans Union and its industry competitors who purportedly sold credit monitoring, and other credit history products to Proposed Intervenors, i.e., Equifax, Experian, CSC Credit Services, Inc. and Fair Isaac. Among the thirteen claims asserted in this initial complaint were: breach of contract; willful and negligent violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq.; defamation; conversion; fraud; and violations of the Organized Crime Control Act, 18

U.S.C. § 1961 et seq. ("RICO").  (Id.).

REDACTED

i.    Proposed Intervenor's lawsuit against Equifax

Even after the Proposed Intervenors decided to voluntarily dismiss their claims against all but Equifax Consumer Services, Inc. and Equifax Information Services, LLC (collectively "Equifax"), No. 04-2279-CM, they were faced with a motion to dismiss for transfer for improper venue based upon a contractual provision mandating that the suit be brought in Georgia. Subsequently, the Proposed Intervenors agreed to a transfer of their case to the United States District Court for the Northern District of Georgia, No. 05 CV 02122 BMM (the "Equifax Action"). Notably,  the case was later transferred within the Northern District of Georgia to the same Judge who was presiding in the Equifax litigation. (See supra §2.i).  After filing numerous amended complaints and finally by their Fifth Amended Complaint, the Milletts alleged claims on behalf of a nationwide class for: (a) violations of CROA's disclosure requirements, as well as violations of CROA's fraud provisions; (b) breach of contract; (c) fraud; and (d) negligent misrepresentation. (D.I. 84).

Equifax filed numerous motions challenging the sufficiency of the Milletts' Fifth Amended Complaint. (D.I., 88, 89 in Equifax).  Although the parties fully briefed the motions, the Proposed Intervenors reached a settlement of its claims against Equifax before the court ruled on them.  (D.I. 102 in Equifax).  Due to a purported blanket confidentiality provision in the settlement agreement, the date the agreement was reached is not known to Defendants here.

8

Also unknown is the consideration paid to the Milletts and their counsel. However, certain filings with the court made by the Milletts less than two weeks after the same court preliminarily approved the Equifax/Fair Isaac settlement -- without objection from the Milletts -- offer a glimpse of some settlement terms, even though certain of those filings were made under seal.

For example, on February 21, 2007, the Milletts filed a Motion to File Affidavit for In Camera Review Under Seal, seeking to file an affidavit of plaintiff Steven Millett — along with its attachments — under seal. (D.I. 97 in Equifax). On that same day, the Milletts also filed an Unopposed Motion for Court Order — along with a Proposed Order — seeking an Order from the Court directing Equifax to provide the Milletts with certain information that was purportedly necessary to help Mr. Millett close credit accounts that were the result of identity theft. (D.I. 99 in Equifax). The proposed order was entered by the court. (D.I. 100 in Equifax).

Also filed with the Court that day was a proposed Consent Order dismissing "claims asserted or that could have been asserted in the captioned case by and on behalf [of] the putative class. . . without prejudice and without notice to the putative class." (D.I. 101 in Equifax). The Court entered that Consent Order, which dismissed plaintiffs' individual claims and terminated the case. (D.I. 102 in Equifax). Notably, no written or oral discovery was conducted by the Milletts in the Equifax Action and Equifax never answered the Fifth Amended Complaint.

ii.    Proposed Intervenor's lawsuit against Experian

Just as their other lawsuits were transferred due to choice-of-venue provisions, the Milletts' case against Experian and Consumerinfo.com (collectively "Experian"), was transferred from the District of Kansas to the Central District of California, No. SACV-05-879-JVS (the "Experian Action"). By their Fourth Amended Complaint, the Milletts asserted claims on behalf of a nationwide class for deceptive marketing in violation of the California Consumers Legal

Remedies Act, Cal. Civ. Code §§1750-85 (the "CLRA") and breach of contract. (D.I. 113 in Experian).

Experian filed a motion for summary judgment on October 24, 2006, seeking dismissal of both claims. (D.I. 116 in Experian). The primary issues raised by the motion, and ultimately resolved by the federal court, were: (1) whether Experian had a contractual duty to provide its customers with information that does not appear on their credit report; and (2) whether general claims of identity theft protection could be reasonably read to promise monitoring of credit files other than those of the subscribing consumer.

On December 18, 2006, the Court granted in part Experian's motion for summary judgment, finding that Experian's credit monitoring product performed as promised, and that its marketing of the product did not mislead consumers. (Order Granting in part and Denying in part Motion for Summary Judgment, Millett v. Experian, attached as Ex. D to O'Neil Decl.). The district court found that Experian's credit monitoring product was intended to advise whether a purchaser's Experian credit report had changed in five specific ways commonly associated with identity theft. (Id. at p. 4). The Court further found that "it is clear that there was no offer to search for information that would not appear on a purchaser's credit report," and held that the Milletts' views as to how the product should perform were "impractical and undesirable." (Id.) Based upon similar reasoning, the Court also dismissed the Milletts' California statutory deceptive marketing claims. Even though defendant's website stated that its credit monitoring product will "guard against fraud and identity theft," and will "provide peace of mind," the court held that "no reasonable person would read these statements and take them literally and absolutely." (Id. at p. 6). On April 4, 2007, the Court denied the Milletts' motion for reconsideration. (D.I. 174 in Experian).

4.    The Millett Action.

After a somewhat circuitous procedural history, the Milletts currently are asserting nationwide and state-wide (Kansas) class claims against TrueLink in the District of Delaware, Millett v. TrueLink, Civ. No. 05-599–SLR ("the Millett Action").

As noted above, the Proposed Intervenors' pending lawsuit against TrueLink originated in the multi-defendant complaint initially filed against its parent company (Trans Union) in the District of Kansas.


REDACTED


After voluntarily dismissing them from their original complaint, the Milletts re-filed their claims against Trans Union in a separate lawsuit in the District of Kansas, No. 04 CV 02448. (D.I. 1 in Millett).  The problem, however, was that the Milletts had contracted with TrueLink, not Trans Union, in obtaining the products which were the subject of the lawsuit.  Proposed Intervenors later substituted TrueLink for Trans Union as the defendant.  (D.I. 27 in Millett). Notably, the Milletts did not assert against TrueLink, as they do currently, a claim for breach of

contract in their First Amended Complaint. (Id.).  The Proposed Intervenors instead asserted claims for negligent misrepresentation, fraud and violations of the Kansas Consumer Protection Act. (Id.).  However, fundamental jurisdictional and procedural defects in the Proposed Intervenors' claims remained.  Upon TrueLink's Motion to Dismiss for Improper Venue and Alternative Motion to Transfer, the Kansas federal court transferred the action to the District of Delaware because the contract upon which Proposed Intervenors based their claims contained a choice-of-venue provision that required bringing the lawsuit in a federal or state court in Delaware. (D.I. 29 in Millett).

Following transfer to this Court, the Proposed Intervenors, as plaintiffs in the Millett Action, on December 14, 2005, filed their Second Amended Complaint, alleging breach of contract, and asserting that TrueLink's sale of products violated the Delaware Consumer Fraud Act and Delaware Consumer Contracts Act.  Also, for the first time, the Milletts asserted claims for violations of CROA on behalf of a nationwide class. (D.I. 53 in Millett).

Less than one week later, counsel for Defendants pursuant to Local Rule 3.1(b) notified the Clerk of the Court that the Millett Action and Townes Action were related due to the "overlapping claims and putative classes." (Lafferty Letter, dated December 19, 2005 (D.I. 32 in Townes), Ex. E to O'Neil Decl.).[4]  Counsel for Plaintiff in the Townes Action filed their own Notice pursuant to Local Rule 3.1(b) – entered on the docket in the Townes Action – and urged "that coordination of the Townes and Millett actions is appropriate." (D.I. 37 in Townes).  In response to TrueLink's notice of relatedness, counsel for the Milletts filed a letter with the Clerk

---

[4] Local Rule 3.1(b) requires parties to advise the clerk of a related action where the purported related action may: "(1) arise from the same or substantially identical transactions, happenings, or events; (2) involve the same or substantially the same parties or property; (3) involve the same patent or the same trademark; or (4) for other reasons would entail substantial duplication of labor if heard by different judges."

stating their belief that their case was "dissimilar," and advising that counsel would soon move to be appointed "interim counsel." (Curtin Letter, dated December 21, 2005 (D.I. 57 in <u>Millett</u>), Ex. F to O'Neil Decl.).

As promised, counsel for the Milletts that same day filed before Judge Robinson their motion to be appointed interim class counsel, pursuant to Rule 23(g)(2)(A) of the Federal Rules of Civil Procedure. (D.I. 58 in <u>Millett</u>). That motion made no mention of the overlapping nature of the claims and classes in the <u>Millet</u> and <u>Townes</u> Actions, or of the fact that this Court had already appointed interim class counsel. Indeed, the Milletts failed to even advise Judge Robinson of the existence of the <u>Townes</u> Action. By its response, TrueLink brought these very germane facts to the attention of Judge Robinson, and noted that both the <u>Millett</u> Action and the <u>Townes</u> Action were putative nationwide class actions asserting, among other claims, violations of CROA. (D.I. 59, p. 2 in <u>Millett</u>). TrueLink further advised Judge Robinson that "it appears from a comparison of the complaints in the two actions that some, if not all, members of the putative class [in the <u>Millett</u> Action] are members of the putative class action in <u>Townes</u>." (<u>Id.</u>) TrueLink noted that this Court had already appointed interim class counsel in the <u>Townes</u> Action, (citing D.I. 27 in <u>Townes</u>), and TrueLink suggested to Judge Robinson that the appointment of Proposed Intervenors' counsel as interim class counsel in the <u>Millett</u> Action "may create the rivalry and uncertainty that Judge Farnan's prior order was intended to avoid." (D.I. 59, p. 3 in <u>Millett</u>).

In ruling upon the Milletts' motion, Judge Robinson (like this Court in its separate Rule 23(g)(2)(A) ruling in the <u>Townes</u> Action) noted that appointment of interim counsel is appropriate "where there is rivalry among lawyers or where 'overlapping, duplicative, or competing class actions are pending before a court.'" Memorandum Opinion, D.I. 73 in <u>Millett</u>,

pp. 2-3 (quoting <u>Donaldson v. Pharmacia Pension Plan</u>, 2006 U.S. Dist. LEXIS 28607 (S.D. Ill.

May 10, 2006)). [A true and correct copy of Judge Robinson's ruling is attached as Ex. G. to

O'Neil Decl.]. Judge Robinson, however, denied Proposed Intervenors' counsel's motion. (<u>Id.</u>

p. 3). Notably, Judge Robinson expressly premised this ruling upon the Milletts' claim that the

<u>Millett</u> Action and the <u>Townes</u> Action were "dissimilar."

> Further, plaintiffs contend that this case is unrelated to <u>Townes</u>.
> (D.I. 57). Accepting that contention as true for the purposes of the
> instant motion only, the court concludes that there are not
> overlapping, duplicative, or competing class suits.

<u>Id.</u>

Notwithstanding the Milletts' contention that their lawsuit was not overlapping or

duplicative of the <u>Townes</u> Action, and Judge Robinson's ruling in reliance on that contention, the

Milletts until very recently continued to prosecute the same putative nationwide class CROA

claims as those asserted in the above-captioned action. On June 12, 2006, the Milletts sought

leave to file a Third Amended Complaint, D.I. 70, which asserted nationwide class CROA

claims. Later, the Milletts filed on September 20, 2006, their Fourth Amended Complaint, D.I.

76, which (once again) asserted the same class CROA claims at issue in the <u>Townes</u> Action.

The affidavit of counsel for Proposed Intervenors in support of Motion for Leave to

Intervene acknowledges that the Milletts only dismissed their class CROA claims on March 5,

2007, and only after being advised of the settlement discussions in the <u>Townes</u> Action. (Blanton

Decl., D.I. 73, ¶¶ 6, 7). Counsel avers in conclusory fashion that the Milletts did so "because

they did not want to encroach upon the claims being pursued in the <u>Townes</u> Action." (<u>Id.</u> ¶ 6).

However, counsel does not attempt to reconcile this statement with the re-assertion of class

CROA claims in multiple amended complaints, and their prosecution of such claims for 16

months, even after learning of the same claims in the Townes Action, and their disavowal of any relation to that litigation.

B.    The Stipulation of Settlement in the Townes Action.

The parties to the above-captioned action, after nine months of negotiation initiated by a settlement conference with Magistrate Thynge, and later coordinated with settlement discussions in the Equifax/Fair Isaac litigation, executed a Stipulation of Settlement (the "Settlement") on April 5, 2007. This Court, by its Hearing Order dated April 16, 2007, preliminarily approved the Settlement "as being fair, just, reasonable and adequate." (D.I. 69, p. 2); see also Proposed Intervenors' Ex. D.[5]

The Settlement defines the "Class" as all individuals who from December 1, 1999 through April 16, 2007, purchased "any of the Offerings through Defendants' Websites." (Settlement, Sec. 2.24, Ex. C to Blanton Decl.). "Offering" is defined as a credit score, credit monitoring, or certain debt analysis products. (Settlement, Sec. 2.16) Therefore, excluded from the class are purchasers of single or tri-merge credit reports and certain other products. Contrary to the Proposed Intervenors' contention that the settlement class is broader than the litigation class in the Townes Action (see Proposed Intervenors' Brief, p. 17), the definition of the settlement class is more narrow than that set forth in the complaint in the Townes Action, which included purchasers of "any" consumer service offered by Defendants, (D.I., ¶18). Additionally, although Proposed Intervenors have suggested otherwise, they are not a member of the settlement class, as the defined "Class" expressly excludes "all persons who are named plaintiffs in any action pending against any of the Defendants on the date of entry of Hearing Order

---

[5] In submitting the Settlement to this Court, Plaintiff's counsel cited the earlier notice of the related Millett Action, and described the impact of the Settlement on the individual and putative class claims asserted there. (Keenen Letter, dated April 5, 2007, D.I. 67).

wherein the recovery sought is encompassed by the Released Claims." (Settlement, ¶2.24 (v)).

Under the terms of the Settlement reached in the above-captioned Townes Action, class members will receive significant and valuable in-kind relief, and enjoy the benefit of the injunctive relief that Defendants have agreed to. Pursuant to Section 5 of the Settlement, entitled "Injunctive Relief," Defendants have agreed to restrictions on their marketing of the Offerings, including specifically restrictions on the representations which form the basis for both the Townes Action and the Millett Action. For example, the Settlement requires defendants to include two contractual disclaimers in their websites' Terms of Use and their marketing of certain products. First, Defendants must advise that they are not credit repair organizations, and do not provide credit repair advice; second, Defendants must explain that their credit monitoring product monitors only the credit file of the purchaser, and not any other consumer. (Id. at Secs. 5.1.5, 5.1.6). The Settlement also restricts the use of certain words and other language in Defendants' marketing, (Id. at Secs. 5.1.1-3), and requires Defendants to compel their marketing-partner "Contractual Associates" to similarly comply with these marketing restrictions (Id. at Sec. 5.4).

In addition to securing significant changes in Defendants' marketing of their products, the Settlement also offers valuable in-kind relief to each class member, i.e., a free three-month subscription to Defendants' credit monitoring product. (Id. at Secs. 6.1, 6.2). As part of the free subscription, class members will receive 24-hour e-mail notice of certain critical changes in their credit file. The in-kind relief also offers class members unlimited access to their credit reports during the three-month subscription, and up to $25,000 in identity theft insurance. The credit monitoring subscription – free to class members for three months – is currently offered by

TrueLink for $9.95/month. Notably, no other settlement of the claims discussed supra, offers this unlimited access to credit reports during the free subscription period.[6]

Those class members who do not opt out will release all claims relating to the marketing and sale of the offerings against Defendants (and their marketing partners who comply with the injunctive relief provisions of the Settlement), except claims brought under the Fair Credit Reporting Act. (Settlement, Proposed Intervenors' Ex. C., Sections 7-1, 2.20, 2.21).

As previously noted, plaintiff's counsel in the Townes Action is also counsel in the Equifax/Fair Isaac litigation. Also, at the suggestion of Magistrate Thynge, settlement discussions in the Townes Action were coordinated with similar discussions in the Equifax/Fair Isaac litigation. Not surprisingly, and significant for purposes of understanding the pending motion to intervene, the terms of the two settlement agreements are essentially identical, with one exception. The Settlement reached here mandates disclaimers by Defendants addressing the claims of the Intevenors that TrueLink misrepresented the scope of its credit monitoring product. See Settlement, ¶5.16. However, the Equifax/Fair Isaac settlement, to which the Milletts did not object or seek leave to intervene, does not contain such a provision.

## ARGUMENT

The Milletts fail to establish that they are entitled to intervene in this action. Federal Rule of Civil Procedure 24(a)(2) allows for intervention as a matter of right when a timely application therefore is made and:

> [T]he applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter

---

[6] Moreover, unlike the settlement reached in the Experian litigation (see supra p. 6), class members here will not need to provide a credit card number to obtain free credit monitoring and will not need to cancel their subscription after the free three-month period in order to avoid any payment.

> impair or impede the applicant's ability to protect that interest,
> unless the applicant's interest is adequately represented by existing
> parties.

Fed. R. Civ. P. 24(a)(2).  Litigants seeking to intervene as of right in the Third Circuit must establish:  (1) a timely application for leave to intervene;  (2) a sufficient interest in the underlying litigation;  (3) a threat that the interest will be impaired or affected by the disposition of the underlying action; and  (4) that the existing parties to the action do not adequately represent the intervenor's interests.  Liberty Mut. Ins. Co. v. Treesdale, Inc., 419 F.3d 216, 220 (3d Cir. 2005);  Kleissler v. U.S. Forest Svc., 157 F.3d 964, 969 (3d Cir. 2004).  In order to intervene as of right, it is the intervenor's burden to establish that each of these four requirements has been met.  Mountain Top Condo. Assoc. v. Dave Stabbert Master Builder, Inc., 72 F.3d 361, 366 (3d Cir. 1995);  U.S. v. Alcan Aluminum, Inc., 25 F.3d 1174, 1181 n. 9 (3d Cir. 1994); Harris v. Pernsley, 820 F.2d 592, 596 (3d Cir. 1987).

As set forth below, the Milletts fail to establish even one of these elements, much less all of them.  Therefore, the Motion should be denied.

A.    The Proposed Intervenors Have No Cognizable Interest Which Must be Protected.

To satisfy the first prong of the four-part test for intervention as of right, the Proposed Intervenors must demonstrate that they have a sufficient legal interest in the action – one that  is "significantly protectable."  Mountain Top Condo Assoc., 72 F.3d at 366 (quoting Donaldson v. U.S., 400 U.S. 517, 531 (1971)).  A significantly protectable interest is "a legal interest as distinguished from interests of a general and indefinite character."  Harris, 820 F.2d at 601.  In addition, the interest must be one that belongs to the intervenor.  U.S. v. Alcan Aluminum, Inc., 25 F.3d 1174, 1185 (3d Cir. 1994) (proposed intervenor must be "real party in interest," and with standing to assert the claim).  See also New Orleans Pub. Serv. Inc. v. United Gas Pipe Line Co.,

732 F.2d 452, 462 (5th Cir. 1984) (interest must be one "which the substantive law recognizes as belonging to or being owned by the applicant") (quoted with approval in Alcan Aluminum).

      1.      The Milletts are not members of the Settlement Class in Townes, and therefore have no individual interest that would support intervention.

The Milletts clearly have no interest in this litigation sufficient to justify intervention under Rule 24(a)(2). Indeed, as Proposed Intervenors, the Milletts fail to identify any interest they have that would be impaired or otherwise impacted by the proposed Settlement herein. Indeed, perhaps in recognition of this fact, the Motion is silent with respect to any such interest or impact on the Millett's individual claims. Instead, the Milletts argue that the second and third requirements of Rule 24(a)(2) -- a legal interest in the litigation and a threat to that interest -- need not be established when seeking to intervene in a class action. (Brief, p. 19 citing In re Community Bank of Northern Virginia, 418 F.3d 277 (3d Cir. 2005)). In an obvious attempt to skirt their burden, the Milletts misleadingly cite this principle, as it clearly does not apply to the facts here.

Specifically, the principle cited by the Milletts is premised upon the presumption that the intervenor is a member of the class at issue in the litigation. In re Community Bank, 418 F.3d at 314. Where, as here, the intervenor is clearly not a member of the class, he simply has no legal interest in the class litigation. See Bradburn Parent/Teacher Store, Inc. v. 3M, 2004 U.S. Dist. LEXIS 25246, *12-13 (E.D. Pa. 2004) ("when [proposed intervenor was] excluded from the current class, it ceased to have a direct interest in the outcome of this litigation"); In re World Health Alternatives, Inc. Sec. Litig., 2007 U.S. Dist. LEXIS 6987, *6-9 (W.D. Pa. 2007) (intervenor who was neither a member of the class nor a party to the proposed settlement agreement did not have sufficient interest in litigation); Equal Employment Opportunity

Comm'n v. Customer Companies, Inc., 2003 U.S. Dist. LEXIS 19189*7 (N.D. Ill. 2003) (denying intervention to one who was not a member of the putative class, and "therefore [is] not an aggrieved party in this case"). Contrary to the Milletts' contention (Brief, p. 23), the second and third prongs of Rule 24(a)(2) are not "automatically met" when the proposed intervener is not a member of the class.

The Milletts seek to avoid the "significantly protectable interest" requirement because they have no interest. Although refusing to acknowledge it in their moving papers, the Milletts cannot dispute that they are not members of the Settlement Class. The Settlement here specifically excludes from the settlement class "all persons who are named plaintiffs in any action pending against [Trans Union or TrueLink] on the date of entry of the Hearing Order wherein the recovery sought is encompassed by the Released Claims." (Settlement, ¶ 2.24, Proposed Invervenor's Exhibit.).[7]  The Milletts' separate litigation against TrueLink, which arises from the Milletts' alleged purchase of Credit Monitoring from TrueLink, will remain pending before Judge Robinson. Consequently, to be entitled to intervene, they must affirmatively demonstrate that they have a legally protectable interest that will be impaired or impeded by disposition of the Townes Action (i.e., the Townes Settlement) without their intervention. This they cannot do.

2.    The Milletts' desire to represent the putative class is insufficient.

The Milletts suggest in very vague terms that they have an interest in representing the putative class in the Millett Action (see Proposed Intervenors' Brief, pp. 24-25). The Milletts offer no authority supporting such an interest as sufficient for Rule 24(a) purposes. To the

---

[7] The "Released Claims" include, inter alia, all claims which were brought or which could have been brought by Townes or any member of the Settlement Class relating to or arising from any of TrueLink's sale of Credit Monitoring or any other Offerings. (See Settlement Agreement, ¶¶ 2.16. 2.20).

contrary, such an "interest" would be inconsistent with law limiting intervention to situations where the substantive, not procedural, law recognizes the claimed interest. Alcan Aluminum, 25 F.3d at 1185; New Orleans Pub. Serv., 732 F.2d at 462. Further, the Third Circuit has made clear that interests which are speculative, indefinite, remote or attenuated, or those "of a general and indefinite character" are insufficient for purposes of intervention as of right. Harris v. Pernsley, 820 F.2d at 601. See also In re Safeguard Scientifics, 220 F.R.D. at 48. The Milletts' "interest" in representing a class is precisely what the Third Circuit warned against in the Community Bank opinion:

> [W]e are in no way suggesting that absent class members who merely express dissatisfaction with specific aspects of the proposed settlement or that attorneys (who, after finding one or more class members as clients, and wish to share in the forthcoming fee), have the right to intervene.

418 F.3d at 315.

Any interest the Milletts may have in representing a class in the Millett Action is entirely speculative. The Court has not certified a class in the Millett Action, and the motion to appoint the Milletts' counsel as interim class counsel was denied by Judge Robinson. Moreover, the Millets have no protectable interest, for Rule 24(a) purposes, in representing a class because any such interest is not a direct substantive right, but only a hoped-for procedural right to bring others' claims.

In contrast to the failed efforts of the Milletts' counsel to obtain interim appointment as class counsel, the motion filed by counsel for Townes here was granted. One purpose of appointing interim counsel pursuant to Rule 23(g)(2)(A) is so that "[s]ettlement may be discussed before certification." FED. R. CIV. P. 23(g)(2)(A) advisory committee's note; see also MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.11 (2006). Therefore, consistent with this

Court's appointment of interim counsel, defendants proceeded to negotiate settlement with counsel for Townes.[8]

3.    The Milletts cannot intervene on behalf of a proposed class.

Having demonstrated that the Milletts have no basis for intervening on their own behalf, it necessarily follows that they have no standing to represent a proposed class. Where an individual cannot meet the requirements of Rule 24(a) to intervene on his own behalf, courts will not allow that individual to represent a class of proposed intervenors. <u>See, e.g., Duffy v. Delaware County Bd. Of Prison Inspectors</u>, 1991 U.S. Dist. LEXIS 13342, *12-13 (E.D. Pa. 1991) (because intervenor had no protectable interest that would allow him to intervene individually, he therefore "may not intervene on behalf of the proposed class"). The <u>Duffy</u> court noted that "Rule 23(a) of the Federal Rules of Civil Procedure limits class action[s] to those which are brought by 'one or more members of a class . . . ' Having found that Silo has no basis for intervention on his own behalf, he may not intervene on behalf of a class." <u>Id.</u> at *13.

In addition, consistent with authorities previously cited, one seeking to intervene must assert an interest that belongs to him, and not others that he wants to represent. <u>See U.S. v. Alcan Aluminum</u>, 25 F.3d at 1185. This, coupled with the requirement of Rule 23 that a class representative be a member of the class he represents makes clear that the Milletts cannot intervene to represent the interests of the class.

---

[8] Notably, even after the Townes' counsel were selected over the Milletts' counsel in separate motions under Rule 23(g)(2)(A), Defendants here reached out to include the Milletts' counsel as part of negotiating a settlement. <u>See</u> Blanton Aff., ¶ 7.

B.     The Milletts Fail To Establish Impairment To Their Interests Or To The Interests Of A
       Proposed Class.

Perhaps even more clear is that neither the Milletts nor the class they purport to represent

has an interest that might be affected or impaired by the Settlement of the Townes Action.  The

Third Circuit has noted the high burden on a intervenor to demonstrate such a threat to a

cognizable interest.

> To intervene as of right as a party to the litigation, however, the
> applicant must do more than show that his or her interests may be
> affected in some incidental manner.  Rather, the applicant must
> demonstrate that there is a tangible threat to a legally cognizable
> interest to have the right to intervene.

Harris v. Pernsley, 820 F.2d at 601.  See also In re Safeguard Sec. Lit., 220 F.R.D. at 48 (same)

(citing Brody By and Through Sugzdinis v. Spang, 957 F.2d 1108, 1122-23 (3d Cir. 1992)).

    1.     As the Settlement does not affect the Milletts, it poses no threat to a cognizable
           interest.

Establishing the existence of a legally protectable interest and that the practical

impairment of the intervenor's absent intervention are two separate and distinct inquiries.  See

Liberty Mutual, 419 F.3d at 227.   Here, however, they are related in that the Milletts failure to

establish one affects the other.  Id. (courts should "examine the impairment element only after

the applicant for intervention as a matter of right has shown a legally protectable interest.").

Because the Milletts are not members of the Townes Settlement Class, their claims are beyond

the scope of the release contemplated by the Settlement.  Moreover, the Milletts make no

assertion that disposition of the Townes Settlement will impair their individual claims.

    2.     The ability of class members to opt out of the Settlement undercuts any possible
           impairment of their interests.

Also precluding any showing of impairment to the Milletts' interests or those of the class

is the fact that the Townes Settlement allows each member of the Settlement Class to determine

the course of their own claims by opting out of the Settlement.  Thus, even if the Milletts were members of the Settlement Class, or were otherwise capable of representing a class, the Milletts would still have no protectable interest that would be impaired by disposition of the <u>Townes</u> Action without their participation.  The Settlement allows potential Settlement Class members to opt out, and thereby preserve any and all claims they may have.  (Settlement, ¶¶2.17 and 2.24; <u>see also</u> D.I. 69, ¶ 16), Proposed Intervenors' Ex. C.).  Notably, the Milletts fail to acknowledge the opt-out rights of class members, and disingenuously argue that the right to object to the Settlement is insufficient. (Brief, pp. 24-25).

Courts have consistently denied intervention to individuals who are dissatisfied with a class settlement where they have the ability to protect their claims or interests by opting out of the settlement.  <u>See, e.g., Alaniz v. California Processors, Inc.,</u> 73 F.R.D. 269 (N.D. Cal. 1976).

> Although the intervenors, as potential members of the class, undoubtedly may claim an interest in the subject matter of the action, I find that they are not so situated that the disposition of this action may, as a practical matter, impair or impede their ability to protect their interests.  I note that the Agreement allows any class member who does not wish to be bound by the terms of the Agreement to exclude themselves by opting out.  Such persons, including the Proposed Intervenors if they so desire, are not bound by the Agreement and may pursue their own remedies in this or any other appropriate forum. . . . I am satisfied that the ability to opt out precludes the Proposed Intervenors from satisfying the impairment-of-interest test.

<u>Id.</u> at 289.  The use of a settlement class simply does not impair the ability of absent class members to protect their interests if they retain the ability to opt out of the class and the settlement.  <u>In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.,</u> 55 F.R.D. 768, 792 (3d Cir. 1995).  <u>See also In re Lorazepam and Clorazepate Antitrust Lit.,</u> 205 F.R.D. 363, 367 (D.D.C. 2001) (denying intervention where class members "may still opt out and preserve their rights . . . to pursue their own claims independently"); <u>Shore v. Parklane Hosiery</u>

Co., Inc., 1978 U.S. Dist. LEXIS 14211, *9 (S.D.N.Y. 1978) (denying motion of class members to intervene to challenge proposed class action settlement because their ability to opt-out means that disposition of the action will not impair or impede their ability to protect their interests, and "also forecloses the members from demonstrating inadequate representation").[9]

More to the point here, if in fact any members of the Settlement Class (1) believed, contrary to TrueLink's specific representations, that by purchasing credit monitoring, they would get notice of changes to other individuals' credit files and (2) that the Townes Settlement does not adequately address that claim, then they can opt out at any time on or before August 27, 2007. All such claims of those opting out would be wholly unaffected by the release contained within the Settlement.[10]

3.    The Settlement Class is not broader than the class alleged in the Townes Complaint.

Notwithstanding the ability of any class member to opt out of the Settlement, the Proposed Intervenors attempt to identify an impairment of their interests by mischaracterizing the breadth of the proposed release vis-à-vis the breadth of the class alleged in the Townes Complaint. Specifically, the Milletts argue that "the problem with the Settlement Agreement is that it purports to settle claims on behalf of a group of persons who do not fall within the class that is identified in the underlying complaint." (Brief, p. 17). This is simply not true. Yet by mischaracterizing the facts in this manner, the Milletts hope to mislead the Court to believe that

---

[9]    Similarly, the right of class members to opt out of a proposed class settlement also provides a basis for approving the settlement over class members' objections. See Marshall v. Holiday Magic, Inc., 550 F.2d 1173, 1177 (9th Cir. 1977) (class members "should not be allowed to play the role of spoilers for a class of more than 31,000 people when they could have chosen not to be bound by the settlement").

[10] Notably, this is not a case involving a limited fund or specific property that might be dissipated, nor would there be any stare decisis, res judicata or collateral estoppel effect on the ability of the Milletts to preserve and pursue their claims.

it is, and that the Milletts could not have known until recently that their rights, or the rights of their proposed class, were at risk.

As outlined above, the class alleged in the Townes Complaint included all persons who purchased anything from either Trans Union or TrueLink at any time after December 1, 1999. (Brief, Exhibit A at p.6) ("[a]ll persons who, at any time after [December 1, 1999], purchased any 'consumer' or 'personal' service from a Defendant . . ."). This included, in particular, purchasers of Credit Monitoring from TrueLink, as well as purchasers of other offerings, such as credit reports, credit scores, credit analyses, etc. In contrast, the class alleged in the Millett Complaint includes only such persons who purchased Credit Monitoring from TrueLink on or after September 9, 2001. (Brief, Exhibit B, pp. 22-23). As such, and as defense counsel advised the Court and the Milletts back in January 2006, the alleged Millett class is entirely subsumed within the class alleged in Townes.

Contrary to the Milletts' unsupported assertions, the Settlement does not reach beyond the claims that were at issue in the Townes Complaint. In fact, the Settlement and the release contemplated therein, is actually narrower insofar as it does not encompass claims arising from defendants' sale of credit reports or other products or services not specifically identified as "Offerings" in the Settlement.

C.    Plaintiff And Class Counsel In Townes Are Adequately Representing The Class.

"[T]o demonstrate entitlement to intervention as of right, the Proposed Intervenors must show that representation of their interests [by existing parties] may be inadequate." In re Safeguard Sec. Lit., 220 F.R.D. 43, 48 (E.D. Pa. 2004). Inadequate representation may be found where (1) the interest of the applicant so diverges from those of the representative party that the representative party cannot devote proper attention to the applicant's interest; (2) there is

collusion between the existing parties; or (3) the representative party is not diligently prosecuting the suit. Id. (citing Alcan Aluminum, 25 F.3d at 1185-86, n. 15).

In their attempt to establish that the counsel for Townes are not adequately representing the interests of the class, the Milletts argue that "the interests of the prospective class members in the Millett Action diverge sufficiently that the Plaintiffs in the Townes Action cannot devote attention to the interests of the prospective class members in the Millett Action." (Milletts' Brief, p. 22).[11]  Once again, the Milletts cannot purport to represent the Settlement Class because they are not members of such class, and their claims are wholly unaffected by the contemplated Settlement.  Therefore, the Milletts have no interest that will be impacted by the Townes Settlement, so theirs is not an interest that counsel in the Townes Action must adequately represent.

Even if they could assert the interests of the class, the Milletts fail to demonstrate a divergence of interests here.  As detailed above, the in-kind and injunctive relief that the Milletts sought in negotiating for their putative class is precisely the type of relief that is contemplated in the pending Settlement.  The Milletts requested free product for each of the putative Millett class members, and the Townes Settlement includes it; the Milletts requested that TrueLink contractually disclaim that any credit file other than that of the purchaser is reviewed as part of a credit monitoring subscription, and the Townes Settlement includes such a provision as well. See and compare Settlement Agreement, ¶¶ 5.1.6 and 6.2 with Brief, p. 10.  Thus, the Settlement clearly demonstrates that the interests of any members of the Settlement Class (if any) who, like the Milletts, may have misunderstood the scope and workings of the credit monitoring products, are being adequately represented.

---

[11] The Milletts do not (and cannot) argue collusion or a failure to diligently prosecute the case.

The Milletts have also not demonstrated that they can somehow serve the interests of the class in a way not currently served by counsel for Townes. As set forth above, the pending class settlement of the Equifax/Fair Isaac litigation includes injunctive relief, in-kind relief, a scope of release and other terms which are virtually identical to the Settlement here. Compare Ex. A to O'Neil Decl. with Settlement Agreement. The Milletts and their claim against Equifax were situated similarly to the Equifax/Fair Issac litigation in the same way that their claims against TrueLink are situated vis-à-vis the Townes Action. As here, the Equifax/Fair Isaac settlement would extinguish the claims of the putative class that the Milletts seek to represent. Yet, unlike here, the Milletts have not objected to the Equifax/Fair Isaac settlement, which was preliminarily approved, and have not sought to intervene in that action to do so. The Milletts took no such action even though, unlike the Settlement here, the Equifax/Fair Isaac settlement did not include the injunctive relief relating to the Milletts' claims.

The only distinction in the circumstances is that the Milletts have reached an individual settlement with Equifax. (D.I. 102 in Equifax). Because that settlement agreement is purportedly subject to a confidentiality provision, Defendants are unaware of the terms of that individual settlement, or the amounts of monies paid to the Milletts or their lawyers in exchange for agreeing not to intervene. It is clear, however, that the federal court in Georgia issued injunctive relief which benefited only Mr. Millett, and dismissed the class claims without notice to the class. (Id.) The Milletts do not explain by their papers here why they believe intervention is necessary, purportedly to protect the interests of the class, where after a private settlement with Equifax they took no steps to "protect" the putative class there from a settlement identical to that here.

Moreover, although no evaluation of the merits of the Milletts' claim against TrueLink is necessary, this Court can take notice of another federal court's thoughtful analysis -- and dismissal -- of nearly identical claims that the Milletts brought against Experian. As noted, that court held that the theory upon which the Milletts' breach of contract claim was based was "impractical and undesirable," and determined that "no reasonable person" would understand the same types of general marketing representations at issue here in the manner the Milletts allegedly understood them. See Order Granting in part and Denying in part Motion for Summary Judgment, pp. 4, 6, Millett v. Experian, attached as Ex. D to O'Neil Decl. Therefore, the claim that the Milletts seek to prosecute is, at best, questionable.

Accordingly, there is no showing that the interests the Milletts seek to represent are not already being adequately represented. "When the party seeking intervention has the same ultimate objective as a party to the suit, a presumption arises that its interests are adequately represented . . . " Wyatt v. Hanan, 170 F.R.D. 189, 192 (M. D. Ala. 1995) (citations and internal quotations omitted). "The party seeking intervention must 'contribute' something to the 'lawsuit beyond underlining the positions already taken' by the current parties." Id. (quoting Bush v. Viterna, 740 F.2d 350, 354 (5th Cir. 1984)). The fact that the Settlement Class excludes the Milletts does not mean that it excludes the interests that the Milletts seek to have represented. Indeed, the Townes Settlement includes specific injunctive relief that is specifically designed to address the interests that have been raised by the Milletts; indeed, the Milletts expressly requested such relief.

The fact that the Settlement provides individual notice to class members (and Proposed Intervenors), and provides each the opportunity to opt out of the Settlement Class, also demonstrates the adequacy of representation of Proposed Intervenors' interests by the existing

29

parties.  See Shore v. Parklane Hosiery Co., Inc., 1978 U.S. Dist. LEXIS 14211 at *9 (denying motion of class members to intervene to challenge proposed class action settlement, and noting that "[t]heir ability to opt out of the settlement . . . forecloses the members from demonstrating inadequate representation.").  See also Marshall v. Holiday Magic, Inc., 550 F.2d at 1177 (class members who were given notice of the settlement terms and the right to opt out were adequately represented;  their rights were fully protected because they had the ability to determine for themselves whether there had been adequate representation of their interests, and if they were dissatisfied, could opt out of the class).

In short, the terms of the Settlement are fair to the class, and are similar (although in one important respect, better) that the similar Equifax/Fair Isaac settlement that has been preliminarily approved by a federal court, as well as the Milletts themselves.  In the event any member of the Settlement Class disagrees with the adequacy of the settlement, or of the representation by Townes and his counsel, they can exercise their right to opt-out of the Settlement.

D.    Proposed Intervenors Rebuffed the Parties' Prior Efforts to Coordinate the Competing Lawsuits, and Their Motion is Untimely.

The Milletts argue that their Motion is timely because it was served shortly after receiving a copy of the Email Notice of the pending Settlement that was distributed to potential class members.  What they fail to explain, however, is why they waited more than 18 months after having notice of the pendency of this action and the claims asserted herein to seek to intervene.  Nor do they attempt to reconcile their prior efforts to avoid coordination of the lawsuits with their current request for intervention.

"In making a timeliness assessment, a district court must consider (1) the stage of the proceedings when the movant seeks to intervene; (2) the possible prejudice caused to other

parties by delay; and (3) the reason for delay. . . . [T]he length of time an applicant waits before applying for intervention . . . should be measured from the point at which the applicant knew, or should have known, of the risk to its rights." In re Safeguard Scientifics, 220 F.R.D. 43, 47 (E.D. Pa. 2004) (citing, inter alia, Mountain Top, supra; U.S. v. Alcan Aluminum, Inc., 25 F.3d 1174, 1182 (3d Cir. 1994)).

As set forth above, the Milletts filed their Second Amended Complaint in this Court on December 14, 2005, asserting various claims against TrueLink including violations of CROA on behalf of a putative nationwide class of TrueLink customers. Pursuant to Local Rule 3.1(b), counsel for the parties here advised the Court that the Millett Action and the Townes Action were related insofar as they had overlapping claims and putative classes. See Lafferty Letter, dated December 19, 2005, Ex. E to O'Neil Decl.

Moreover, although the Milletts failed to advise Judge Robinson of the Townes Action, or this Court's appointment of interim counsel there, TrueLink advised by its response of the relatedness of the actions. Specifically, TrueLink advised Judge Robinson that both the Millett Action and Townes Action involved putative nationwide claims for violations of CROA, and that "some, if not all, members of the putative class [in the Millett Action] are members of the putative class action in Townes." (D.I. 59 in Millett, p. 2). Yet, the Milletts insisted that the actions were not related and that no coordination was necessary. Based expressly on this contention by the Milletts, Judge Robinson found coordination unnecessary.

Against this history, which the Milletts conspicuously omit in their Motion, it is clear that as of December 2005 the Milletts were on notice that plaintiff in the Townes Action asserted similar claims on behalf of a similar class as that asserted here, thereby creating a risk to the

Milletts' desire to alone represent the putative class.[12]  In addition, the Milletts were advised by Defendants' counsel at the parties' Rule 26 conference in October 2006 that negotiations in the Townes Action were progressing.  Moreover, counsel for Defendants regularly updated the Milletts' counsel as to the status of these negotiations, including the specific negotiated terms, and repeatedly invited the Milletts' counsel to participate.  See Blanton Aff., ¶ 7 and Ex. E1 thereto; see also O'Neil Decl., ¶ 9.  O'Neil Letter, dated March 5, 2007 (Ex. B to O'Neil Decl.).

Although the Milletts may not have received notice of a fully-executed and preliminarily-approved settlement prior to May 10, 2007, their counsel was clearly put on notice months earlier that such a settlement would be reached.  As noted by the Milletts' counsel, negotiations with the Milletts "broke down," (Blanton Decl., ¶ 10), in large part due to counsel's demand for an attorneys' fee award "in the seven-figure range."  See Blanton Decl., Ex. E3, p. 2; O'Neil Decl., ¶ 11.  Even then, however, counsel for Defendants continued to advise the Milletts' counsel as to the status of those conversations with plaintiff's counsel in the Townes Action.  On March 5, 2007, counsel for the Defendants advised that a class-wide settlement would soon be reached with plaintiffs in the Townes Action, and generally described the scope of the anticipated settlement.  O'Neil Decl., ¶ 11 and Ex. B.  In sum, the Milletts had notice of the overlapping nature of the claims and classes in the Townes Action and Millett Action for 18 months, and had express notice of the pending settlement in the Townes Action for more than two months before they moved to intervene.  They offer no facts or circumstances that would excuse this delay.  See Mountain Top Condo, 72 F.3d at 369 (whether intervention is timely depends in part upon the reason for the delay).

---

[12]    Though the Milletts ultimately dismissed their CROA claims, they did not do so until more than a year later -- after having reasserted their CROA claims in a Third and a Fourth Amended Complaint with full knowledge of the Townes Action.

Finally, the Milletts ignore the prejudice that intervention would cause at this stage of the litigation. Among the factors to be considered in assessing timeliness is whether allowing intervention would cause undue prejudice to the existing parties. Id. Here it clearly would. Counsel for the parties herein have devoted months to negotiating the Townes Settlement. Since obtaining this Court's preliminary approval of the Settlement, the parties have devoted considerable time and incurred significant expense associated with sending individual notices to each potential member of the Settlement Class, building and launching the Settlement's dedicated website, and otherwise implementing the terms of the Settlement as directed by the Court's April 16, 2007 Hearing Order. Permitting the Milletts to intervene in this action, for the sole purpose of challenging unspecified terms of the Settlement, would be very prejudicial to the parties, as well as class members who have already acted in response to notice of the Settlement.

## CONCLUSION

WHERFORE, for all the foregoing reasons, defendants Trans Union LLC and TrueLink, Inc. (now known as TransUnion Interactive, Inc.), respectfully request that the Court deny in its entirety the Motion for Leave to Intervene.

**TRANS UNION, LLC and TRUELINK, INC.**

By: /s/ William M. Lafferty

William M. Lafferty (#2755)
**Morris, Nichols, Arsht & Tunnell LLP**
1201 N. Market Street
Wilmington, DE 19899
Phone:  (302) 658-9200
Fax:  (302) 658-3989

Of Counsel:
Michael O'Neil
**Paula D. Friedman**
**DLA Piper US LLP**
203 North LaSalle Street, Suite 1900
Chicago, IL 60601-1293
Phone: (312) 368-4000
Fax:    (312) 236-7516

34

<u>CERTIFICATE OF SERVICE</u>

I, William E. Green, Jr., hereby certify that on June 11, 2007 I caused the foregoing Defendants' Brief In Opposition To Motion For Leave To Intervene (Redacted Version) to be electronically filed with the Clerk of Court using CM/ECF, which will send notification of such filing(s) to the following:

Christopher J. Curtin, Esq.
Erisman & Curtin
629 Mt. Lebanon Road
Wilmington, DE 19803

Carmella P. Keener, Esq.
Rosenthal, Monhait & Goddess, P.A.
919 North Market Street, Ste. 1401
Citizens Bank Building
Wilmington, DE 19899

/s/ William E. Green, Jr. (#4864)
William E. Green, Jr. (#4864)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 N. Market Street
Wilmington, Delaware 19801
(302) 658-9200
bgreen@mnat.com
  Attorneys for Defendants

June 11, 2007