# Exhibit A

## AGREEMENT FOR SETTLEMENT OF HILLIS AND SLACK LITIGATION

This Agreement for Settlement of Hillis v. Equifax Consumer Services, Inc. and Fair Isaac Corporation, No. 1:04-CV-3400-TCB (N.D. Ga.) and Slack v. Fair Isaac Corporation and MyFICO Consumer Services, Inc., No. 3:05-CV-00257-MHP (N.D. Cal.) (collectively, the "Litigation") is entered into as of February 5, 2007 between Plaintiffs Robbie Hillis and Christy Slack, acting on their own behalf and on behalf of a proposed Class of similarly situated persons, on the one hand, and Equifax Consumer Services, Inc. and Fair Isaac Corporation, on the other. This Agreement (or "Settlement Agreement") memorializes the Settlement between the Parties on a class-wide basis.

I.    Recitals[1]

1.    On November 19, 2004, the Plaintiff in the Hillis Action, Robbie Hillis, commenced a putative class action in the United States District Court for the Northern District of Georgia against Equifax and Fair Isaac alleging causes of action for: (1) violations of the Credit Repair Organizations Act, 15 U.S.C. §§ 1679, et seq. ("CROA"); and (2) unjust enrichment.

2.    Defendants denied the allegations in the Hillis Action, denied wrongdoing of any kind, and further denied that this litigation satisfies the requirements for class certification under Federal Rule of Civil Procedure 23.

---

[1] Definitions contained in Section II infra.

UK-006-846525410

3.      On January 18, 2005, the Plaintiff in the <u>Slack</u> Action, Christy Slack, commenced a putative class action in the United States District Court for the Northern District of California against Fair Isaac and MyFICO Consumer Services, Inc. alleging substantially similar causes of action as the <u>Hillis</u> Action, including: (1) violations of CROA, (2) violations of the California Credit Services Act, Cal. Civ. Code §§ 1789.10, <u>et seq.</u>, and (3) unjust enrichment and money had and received.  Slack is represented by Class Counsel.

4.      In the <u>Slack</u> Action, Fair Isaac and MyFICO Consumer Services, Inc. denied the allegations, denied wrongdoing of any kind, and further denied that the litigation satisfies the requirements for class certification under Federal Rule of Civil Procedure 23.

5.      For approximately two years, the parties in the <u>Hillis</u> Action engaged in vigorous litigation and extensive discovery.  The parties in the <u>Hillis</u> Action conducted over 15 depositions, answered interrogatories, and responded to document requests. In the course of discovery, Equifax and Fair Isaac produced tens of thousands of documents.  The parties in the <u>Slack</u> Action also conducted substantial discovery, including taking 12 depositions, responding to interrogatories, requests for admissions, and the production of documents, as well as engaging in extensive motion practice. In addition to the separate discovery conducted in the <u>Hillis</u> Action, Fair Isaac and Slack stipulated that all

2

of the discovery produced and taken by and between Fair Isaac and Hillis would be treated as if it had also been conducted in the Slack Action.

6.    The negotiations leading up to this Settlement first began in the Hillis Action in October 2005, and included the use of a mediator. The Parties continued to discuss the possibility of settlement. Nevertheless, the Parties in the Hillis and Slack Actions continued to vigorously litigate their respective cases. For example, the parties in the Slack Action completed briefing on Slack's Motions for Class Certification and Partial Summary Judgment and Fair Isaac's Motion for Partial Summary Judgment in August 2006.

7.    On August 18, 2006, the Court in the Hillis Action issued an order denying Hillis' Motion for Class Certification, and granting in part and denying in part Hillis' Motion for Partial Summary Judgment.

8.    On September 1, 2006, Hillis filed a Motion for Partial Reconsideration of the Court's August 18 order. On September 25, 2006, Defendants filed an opposition to Hillis' motion.

9.    A three-hour hearing was held by the Court on October 13, 2006 on Hillis' Motion for Partial Reconsideration. The Court heard argument on the structure and interpretation of the CROA, whether a class action was superior, and whether Hillis was an adequate class representative. The Court invited each

3

party to submit a 12-page supplemental brief to respond to issues raised at the October 13 hearing.

10. On October 16, 2006, the court in the Slack Action heard argument on Slack's Motions for Partial Summary Judgment and Class Certification and Fair Isaac's Motion to Transfer the Slack Action to the Northern District of Georgia.

11. Following the above court hearings, the Parties continued settlement negotiations. The Parties obtained three short extensions of time to file their supplemental briefing to the Court in the Hillis Action.

12. Following several further discussions, an in-person negotiation was held on November 20, 2006. The Parties worked toward reaching an agreement in principle to resolve the Hillis and Slack Actions.

13. As the settlement negotiations in the Hillis Action developed, it became apparent that any settlement would necessitate a complete resolution of all claims at issue, including those in the Slack Action. Because the claims asserted in the Hillis and Slack Actions are substantially similar, the Parties deemed it more efficient to present this Settlement to the Hillis Court, where all Defendants are parties.

14. The Parties recognize that the outcome of this Litigation is uncertain, and that a final result through the litigation process would require substantial

4

risk and additional discovery, time, and expense. The Parties and their counsel therefore have agreed and desire to resolve this Litigation as a settlement class action according to the terms of this Settlement Agreement.

15.    The Parties and their counsel believe that the Settlement Agreement is a fair, reasonable, and adequate resolution of the Litigation. The Parties further believe that the prompt implementation of the Settlement Agreement is preferable to further prosecution of the Litigation as a means for resolving all claims, if any, that Hillis, Slack and Settlement Class Members may have concerning:  (i) violations of the Credit Repair Organizations Act; (ii) violations of any other federal or state statute or regulation that applies to credit repair; and (iii) any legal or equitable claim relating to the Offerings.

## II.    Definitions

16.    "Associated Literature" means the marketing and advertising used in connection with the Offerings, including radio advertisements, television advertisements, print advertisements, banner advertisements, email campaigns, newsletters, marketing and advertising statements contained in Defendants' Websites, internet keyword purchases/auctions, metatag embedment, and search engine optimization.

17.    "Class Counsel" means Pope, McGlamry, Kilpatrick, Morrison & Norwood, LLP, who are the attorneys of record for Hillis, Slack and the

LIT2000.9665229.10

Settlement Class in the Hillis and Slack Actions; and Battle, Fleenor, Green, Winn & Clemmer LLP, who are the attorneys of record for Slack and the Settlement Class in the Slack Action.

18.    "Consumer List" means a list produced by each of the Defendants containing the following information for each and every consumer from November 19, 1999 through the date of entry of the Preliminary Approval Order who purchased an Offering from the Defendant: (i) the consumer's first, middle and last name; (ii) the consumer's current address, if known; (iii) the consumer's date of birth; (iv) the consumer's Social Security Number and (v) the consumer's current email address, if known.

19.    "Contractual Associate" means any entity with which the Defendants have a contractual relationship whereby the entity (i) posts a link to a Defendant's Website on its website and receives a commission (or other compensation) for driving traffic to the Defendant's Website; (ii) advertises, promotes, markets, provides, and/or sells any Offering; or (iii) offers a private label or co-branded version of any of Defendants' Offerings; provided however, that Contractual Associate shall not include Trans Union LLC, Experian Information Solutions, Inc. and their corporate parents, affiliates and subsidiaries.

6

DSADI 9669319.18

20. "Court" means the United States District Court for the Northern District of Georgia.

21. "Defendants" means Equifax and Fair Isaac.

22. "Defendants' Websites" means the Equifax Consumer Website and the Fair Isaac Consumer Website.

23. "Effective Date" shall mean the date on which the Judgment becomes Final.

24. "Equifax" means Equifax Consumer Services, Inc.

25. "Equifax Consumer Website" means www.equifax.com.

26. "Fair Isaac" means Fair Isaac Corporation.

27. "Fair Isaac Consumer Website" means www.myfico.com.

28. "FICO® Kit" means the Suze Orman FICO® Kit.

29. "Final" means the termination of the Litigation after each of the following events: (i) the Settlement Agreement is approved in all respects by the Court; and (ii) a Judgment of dismissal with prejudice is entered with respect to the Plaintiffs and all Settlement Class Members who do not Opt-Out as provided by Rule 23 of the Federal Rules of Civil Procedure and the time for the filing of any appeals has expired or, if there are appeals, approval of the Settlement and Judgment has been affirmed in all respects by the appellate court of last resort to

US2000 9663759.10

which such appeals have been taken and such affirmances are no longer subject to further appeal or review.

30.   "Hillis" means Robbie Hillis.

31.   "Hillis Action" means the action entitled Hillis v. Equifax Consumer Services, Inc. and Fair Isaac Corporation, No. 1:04-CV-3400-TCB (N.D. Ga.).

32.   "Injunctive Relief" means the injunctive relief that will be provided by Defendants as described in Section V of this Agreement.

33.   "Judgment" means the judgment and order entered by the Court approving the Settlement in all respects and dismissing with prejudice the claims of the Plaintiffs and the Class who do not Opt-Out as provided by Rule 23 of the Federal Rules of Civil Procedure.

34.   "Long-Form Notice" means the notice of the Settlement (in a form substantially similar to that mutually agreed upon by the Parties and approved by the Court) provided to the Settlement Class that provides the Class with all the information necessary to be provided to the Class pursuant to Federal Rule of Civil Procedure 23 and the requirements of due process.

35.   "Offering" means those products or services that are offered by Equifax or Fair Isaac for sale to consumers in return for the payment of money and are further identified as one of the following (including all components, features, content and variants thereof, regardless of the website from which the

-8-

purchase is made): Score Power; Credit Watch; Score Watch; 3-in-1 Monitoring; Credit Rankings with Score Power; Credit Rankings with 3-in-1 with Score Power; Credit Rankings with Credit Report; Credit Rankings with 3-in-1; 3-in-1 with Score Power; Score Power by mail; Credit Watch by mail; FICO® Score (with Equifax, TransUnion or Experian reports); FICO® Deluxe; Suze Orman FICO® Kit; CreditSync; and Credit Advantage.

36. "Opt-Out" means to timely request exclusion from the Settlement pursuant to Federal Rule Civil Procedure 23(c)(2)(B).

37. "Parties" or "Settling Parties" means Plaintiffs, Equifax and Fair Isaac.

38. "Plaintiffs" means Hillis and Slack.

39. "Preliminary Approval Order" means the order of the Court: (i) certifying the Settlement Class under Federal Rule of Civil Procedure 23(b)(3); (ii) preliminarily approving the proposed Settlement Agreement; and (iii) approving the proposed notices;

40. "Released Claims" means any and all claims, actions, demands, causes of action, suits, obligations, damages, rights or liabilities, of any nature and description whatsoever, known or unknown, present or future, concealed or hidden, liquidated or unliquidated, fixed or contingent, anticipated or unanticipated, whether in tort, contract, law, equity or otherwise, that have been,

9

could have been or might in the future be asserted by Plaintiffs in the Hillis or Slack Actions or the Settlement Class Members or any of their respective heirs, spouses, executors, administrators, partners, attorneys, predecessors, successors, assigns, agents and/or representatives, and/or anyone acting or purporting to act on their behalf, arising out of the marketing, sale, purchase, representations and advertisements concerning or use of the Offerings. Released Claims include, but are not limited to, all claimed or unclaimed compensatory damages, damages for emotional distress, damages for physical injury, damages for reputational injury, statutory damages, consequential damages, incidental damages, punitive and exemplary damages, as well as all claims for equitable, declaratory or injunctive relief under any federal or state statute or common law or other theory that was alleged or could have been alleged in the Hillis or Slack Actions with respect to the marketing, sale, purchase, representations concerning or use of the Offerings, including but not limited to any and all claims under the Credit Repair Organizations Act, 15 U.S.C. § 1679, *et seq.*, State CROA Statutes, deceptive or unfair practices statutes, common law, or any other statute, regulation or judicial interpretation. Released Claims further include interest, costs and fees arising out of any of the claims asserted or that could have been asserted in the Hillis or Slack Actions. Released Claims do not include claims under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA") and/or the Fair and Accurate

10

Credit Transactions Act of 2003; Pub. L. 108-159, 111 Stat. 1952 ("FACTA").

Notwithstanding the foregoing, nothing in this Agreement shall be deemed a

release of the Parties' respective rights and obligations under this Agreement.

    41.   "Released Parties" means and refers to:  (i) Equifax Consumer

Services, Inc. and its present, former and future officers, directors, employees,

agents, attorneys, shareholders, predecessors, successors, subsidiaries, corporate

affiliates, parents, representatives, insurers, vendors and assigns, or interest

therein, jointly and severally; (ii) Fair Isaac Corporation and its present, former

and future officers, directors, employees, agents, attorneys, shareholders,

predecessors, successors, subsidiaries, corporate affiliates, parents,

representatives, insurers, vendors and assigns, or interest therein, jointly and

severally; and (iii) Contractual Associates who (a) acknowledge receipt of the

terms of Injunctive Relief, in accordance with Paragraph 66 hereof, and

(b) marketed, sold, or made representations concerning any of the Offerings;

provided however, that a Contractual Associate is a Released Party only with

respect to claims arising from the marketing, sale, purchase, representations

concerning, or use of the Offerings.

    42.   "Settlement" means the agreement between Plaintiffs, on behalf of

themselves and on behalf of the Settlement Class, and Equifax and Fair Isaac to

settle and compromise the issues arising out of Plaintiffs' Complaints (and

11

DJ0000966529.10

amendments thereof) in the Hillis and Slack Actions and the issues arising out of said Actions, finally and forever, as memorialized in this Settlement Agreement.

43. "Settlement Administrator" means a third-party settlement administrator chosen by the Parties.

44. "Settlement Class" or "Class" means all consumers residing in the United States who, between November 19, 1999, and the date of entry of the Preliminary Approval Order, entered into an agreement with any of the Defendants to purchase any of the Offerings, paid any of the Defendants for that Offering but did not later obtain a complete refund from any source and received said Offering. Settlement Class or Class, however, shall not include: (i) all judicial officers in the United States and their families through third degree of relationship; (ii) all officers, directors, employees or counsel of the Released Parties; (iii) all persons who have already settled or otherwise compromised their claims against the Defendants; (iv) all persons who Opt-Out; and (v) all persons who have pending against any of the Defendants on the date of entry of the Preliminary Approval Order any action wherein the recovery sought is encompassed by the Released Claims.

45. "Slack" means Christy Slack.

46. "Slack Action" means Slack v. Fair Isaac Corporation and MyFICO Consumer Services, Inc., No. 3:05-CV-00257-MHP (N.D. Cal.).

12

US1999 3645219.10

47.    "State CROA Statutes" means any state statute that is substantially similar, in scope and purpose, to the Credit Repair Organizations Act, 15 U.S.C. §§ 1679, et seq.

III.    General Terms and Conditions.

48.    Coordination of Litigation.  As soon as reasonably practicable after the execution of the Settlement Agreement, the Parties and their counsel will take all reasonable steps and use best efforts to join with, support, and cooperate fully in the request that the court before which the Slack Action is pending transfer the Slack Action to the Court, where it will be coordinated for settlement purposes only with the Hillis Action.  The Parties contemplate conferring with the respective courts before making formal requests to those courts regarding transfer or settlement.

49.    Benefit to Plaintiffs.  Plaintiffs and Class Counsel have concluded, under the circumstances and considering the pertinent facts and applicable law, that it is in Plaintiffs' and the Settlement Class' best interests to enter into this Settlement Agreement to avoid the uncertainties of litigation and to ensure a benefit to Plaintiffs and all members of the Settlement Class.  Plaintiffs and Class Counsel consider this Settlement Agreement to be fair, reasonable, and adequate and in the best interests of the members of the Settlement Class.

13

50.    <u>No Admission of Liability</u>.  By entering into this Agreement, the Settling Parties agree that Defendants are not admitting any liability to the Plaintiffs, the Settlement Class, or any other person or entity, and Defendants expressly deny all such liability.  Defendants' sole motivation for entering into this Settlement Agreement is to dispose expeditiously of the claims that have been asserted against them in the Litigation by settlement and compromise rather than incur the expense and uncertainty of protracted litigation.  No portion of this Agreement may be admitted into evidence in any action, except as required to enforce this Agreement and/or to cease or enjoin other litigation.

51.    <u>Settlement Class Definition</u>.  Plaintiffs shall propose, and Defendants shall join or not oppose, for settlement purposes only, that the District Court certify the Settlement Class under Rule 23(b)(3) of the Federal Rules of Civil Procedure, as the term "Settlement Class" is defined herein.

52.    <u>Cessation of Litigation Activity</u>.  Plaintiffs and Class Counsel agree not to initiate any additional litigation against Defendants concerning the claims alleged in the Litigation.  Immediately upon execution of this Agreement, Plaintiffs, Class Counsel and Defendants agree to cease all litigation activity in the Litigation (other than any activity to implement and/or enforce this Settlement Agreement) and to request the courts in the <u>Hillis</u> and <u>Slack</u> Actions to stay all motions or other pre-trial matters and to continue any hearing or trial

14

settings until each of the conditions precedent to the Settling Parties' obligations to proceed to consummate the Settlement provided for herein has been satisfied or waived.

53.    Class Certification. The Court's certification of the Settlement Class shall not be deemed to be the adjudication of any fact or issue for any purpose other than the accomplishment of the settlement provisions set forth herein and shall not be considered as law of the case, res judicata, or collateral estoppel in this or any other proceeding unless the settlement receives final approval and the Judgment approving the terms of this Settlement Agreement is entered and becomes Final. In the event the Settlement provided for herein is not accomplished according to all the terms of this Agreement, the Litigation for all purposes will revert to its status prior to the execution of this Settlement Agreement and the Court's certification order shall be null and void and shall be vacated, and thereafter no class will remain certified; provided that, thereafter Plaintiffs and Class Counsel may seek certification of a new class before the Court, and Defendants may oppose such certification on any grounds, as described below. In such event, the Slack Action will be transferred back to Judge Patel in the Northern District of California without prejudice Fair Isaac's right to request from Judge Patel that the Slack Action be litigated in the Northern District of Georgia.

15

US2000 9469916.10

### IV.    Notice to the Settlement Class

54.    For purposes of providing Court-approved class notices and establishing that the best practicable notice has been given, membership in the Settlement Class and the provision of class notice will be accomplished in accordance with the provisions of this Section IV.

55.    <u>Combining of Consumer Lists</u>:  The Parties shall cause the Settlement Administrator to merge the Consumer Lists of the Defendants, eliminate any duplicative/overlapping entries, retain any and all of the email addresses associated with each consumer, and track which Defendant provided each consumer's name.  The list produced at the end of this process shall be a conclusive list of the members of the Settlement Class (hereafter the "Class List").

56.    <u>Email Notice</u>:  Within thirty (30) days after the Court's entry of the Preliminary Approval Order, the Defendants shall cause the Settlement Administrator to send the Email Notice (in a form substantially similar to that mutually agreed upon by the Parties and approved by the Court) by email to each Settlement Class Member at each member's last known email address(es) as provided by the Defendants.  A Class Member who purchased an Offering from both of the Defendants will only be sent one Email Notice.  The Email Notice will set forth the objection and Opt-Out dates, will contain the HTML or web address for the Settlement Website where pertinent information concerning the

16

Settlement will be available, and will include a toll-free telephone number at which assistance will be available. Not later than seven (7) days before the Final Fairness hearing, Defendants and/or the Settlement Administrator will cause proof of the emailing of the Email Notice to be filed with the Court.

57.    Postcard Notice:  In the event that an Email Notice sent to a particular Settlement Class Member is "bounced back" from or is otherwise identified as having been undeliverable to the recipient's email server, or no email address is located, within twenty-one (21) days of the sending of the Email Notice, Defendants shall cause the Settlement Administrator to send Postcard Notice (in a form substantially similar to that mutually agreed upon by the Parties and approved by the Court) by first-class mail to each such Settlement Class Member.  The Postcard Notice shall be sent to the last known address reflected in the Defendants' Consumer Lists, as updated by utilizing the National Change of Address process.  The Postcard Notice will set forth the objection and Opt-Out dates, will contain the HTML or web address for the Settlement Website where the Long-Form Notice and pertinent information concerning the Settlement will be available, and will include a toll-free telephone number at which assistance will be available.  Not later than seven (7) days before the Final Fairness hearing, Defendants and/or the Settlement Administrator will cause proof of the mailing of the Postcard Notice to be filed with the Court.  Neither

17

the Defendants nor the Settlement Administrator shall have any further obligation to send the Class Members notice of the Settlement, except as provided in Paragraph 72 hereof.

58.    Internet Notice:  Defendants shall establish an internet web site containing information about the Settlement.  The Settlement Website will be accessible no later than five (5) days prior to the emailing of the Email Notice described above.  The Settlement Website will set forth the following information:  (i) the full text of the Settlement Agreement; (ii) a Long-Form Notice (in a form substantially similar to that mutually agreed upon by the Parties and approved by the Court); (iii) the Preliminary Approval Order and other relevant orders of the Court; and (iv) contact information for Class Counsel and the Settlement Administrator.  Nationwide access to the Settlement Website will be ensured via the following methods:  (i) the Settlement Website will be registered with Google so that appropriate queries on Google will yield a link to the Settlement Website; (ii) a web link will be posted on the Defendants' Websites so that visitors to the Defendants' Websites may jump directly to the Settlement Website; and (iii) the Email Notice and Postcard Notice will reference the Settlement Website.  Not later than seven (7) days before the Final Fairness hearing, Defendants and/or the Settlement Administrator will cause proof of the

18

establishment and maintenance of the Settlement Website to be filed with the Court.

59.    Telephone Assistance Program: Defendants will establish a toll-free telephone number, which will be staffed by the Settlement Administrator, to answer questions from the Settlement Class Members. At Defendants' sole election, the toll-free number will provide access to live support, a voice response unit ("VRU") or a combination of VRU and live support; provided however, that the Class Members will have the option to leave a voice mail message with the Settlement Administrator, which message will be responded to, as appropriate. Not later than seven (7) days before the Final Fairness hearing, Defendants and/or the Settlement Administrator will cause proof of the establishment and maintenance of the Telephone Assistance Program to be filed with the Court.

60.    All costs associated with the notice program described in Section IV of the Agreement shall be paid by the Defendants.

61.    It is stipulated and agreed that the foregoing terms with respect to notice are material conditions precedent to Defendants' obligations under this Agreement. If the extent, manner or form of notice provided for in this Agreement are not approved by the Court in all material respects, it is understood that Defendants will not be obligated to proceed with the Settlement provided for herein.

19

## V.    Injunctive Relief

62.    All of the affirmative relief contemplated by this Settlement is expressly contingent upon the proposed Settlement receiving the Court's Final Approval, the Court entering the Judgment and the Judgment becoming Final. Defendants shall implement the following changes for a term not to exceed two (2) years from the Effective Date:

   i.    Defendants agree that their Offerings and Associated Literature will not use the following terms: "improve," "enhance," "boost," "raise" and "increase" in the same phrase as "score" or "rating"; however, an exception will be allowed when discussing hypothetical examples in the Score Simulator, such as "These Actions May Improve My Score";

   ii.    Defendants agree that their Offerings and Associated Literature will not use the phrases "credit repair," "credit rebuilding," "credit fix," "repair your credit," "fix your credit" or combinations of those words; provided however, that the Defendants may use such terms in the disclaimer described in Paragraph 62.v. below and may post links on their Websites to the FTC's or similar state agencies' web sites.

   iii.    Defendants agree that their Offerings and Associated Literature will not use the terms "advice", "tips", "suggestions" and

20

TRX000 946529310

"instructions" in the same phrase as "improving," "enhancing," boosting," "raising" and "increasing" a credit score or credit rating;

     iv.    Defendants agree that their Offerings and Associated Literature that refer to the Score Simulator will add an explanation regarding the general nature of the simulated score associated with the Score Simulator, and will not suggest that the simulated score is "always" (or its equivalent) predictive of one's actual score;

     v.    A disclaimer that Defendants are not credit repair organizations, or similarly regulated organizations under other applicable laws, and do not provide credit repair advice shall be prominently displayed in bold at the top of the Terms of Use displayed by Defendants during the purchase process on the Defendants' Websites;

     vi.    Fair Isaac agrees that Associated Literature that refers to the Personal Coaching modules in its FICO® Kit will make clear that any such modules will focus on issues such as debt relief, buying a car, etc., and not the improvement of an individual consumer's credit score;

     vii.    Fair Isaac agrees that its FICO® Kit will delete the "Suze's FICO School" and "FICO Improvement Plan" modules;

     viii.    Fair Isaac agrees that it will also offer on its Website for free a module similar to that offered in the FICO® Kit to assist a consumer to write a

21

letter to a credit bureau listing potential errors identified by the consumer in his or her credit report, and that Associated Literature related to this module will only list that feature as one of the several features of the FICO® Kit but will not emphasize that feature over any other feature or suggest that it has any independent value;

        ix.    Equifax agrees to maintain a link to www.annualcreditreport.com on the Equifax Consumer Website; and

        x.    Fair Isaac agrees that it will place a link to www.ftc.gov/credit on the home page of the Fair Isaac Consumer Website.

63.    To the extent that a webpage on a Defendant's Website does not comply with the Injunctive Relief defined above, such webpage shall not: (i) contain any marketing or advertisement of the Defendants' Offerings; or (ii) contain any links to web pages that market, advertise or offer for sale Defendants' Offerings; provided however, that such a webpage may contain the "Navigation Bar" that is the same as and contained on all of Defendants' web pages and such "Navigation Bar" may include an option that links to a webpage that describes, promote or offers for sale the Defendants' Offerings or similar products.

64.    Within sixty (60) days after the Effective Date, the Defendants shall implement the Injunctive Relief described above. Without any admission of

US2000.9465229.19

liability by the Defendants for their prior actions and statements, upon implementation of the Injunctive Relief described above, the Settling Parties believe that none of the Defendants will fall within the statutory definition of a "credit repair organization" contained in 15 U.S.C. § 1679a, a "credit services organization" contained in Cal. Civ. Code § 1789.12 or the equivalent term defined in a substantially similar manner contained in a State CROA Statute.

65.    Without any admission of liability by the Defendants for their prior actions and statements, the Settling Parties further agree to request that the Court find, as part of its overall approval of the Settlement, that upon implementation of the Injunctive Relief described above, none of the Defendants will fall within the statutory definition of a "credit repair organization" contained in 15 U.S.C. § 1679a, a "credit services organization" contained in Cal. Civ. Code § 1789.12 or the equivalent term defined in a substantially similar manner contained in a State CROA Statute.

66.    Within sixty (60) days after the Effective Date, the Defendants shall cause a summary of the Injunctive Relief terms of this Settlement applicable to Contractual Associates to be sent (via email or mail) to each of their Contractual Associates and Defendants shall (i) advise the Contractual Associates that the Defendants will require the Contractual Associates to comply with the Injunctive Relief terms applicable to Contractual Associates and (ii) request that the

23

Contractual Associate acknowledge receipt of the terms. Defendants will not encourage Contractual Associates to circumvent, or use Contractual Associates for the purpose of circumventing the Injunctive Relief terms of this Settlement. This Agreement does not create any additional obligation on the Defendants to monitor the compliance of their Contractual Associates with the Injunctive Relief herein. If either Defendant becomes aware that any of its Contractual Associates is not in compliance with the Injunctive Relief terms applicable to Contractual Associates, such Defendant shall contact the Contractual Associate and demand that the Contractual Associate comply with the Injunctive Relief. Beginning thirty (30) days after the Court's entry of the Preliminary Approval Order, the Defendants shall incorporate into all contracts that are executed in the future with their Contractual Associates a provision that the contract will incorporate the Injunctive Relief terms applicable to Contractual Associates contained herein as of the Effective Date.

67. The Court shall retain jurisdiction of the Hillis and Slack Actions for the purpose of interpretation of, compliance with and enforcement of this Agreement, including enforcement of the Injunctive Relief herein.

68. Nothing in this Settlement or Settlement Agreement shall prevent the Defendants from complying with the law as it may exist now or in the future, or from making future changes to adjust their websites if consistent with

24

US2000 9645219.10

applicable statutes, statutory amendments, exemptions, regulations or case law precedent. Furthermore, nothing in this Settlement or Settlement Agreement shall prevent Defendants from complying with their obligations under state and federal law.

69. _Relation to Other Agreements, Laws, and Interpretations, Future Exemption from the CROA or Similar Statutes:_ The Parties recognize that situations may arise in which provisions of the Agreement may conflict with, or differ from, other laws, rules, regulations, statutes, agreements, and the like. In that regard, the parties have agreed as follows:

i. _Other Agreements or Legal Requirements:_ In the event that in the future, in conjunction with any other matter, lawsuit, regulatory matter, or similar event, Equifax or Fair Isaac (or any of their successors, if applicable) enters into any agreement, consent judgment, settlement, injunction, consent decree, or other binding document regarding the subject matter of the Injunctive Relief or any section herein, or is otherwise required by a court or state or governmental agency to do something or refrain from doing something regarding the subject matter of any section herein, or concerning or relating to the subject matter of the Litigation ("Other Agreement or Requirement"), then, after notice to and consultation with Class Counsel, Equifax and/or Fair Isaac may petition the Court for relief from any provision of the Injunctive Relief or

25

this Agreement. If the Court grants such relief, then the Settlement will be modified accordingly without the requirement of notice to the Settlement Class or additional consideration by the requesting party or any other Defendant.

ii.    New Law or New Legal Interpretation: In the event any federal or state law, rule, regulation, or a judicial, agency, or administrative interpretation including but not limited to formal policy statement or letter ruling is passed, adopted, communicated or rendered after the Effective Date of this Agreement concerning or relating to the Injunctive Relief or the subject matter of any provision of the Injunctive Relief or this Agreement, or concerning the subject matter of the Litigation (a "New Law or Interpretation"), then, after notice to and consultation with Class Counsel, Equifax and/or Fair Isaac may petition the Court for relief from any provision of the Injunctive Relief or this Agreement. If the Court grants such relief, then the Settlement will be modified accordingly without the requirement of notice to the Settlement Class or additional consideration by the requesting party or any other Defendant.

iii.    Inconsistent Agreements, Law, or Legal Interpretation: In the event any New Law or Interpretation, or Other Agreement or Requirement, imposes requirements that are inconsistent with any provision of this Agreement, or Equifax and/or Fair Isaac directly or indirectly becomes bound by any agreement, consent judgment, settlement, or other binding document

26

US2000.9669239.1E

regarding the subject matter of any provision or section herein, or is otherwise required by a court or state or governmental agency to do something or refrain from doing something regarding the subject matter of any provision herein, or concerning or relating to the subject matter of the Injunctive Relief or the Litigation, then, in the good faith exercise of their discretion, Defendants may comply with such inconsistent requirement(s) or inconsistent agreement(s), and such actions will constitute compliance with this Agreement and shall not be deemed a breach thereof. Provided, however, that Defendants (either individually or jointly) shall timely provide written notice to Class Counsel and the Court of the inconsistent New Law or Interpretation, or Other Agreement or Injunction, with which either or both Defendants intend to comply, and if Class Counsel disputes the inconsistency, then Class Counsel may petition the Court for an order requiring Defendants to comply with the claimed inconsistent provision of this Agreement.

        iv.    For purposes of this Agreement, a requirement of a New Law or Interpretation, or Other Agreement or Requirement, shall be deemed to be inconsistent with a provision or provisions of this Agreement if Equifax and/or Fair Isaac cannot comply with the New Law or Interpretation, or Other Agreement or Requirement, without violating a corresponding provision or provisions in this Agreement.

27

v.   <u>Future Exemption from the CROA</u>:  If, following the Effective Date, Equifax and/or Fair Isaac qualifies for one of the exemptions currently or in the future provided in 15 U.S.C. § 1679a(3)(B) or in any similar provisions under federal or state law then, after notice to Class Counsel and the Court, said party shall be relieved from the Injunctive Relief provisions in this Agreement.  If Class Counsel disputes that the notifying Party falls within the exclusion, then Class Counsel may petition the Court for an order requiring the requesting party to continue to comply with the Injunctive Relief provisions of this Agreement.

**VI.   In-Kind Relief**

70.   In addition to the Injunctive Relief described above, each Defendant agrees to offer, without charge, to any eligible Settlement Class Member who purchased an Offering from it the following In-Kind Relief.  If a Class Member purchased Offerings from both of the Defendants, then the Class Member will be eligible to receive In-Kind Relief from each of the Defendants.

71.   <u>In-Kind Relief</u>:  Each of the Defendants will provide three (3) months of Score Watch (the "In-Kind Relief") to each Class Member who purchased any Offering from it.  If a Class Member purchased an Offering from both of the Defendants, the Class Member will be eligible to receive two (2) units of In-Kind Relief, one from each of the Defendants.  To obtain the In-Kind Relief, the Class Member must complete the Authentication Process described below.

28

72. Authentication Process:

i. The Class Member must fully complete the Authentication Form (in a form substantially similar to that mutually agreed upon by the Parties and approved by the Court). The Authentication Form will request that the Class Member provide the following information: (a) name; (b) current address; (c) previous address, if the Class Member has changed addresses within the prior two (2) years; (d) date of birth; (e) the last four (4) digits of his Social Security Number; and (f) current email address. The Authentication Form will be available online at the Settlement Website from the date of sending of the Email Notice through seventy-five (75) days after the Effective Date. The Authentication Form may be submitted either on-line or by U.S. mail. The Authentication Form, if completed on-line, must be submitted not later than seventy-five (75) days after the Effective Date. The Authentication Form, if submitted by U.S. mail, must be postmarked not later than seventy-five (75) days after the Effective Date and mailed to the Settlement Administrator, at the address so designated on the Authentication Form.

ii. Upon receipt of a completed Authentication Form, the Defendants and/or the Settlement Administrator will verify that the person submitting it is a Class Member by comparing the information on the Authentication Form to the information contained in the Class List. Defendants

29

and/or the Settlement Administrator will review the completed Authentication Form and determine if there is sufficient evidence that the person submitting it is likely to fit within the Settlement Class. If there is a reasonable probability that the person submitting a Authentication Form is a Class Member, he or she will be treated as a Class Member. If Defendants and/or the Settlement Administrator regard the Authentication Form as deficient (i.e., the form contains insufficient information from which to determine whether the person submitting the form is a Class Member), Defendants and/or the Settlement Administrator will notify the person who submitted it and give him an opportunity to cure the deficiency. If Defendants and/or the Settlement Administrator continue to regard any Authentication Form as deficient, Defendants or the Settlement Administrator will provide the person's information (excluding Social Security Number) to Class Counsel. If Class Counsel and Defendants cannot resolve the dispute, the Authentication Form will be rejected and the person who submitted it will be notified of the rejection by Defendants or the Settlement Administrator with a copy of the notice of rejection served upon Class Counsel. Neither the Defendants nor the Settlement Administrator shall have any further obligation to any person whose Authentication Form is rejected.

DB2000 9645359.10

iii.     Within fifteen days (15) after the Effective Date, the Defendants shall cause the Settlement Administrator to send a Notice of Eligibility (in a form substantially similar to that mutually agreed upon by the Parties and approved by the Court) by email to the Class Members. Neither the Defendants nor the Settlement Administrator shall have any further obligation to send the Notice of Eligibility to the Class Members. The Notice of Eligibility shall (i) advise the Class Members of the last date on which Authentication Forms may be submitted; and (ii) provide an estimated timeframe for the distribution of Benefit Code Notices.

iv.     On or about ninety days (90) after the Effective Date, but in no event sooner than August 1, 2007, the Defendants shall cause the Settlement Administrator to begin sending the Benefit Code Notice (in a form substantially similar to that mutually agreed upon by the Parties) by email to the Class Members who completed and timely submitted a Authentication Form at the email address provided on the Authentication Form. Either or both of the Defendants, in their sole discretion, may elect to stagger the distribution the Benefit Code Notices over a six (6) month period; provided however that for every 30-day period following the initial distribution of the Benefit Code Notices, at least one-sixth of the Benefit Code Notices must be distributed. If a Defendant elects to stagger the distribution of the Benefit Code Notices, the order of

DB02:6007230.10

distribution will be alphabetical. Neither the Defendants nor the Settlement Administrator shall have any further obligation to send the Benefit Code Notice to the Class Members.

        v.    The Benefit Code Notice will provide the Class Member with the website address at which the In-Kind Relief may be obtained, a benefit code that will be used in place of payment and instructions on how to obtain the In-Kind Relief. In order for the Class Members to obtain the In-Kind Relief, they will be required to successfully complete the authentication process required by the Defendants for all purchasers of Defendants' Offerings and otherwise must be eligible to receive Score Watch. The Defendants agree that at the time the Class Member redeems his benefit code, the Class Member will not be solicited to purchase any additional products or services, unless such solicitation is made in the normal course of the purchase process and is made to all purchasers of Score Watch. The Defendants shall not have any further obligation to provide In-Kind Relief other than as outlined above.

        vi.    If a Class Member is eligible to receive In-Kind Relief from only one Defendant, the Benefit Code will expire ninety (90) days after it is delivered to the Class Member. If a Class Member is eligible to receive In-Kind Relief from both of the Defendants, he will receive two (2) benefit codes, one for

32

each Defendant, and the Benefit Codes will expire one hundred and eighty (180) days after they are delivered to the Class Member.

       vii.    For any Class Member who (a) is currently enrolled in Score Watch through one of the Defendants, (b) submits a Authentication Form and (c) uses the benefit code, the three (3) months of Score Watch provided in this Settlement will be added to end of the Class Member's current Score Watch enrollment period. If the Class Member's membership in Score Watch is paid on a monthly basis, the applicable Defendant will suspend the automatic credit card deduction for the three-month period following use of the benefit code. Upon expiration of the three-month period, the Defendant may resume the automatic credit card deduction at the end of the then current monthly term without further notice to the Class Member. If the Class Member's membership in Score Watch is paid on a yearly basis, the applicable Defendant will suspend the automatic credit card deduction at the end one-year enrollment period for the three-month period following use of the benefit code. Prior to charging the Class Member's credit card for the next one-year enrollment period, the Defendant will provide the Class Member with its customary notice regarding charging the Class Member for the next one-year enrollment period.

## VII. Releases

73. <u>Release</u>: Upon the Effective Date, Plaintiffs and each member of the Settlement Class, their respective spouses, heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors and assigns and all those acting or purporting to act on their behalf with respect to the Offerings marketed and sold by the Defendant(s), shall conclusively be deemed to have fully, finally and forever released, relinquished and discharged the Released Parties from and against any and all of the Released Claims.

74. <u>Waiver of Unknown Claims</u>: Plaintiffs and the Settlement Class Members, on behalf of themselves and their respective spouses, heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors and assigns, and all those acting or purporting to act on their behalf, hereby warrant, represent and agree that unknown losses or claims could possibly exist and that present losses may have been underestimated in amount or severity. Plaintiffs and the Settlement Class Members, on behalf of themselves and their respective spouses, heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors and assigns, and all those acting or purporting to act on their behalf, explicitly take that into account in entering into this Agreement, and a portion of the consideration and the mutual covenants contained herein have been bargained for between Plaintiffs and the

34

DM0XXXXXX.fo

Settlement Class Members, on the one hand, and Defendants, on the other hand, with the knowledge of the possibility of such unknown claims and losses, and were given in exchange for a full accord, satisfaction and discharge of all such Released Claims. Consequently, Plaintiffs and the Settlement Class Members expressly waive and are deemed to waive all rights under California Civil Code Section 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASES, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

75.    Plaintiffs and all Settlement Class Members do and are deemed to understand and acknowledge the significance of this waiver of California Civil Code Section 1542 and/or of any other applicable law relating to limitations on releases. In connection with such waiver and relinquishment, Plaintiffs and all Settlement Class Members do and are deemed to acknowledge that they are aware that they may hereafter discover facts in addition to, or different from, those facts which they now know or believe to be true with respect to the subject matter of this Settlement, but that it is their intention to release fully, finally and

forever all claims against the Released Parties relating to the Offerings, the Hillis Action, and the Slack Action, and in furtherance of such intention, the release of all claims will be and remain in effect notwithstanding the discovery or existence of any such additional or different facts.

**VIII.  Attorneys' Fees and Costs**

76.    Defendants agree to pay reasonable attorney's fees and costs as determined by the Court up to $4,000,000.00 (Four Million Dollars and No Cents). Defendants further agree that they will not oppose any request by Class Counsel for attorney's fees and costs to the extent such request does not exceed $4,000,000.00.  In no event shall Defendants be liable for attorney's fees and costs of more than $4,000,000.00.  That amount includes not only the payment of all attorney's fees, costs, and expenses to Class Counsel, but also payment for all attorneys and other persons working under the direction of Class Counsel in the Hillis and Slack actions.  Class Counsel agrees not to request attorney's fees and costs exceeding $4,000,000.00.  Defendants shall pay the amount of attorney's fees and costs approved by the Court (not to exceed $4,000,000.00) within seven days (7) of the Effective Date.  No other agreement exists between the Parties as to attorney's fees and costs.

US2000 9449239.10

## IX.　Incentive Award Payment to Plaintiffs

77.　In recognition of the time and effort the Plaintiffs Hillis and Slack expended in pursuing the lawsuits, in participating in discovery, in fulfilling their obligations and responsibilities as Class Representatives, and of the benefits conferred on all of the Class Members by the Settlement, Class Counsel will ask the Court to award an Incentive Award to each Plaintiff in an amount not to exceed $7,500.00 (Seven Thousand Five Hundred Dollars) per award. Defendants agree that they will not oppose any request by Class Counsel for Incentive Awards to the extent such requests do not exceed $7,500.00 (Seven Thousand Five Hundred Dollars) per Plaintiff. Defendants shall pay the Incentive Award approved by the Court (not to exceed $7,500.00 (Seven Thousand Five Hundred Dollars) per Plaintiff) within seven days (7) of the Effective Date. No other agreement exists between the Parties as to payments to be made to the Plaintiffs.

## X.　Court Approval

78.　Court Submission: Class Counsel and Defendants' counsel will submit this Settlement Agreement, along with such other supporting papers as may be appropriate, to the Court for preliminary approval of this Settlement Agreement pursuant to Rule 23 of the Federal Rules of Civil Procedure. If the Court declines to grant preliminary approval of this Settlement Agreement and

37

to order notice of hearing with respect to the proposed Settlement Class, or if the Court declines to grant final approval to the foregoing after such notice and hearing, this Settlement Agreement will terminate as soon as the Court enters an order unconditionally and finally adjudicating that this Settlement Agreement will not be approved. In the event the Court grants preliminary approval of the Settlement Agreement, the parties will request that the Court enter a scheduling order setting the dates by which Class Members must Opt-Out of the Settlement and file any objections, as well as schedule the Final Fairness hearing in this matter.

79.    <u>Final Judgment</u>:  The Settling Parties agree that the Settlement is expressly conditioned upon dismissal with prejudice of the Litigation, entry of a Judgment and the Judgment becoming Final.  The Settling Parties will jointly submit a proposed Judgment prior to the Final Fairness hearing.

80.    The <u>Hillis</u> Action was commenced on November 19, 2004 and the <u>Slack</u> Action was commenced on January 18, 2005.  No amendment to the originally filed complaints or other event in the Actions has caused either Action to be recommenced for purposes of the Class Action Fairness Act ("CAFA").  Therefore, no notices are required to be sent under CAFA and the Preliminary Approval Order shall so recite.

## XI.   Termination

81.    Any Party shall have the unilateral and unfettered right to individually terminate this Agreement and the Settlement and declare it null and void, if any of the following conditions occurs:

      i.    The Court (or any other court) requires a Notice Program materially different from the Notice Program outlined in Section IV of this Agreement or as finally agreed upon by the Parties as reflected in the Settlement Agreement;

      ii.    The Court fails to issue a Preliminary Approval Order in accordance with the terms of the Settlement Agreement;

      iii.    The Court fails to enter a Judgment dismissing the Hillis and Slack Actions with prejudice and integrating the material terms of the Settlement Agreement, including but not limited to the scope of the Released Claims and Released Parties;

      iv.    The Judgment is appealed and such Judgment is finally reversed or modified on appeal; and

      v.    The Slack court fails to transfer the Slack Action to this Court.

82.    Each Defendant shall have the unilateral and unfettered right to individually terminate this Agreement and the Settlement and declare it null and

US2000.9665239.10

void if more than 0.7% of the Settlement Class Members who purchased an Offering from that Defendant elect to Opt-Out.

83.   If any of conditions described above occur and any of the Parties elect to terminate the Settlement and the Settlement Agreement then:  (i) the Settlement and the Settlement Agreement (including without limitation the class certification provisions thereof) shall have no further force and effect with respect to any Party to the Hillis and Slack Actions and shall not be offered in evidence or used in the Hillis Action, the Slack Action or any other proceeding; (ii) counsel for the Parties shall seek to have any Court orders, filings, or other entries on the Court's file that result from the Agreement, the Settlement and the Settlement Agreement set aside, withdrawn, and stricken from the record; (iii) the Settlement and the Settlement Agreement, and all negotiations, proceedings, and documents prepared, and statements made in connection with either of them, shall be without prejudice to any Party and shall not be deemed or construed to be an admission or confession by any Party of any fact, matter, or proposition of law; and (iv) all Parties to the Hillis Action and the Slack Action shall stand in the same procedural position as if the Settlement and the Settlement Agreement had not been negotiated, made, or filed with the Court.  In such event, the Slack Action will be transferred back to Judge Patel in the Northern District of California without prejudice Fair Isaac's right to request

40

from Judge Patel that the Slack Action be litigated in the Northern District of Georgia.

## XII.  Miscellaneous Provisions

84.   Integration Clause:  This Settlement Agreement contains a full, complete, and integrated statement of each and every term and provision agreed to by and among the Settling Parties and supersedes any prior writings or agreements (written or oral) between or among the Settling Parties, which prior agreements may no longer be relied upon for any purpose.  This Settlement Agreement shall not be orally modified in any respect and can be modified only by the written agreement of the Settling Parties.  In the event a dispute arises between the Settling Parties over the meaning or intent of this Agreement, the Settling Parties agree that prior drafts, notes, memoranda, discussions or any other oral communications or documents regarding the negotiations, meaning or intent of this Agreement shall not be offered or admitted into evidence.  Plaintiffs and Class Counsel acknowledge that, in entering into this Settlement Agreement, they have not relied upon any representations, statements, actions, or inaction by Defendant or its counsel that are not expressly set forth herein.

85.   Headings:  Headings contained in this Agreement are for convenience of reference only and are not intended to alter or vary the construction and meaning of this Agreement.

41

86. <u>Governing Law</u>: To the extent not governed by the Federal Rules of Civil Procedure, the contractual terms of this Agreement shall be interpreted and enforced in accordance with the substantive law of the State of Georgia without regard to principles of conflict of laws.

87. <u>Arbitration</u>: By participating in this Settlement, some members of the Settlement Class are waiving their existing rights to pursue individual arbitration claims against Equifax and Fair Isaac for the Released Claims as defined in Paragraph 40. Pursuant to the Terms of Use between Equifax or Fair Isaac and some members of the Class, the parties generally agreed to resolve all claims and disputes by binding arbitration. By participating in the Settlement, neither Equifax, Fair Isaac nor members of the Settlement Class are waiving their rights under the Terms of Use to pursue arbitrations involving claims other than the Released Claims or from seeking to compel arbitration of similar claims that may arise in the future. Nothing in this Agreement shall be deemed to create a right of any Party to seek arbitration.

88. <u>Mutual Interpretation</u>: The Settling Parties agree and stipulate that this Agreement was negotiated on an "arms'-length" basis between parties of equal bargaining power. Also, the Agreement has been drafted jointly by Class Counsel and counsel for Defendants. Accordingly, this Agreement shall be

42

neutral, and no ambiguity shall be construed in favor of or against any of the Settling Parties.

89.    Notice: Except as otherwise specifically provided herein, whenever any written notice is required by the terms of this Agreement, it shall be deemed effective on the date received, addressed as follows:

If to Plaintiffs or the Class to:

C. Neal Pope
Wade H. Tomlinson, III
Pope, McGlamry, Kilpatrick,
     Morrison & Norwood
1111 Bay Avenue, Suite 450
P.O. Box 2128 (31902-2128)
Columbus, GA 31901

Michael L. McGlamry
Pope McGlamry, Kilpatrick,
     Morrison & Norwood
The Pinnacle, Suite 925
3455 Peachtree Road, N.E.
P.O. Box 191625 (31119-1625)
Atlanta, GA 30326-3243

If to Fair Isaac to:

Charles M. Osborne
Chief Executive Officer
Fair Isaac Corporation
901 Marquette Avenue
Suite 3200
Minneapolis, MN 55402

Frederick Brown
Gibson, Dunn & Crutcher
One Montgomery Street
Suite 3100
San Francisco, CA 94104

If to Equifax to:

Kent E. Mast
Corporate Vice President and
     General Counsel
Equifax Inc.
1550 Peachtree Street
Atlanta, GA 30309

A. Stephens Clay
Kilpatrick Stockton LLP
1100 Peachtree Street
Suite 2800
Atlanta, GA 30309

UB2000 966229.10

90.  <u>Counterpart Execution</u>:  This Agreement may be executed in any number of counterparts and will be binding when it has been executed and delivered by the last signatory hereto to execute a counterpart. A facsimile signature shall be deemed to constitute an original signature for purposes of this Agreement. After execution of counterparts by each designated signatory, Defendants agrees to furnish each Party with a composite conformed copy of this Agreement reflecting all counterparts signatures.

91.  <u>Binding Upon Successors</u>:  This Agreement shall be binding upon and inure to the benefit of the Settling Parties hereof and their representatives, heirs, successors, and assigns.

92.  <u>Severability</u>:  In the event any one or more of the provisions contained in this Agreement shall for any reason be held invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provisions if the Settling Parties and their counsel mutually elect by written stipulation to be filed with the Court within twenty (20) days to proceed as if such invalid, illegal, or unenforceable provisions had never been included in this Agreement.

93.  <u>Warranty of Counsel</u>:  Class Counsel unconditionally represent and warrant that they are fully authorized to execute and deliver this Agreement on behalf of the Class Plaintiff.  Defendants unconditionally represent and warrant

44

that they are fully authorized to execute and deliver this Agreement on behalf of Defendants.

94.     The Parties to this Settlement and their counsel agree that they shall act in good faith and exercise their best efforts to effectuate this Settlement and its Final Approval.

US2000368525v10

The undersigned Parties have executed this Agreement as of the date first above written.

Dated: February 1, 2007       ROBBIE HILLIS

By: _____
                 Robbie Hillis

Dated: February ___, 2007      CHRISTY SLACK

By: _____
                 Christy Slack

Dated: February ___, 2007      EQUIFAX CONSUMER SERVICES, INC.

By: _____

Its: _____

Dated: February ___, 2007      FAIR ISAAC CORPORATION

By: _____

Its: _____

The undersigned Parties have executed this Agreement as of the date first above written.

Dated: February ___, 2007           ROBBIE HILLIS

                                    By: _____
                                              Robbie Hillis

Dated: February 1, 2007             CHRISTY SLACK

                                    By: _____
                                              Christy Slack

Dated: February ___, 2007           EQUIFAX CONSUMER SERVICES, INC.

                                    By: _____

                                    Its: _____

Dated: February ___, 2007           FAIR ISAAC CORPORATION

                                    By: _____

                                    Its: _____

The undersigned Parties have executed this Agreement as of the date first above written.

Dated: February __, 2007          ROBBIE HILLIS

                                  By: _____
                                           Robbie Hillis

Dated: February __, 2007          CHRISTY SLACK

                                  By: _____
                                           Christy Slack

Dated: February 5, 2007           EQUIFAX CONSUMER SERVICES, INC.

                                  By: _____
                                           Kent E. Mast
                                  Its:    Vice President & General Counsel

Dated: February __, 2007          FAIR ISAAC CORPORATION

                                  By: _____
                                  Its:

The undersigned Parties have executed this Agreement as of the date first above written.

Dated: February ___, 2007          ROBBIE HILLIS

                                   By: _____
                                            Robbie Hillis

Dated: February ___, 2007          CHRISTY SLACK

                                   By: _____
                                            Christy Slack

Dated: February ___, 2007          EQUIFAX CONSUMER SERVICES, INC.

                                   By: _____

                                   Its: _____

Dated: February 5, 2007            FAIR ISAAC CORPORATION

                                   By: _____

                                   Its: CEO/CFO

APPROVED AS TO FORM:

Dated: February 5, 2007

POPE, McGLAMRY, KILPATRICK,
MORRISON & NORWOOD LLP
C. NEAL POPE
MICHAEL McGLAMRY
WADE H. TOMLINSON, III

By: _____

Attorneys for Robbie Hillis, Christy Slack
and the Settlement Class

Dated: February 5, 2007

KILPATRICK STOCKTON LLP
A. STEPHENS CLAY
CRAIG E. BERTSCHI
CINDY D. HANSON

By: _Cindy S Hanson_____

Attorneys for Equifax Consumer Services,
Inc.

Dated: February ___, 2007

GIBSON, DUNN & CRUTCHER LLP
FREDERICK BROWN
REBECCA JUSTICE-LAZARUS
JAYESH HINES-SHAH

By: _____

Attorneys for Fair Isaac Corporation

APPROVED AS TO FORM:

Dated: February ___, 2007

POPE, McGLAMRY, KILPATRICK,
MORRISON & NORWOOD LLP
C. NEAL POPE
MICHAEL McGLAMRY
WADE H. TOMLINSON, III

By: _____

Attorneys for Robbie Hillis, Christy Slack
and the Settlement Class

Dated: February ___, 2007

KILPATRICK STOCKTON LLP
A. STEPHENS CLAY
CRAIG E. BERTSCHI
CINDY D. HANSON

By: _____

Attorneys for Equifax Consumer Services,
Inc.

Dated: February 5, 2007

GIBSON, DUNN & CRUTCHER LLP
FREDERICK BROWN
REBECCA JUSTICE-LAZARUS
JAYESH HINES-SHAH

By: _____

Attorneys for Fair Isaac Corporation

# Exhibit B



DLA Piper US LLP.
203 North LaSalle Street, Suite 1900
Chicago, Illinois 60601-1293
T 312.368.4000
F 312.236.7516
W www.dlapiper.com

MICHAEL O'NEIL
michael.oneil@dlapiper.com
T 312.368.4098
F 312.630.7319

March 5, 2007

**VIA E-MAIL and U.S. MAIL**

All Plaintiffs' Counsel of Record
(See attached Service List)

Re: *Millett v. TrueLink, Inc.*

Dear Counsel:

As I have explained on several occasions, we have been negotiating for many months a possible class settlement in connection with the *Townes v. Trans Union LLC and TrueLink, Inc.* action. In connection with those discussions, we have also negotiated with you the terms of a possible settlement of the above-referenced action. Although we were making progress on many non-financial terms of a possible settlement, our conversations regarding settlement of the above-referenced action broke down recently. Nonetheless, we have continued to discuss settlement in connection with the *Townes* action, and I am cautiously optimistic that we will soon be able to reach agreement on a class-wide settlement.

I have explained to you many of the most significant terms of the settlement we have been discussing with the *Townes* lawyers. Consistent with those prior discussions, I can represent to you that any settlement that we reach in *Townes* will be substantively similar to the terms of the class settlement agreement for the *Hillis/Slack* litigation. As you know, that agreement was preliminarily approved, and is set for final hearing in June, 2007. We note that the Milletts have settled their claims in the action they have brought against Equifax, and that the Milletts filed no objection to the *Hillis/Slack* settlement in connection with the preliminary approval hearing (as they did in the *Browning* litigation).

Just as in the *Hillis/Slack* settlement agreement, the individual claim of your clients will not be affected by any class settlement reached in *Townes*; however, any claims of the putative class your clients seek to represent in the above-referenced action would be affected. Given this fact, and your acquiescence to the *Hillis/Slack* settlement, we do not expect any objection by your clients to any class settlement in *Townes*. Nonetheless, and consistent with our earlier discussions, I wanted to advise you of the current status of our discussions with *Townes* counsel.

CHGO1\30908510.1



All Plaintiffs' Counsel of Record
March 5, 2007
Page 2

With that in mind, when we talk tomorrow, please let us know if you think any further discussion regarding settlement would be fruitful at this time.

Sincerely,

*Michael O'Neil*

Michael O'Neil

MON/lms

CHGO1\30908510.1

## SERVICE LIST

### Millett v. TrueLink, Inc.
### Case No. 05-599-SLR

Christopher J. Curtin
Erisman & Curtin
629 Mount Lebanon Road
Wilmington, DE 19803
ccurtin659@aol.com

Bryson R. Cloon
Cloon Law Firm
11150 Overbrook Road
Leawood, KS 66211
Bryson@cloonlaw.com

Michael W. Blanton
Swanson Midgley, LLC
2420 Pershing Road, Suite 400
Kansas City, MO 64108
mblanton@swansonmidgley.com

Barry R. Grissom
7270 W. 98th Terrace
Building 7, Suite 220
Overland Park, KS 66212
bgrissom@sprintmail.com

B. Joyce Yeager
Yeager Law Firm LLC
City Center Square, 26th Floor
1100 Main Street
Kansas City, MO 64105
jyeager@joyceyeagerlaw.com

# Exhibit C

REDACTED

# Exhibit D

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No.   SACV 05-879 JVS (RNBx)          Date   December 18, 2006

Title:   Steven G. Millet et al. v. Experian Information Solutions, Inc., et al.

---

Present: The Honorable   James V. Selna

| Karla J. Tunis | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

Attorneys Present for Plaintiffs:          Attorneys Present for Defendants:

Not Present                                                Not Present

Proceedings:   (In Chambers)          Order Granting in part and Denying in part Motion
for Summary Judgment.

## I.   INTRODUCTION

Defendants Experian Information Solutions, Inc., et al. (collectively, "Experian")
seek summary judgment or, alternatively, partial summary judgment with respect to
claims asserted by Plaintiffs Steven G. Millet, et al. (collectively, "the Millet Plaintiffs").

## II.   BACKGROUND

The Millet Plaintiffs bring the instant action alleging claims for breach of contract
and for violations of the California Consumers Legal Remedies Act ("CLRA"). Their
claims arise from the sale and advertisement of the Credit Manager product.

Credit Manager is an online product offering to assist consumers in avoiding
identity theft. (Williams Decl., Ex. B.) The web pages seen by a potential purchaser of
Credit Manager repeatedly specify that the services offered relate to information on the
purchaser's Experian credit report. The website states that Credit Manager offers
"constant monitoring of your credit report to alert you of potential fraudulent activity"
(Williams Decl., Ex. B at EXP 00001); "daily email alerts of significant changes to your
credit report" (id. at EXP 00003); "peace of mind by scanning your credit report daily
and alerting you to potential fraudulent items and other critical changes in your credit
report" (id. at EXP 00005). It is clear by the representations made on the web pages that
the credit report in question is generated by Experian. (Williams Dec., Ex. B.)

Before purchasing the Credit Manager service on her husband's behalf, Ms.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Case No:    SACV 05-879 JVS (RNBx)              Date:  December 18, 2006

Title    Steven G. Millet et al. v. Experian Information Solutions, Inc., et al.

Millett clicked a box on the online order form stating that she had "reviewed the CreditExpert terms and conditions and agree[d] to them." (Defendants' Statement of Uncontroverted Facts ¶ 5.) Ms. Millet had the opportunity at that moment to read the Terms and Conditions, which claim to "constitute the entire agreement between CreditExpert and you in connection with your use of this Web Site, the Services, and the Content." (Williams Decl., Ex. A at EXP 00016.) The terms and conditions specifies that "Credit Expert has used reasonable efforts in collecting, preparing and providing quality information and material, but makes no warranty or guarantee about the accuracy, completeness, or adequacy of the information contained in this Web Site." (Id. at EXP 00013.)

III.    DISCUSSION

A.    Legal standards

Summary judgment is appropriate only where the record, read in the light most favorable to the non-moving party, indicates that "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Material facts are those necessary to the proof or defense of a claim, and are determined by reference to substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." (Id. at 248.) In deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." (Id. at 255.)

The burden initially is on the moving party to demonstrate an absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. If and only if the moving party meets its burden, then the non-moving party must produce enough evidence to rebut the moving party's claim and create a genuine issue of material fact. (See id. at 322-23.) If the non-moving party meets this burden, then the motion will be denied. Nissan Fire & Marine Ins. Co. v. Fritz Co., Inc., 210 F.3d 1099, 1103 (9th Cir. 2000).

B.    Contract claims

Experian argues that the Millet Plaintiffs lack sufficient evidence to create a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   SACV 05-879 JVS (RNBx)          Date   December 18, 2006

Title      Steven G. Millet et al. v. Experian Information Solutions, Inc., et al.

genuine issue of material fact with respect to breach and damages. (Opening Br. 13-19.) In addition, Experian argues that any claim for breach of contract is barred by warranty disclaimer language reviewed and accepted upon purchase of Credit Manager. (Id.)

Experian contends that the Millet Plaintiffs cannot show any of four separate bases for breach: (1) failure to provide email notifications; (2) failure to provide access to Millett's Experian Credit Report; (3) failure to provide quality information; and (4) failure to provide advanced notification of renewal. Plaintiffs have abandoned the second basis for breach (Opp'n 1); and so the Court will not address it.

       **I.**   **Email Notifications**

Experian contends that it was only under a contractual duty to provide an email alert if any of the following changes occur to a subscriber's Experian credit report: a new account, a new delinquency, a new inquiry, a new judgment, or a new or changed address. (Opening Br. 13-14; Williams Decl. ¶¶ 5, 9.) Because the Millet Plaintiffs have not provided evidence that any of the five triggering events occurred, Experian maintains that they cannot show breach for failing to send email notifications. (Opening Br. 14.)

The Millet Plaintiffs concede that none of the triggering items occurred to Mr. Millet's credit report (Plaintiffs' Statement of Genuine Issues ¶ 13), but argue that, nonetheless, Experian was under a contractual duty to provide email notification of other events, such as when another individual allegedly used Mr. Millet's social security number to open a new account. (Id.; Opp'n Br. 18.) Specifically, the Millet Plaintiffs claim that the Credit Manager product fails to "associate all data that would indicate identity theft with the particular consumer who would find that information useful," and fails "to monitor the information that is matched to a particular consumer for all incidents that could indicate identity theft." (Opp'n Br. 4-5.)

The Millet Plaintiffs' argument is essentially that, though defendants "could do more to protect consumers from identity theft, they simply choose not to." (Opp'n Br. 6.) Whether the Defendants could conceivably do more is irrelevant to whether defendants agreed to perform a certain service. The relevant question is whether Experian had a contractual obligation to provide Credit Manager customers with information that does not appear on a subscribing customer's Experian credit report. The Court finds that Experian was under no such obligation.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | SACV 05-879 JVS (RNBx) | Date | December 18, 2006 |
|---|---|---|---|

| Title | Steven G. Millet et al. v. Experian Information Solutions, Inc., et al. |
|---|---|

Credit Manager is a product which verifies, on a daily basis, whether a purchaser's Experian credit report has changed in five specific ways commonly associated with identity theft. (Williams Decl. ¶ 5.) There may be some ambiguity as to what precisely Credit Manager promises to examine, but it is clear that there was no offer to search for information that would not appear on a purchaser's credit report.

The Millett Plaintiffs fail to allege a basis for breach. There is no allegation that Credit Manager failed to convey information indicative of identity theft which appeared on the credit report. Rather, the allegations pertain to specific conduct of a Mr. Perez that was never reflected in Mr. Millet's credit report, and to general aspirations of what Credit Manager could do to protect purchasers from fraudulent activity. The Court agrees with Experian that, in order to show breach, the Millett Plaintiffs must demonstrate that Mr. Perez's conduct was reflected in Mr. Millett's Experian credit report. Plaintiffs have made no such allegations. The Court additionally agrees with Experian that the ways in which the Millett Plaintiffs believe Credit Manager ought to perform appear to be impractical and undesirable. (See Reply 7-11.)

    2.    Failure to provide quality information

The Millett Plaintiffs also allege that the performance of Credit Manager violates the promise to use "reasonable efforts" to collect, prepare, and provide "quality information." (Williams Decl., Ex. A at EXP 00013.) These terms pertain to the function of the product within the universe of examining the credit report. Experian has fulfilled its burden in demonstrating that there is no genuine issue of material fact as to whether it exerted reasonable efforts to provide quality information. There is no dispute that Credit Manager does indeed check daily to ensure that a purchaser's Experian credit report has not changed in ways commonly associated with identity theft.

The Millett Plaintiffs argue that a genuine issue of material fact exists as to whether it was unreasonable for the Credit Manager product to fail to inform purchasers of information in its possession indicative of identity theft. In order to meet their burden, the allegations must identify a failure in how Credit Manager examines the purchaser's credit report. Instead, the allegations pertain only to information that never impacted Mr. Millett's credit report. Plaintiffs therefore fail to meet their burden.

    3.    Failure to provide advanced notification of renewal

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | SACV 05-879 JVS (RNBx) | Date | December 18, 2006 |

| | |
|---|---|
| Title | Steven G. Millett et al. v. Experian Information Solutions, Inc., et al. |

Experian does not dispute that it did not provide the Millett Plaintiffs with notification thirty days prior to automatic renewal of the contract, as the contract provides. (Reply 19.) Rather, Experian argues that the Milletts lack standing to sue for damages, because they received a full refund following a phone call Ms. Millett placed shortly after being charged the membership fee; Ms. Millett has dismissed her breach of contract claims; and Mr. Millett lacks standing to sue on behalf of his wife's "petty inconveniences." (Reply 19.) Experian argues in the alternative that "this minor issue would fall well within the scope of the liability disclaimer contained in the Credit Manager contract." (Reply 19.)

If Experian indeed failed to give proper notice to Mr. Millett before renewing his contract, the fact that his damages may be slight or nonexistent is immaterial to the question of breach. See Sweet v. Johnson, 169 Cal.App.2d 630, 632-33 (1959) ("the maxim that the law will not be concerned with trifles does not, ordinarily, apply to violation of a contractual right"); Restatement (Second) of Contracts §346(2) ("if the breach caused no loss or if the amount of the loss is not proved . . , a small sum fixed without regard to the amount of loss will be awarded as nominal damages"); California Civil Code § 3360 ("[w]hen a breach of duty has caused no appreciable detriment to the party affected, he may yet recover nominal damages.")

With respect to the liability disclaimer, the Court finds no language relevant to the advanced notification provisions, and Experian has cited to none.

Accordingly, Experian fails to carry its Celotex burden regarding its alleged failure to provide advance notification of renewal.

### C.     CLRA claims

In determining whether conduct is deceptive under the CLRA, the Court applies a reasonable consumer standard. Consumer Advocates v. Echostar Satellite Corp., 113 Cal. App. 4th 1351, 1360 (2003). The Millett Plaintiffs contend that their burden is satisfied by the fact the Mr. and Ms. Millett claim to have been misled. (Opp'n Br. 7.) This argument fails. The test is not whether the *plaintiff in suit* was misled, but rather whether the *public* was likely misled, judged by a hypothetical ordinary consumer acting reasonably under the circumstances. Colgan v. Leatherman Tool Group, Inc., 135

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | SACV 05-879 JVS (RNBx) | Date | December 18, 2006 |
| Title | Steven G. Millet et al. v. Experian Information Solutions, Inc., et al. | | |

Cal.App.4th 663, 682 (2006).

### 1.    Claims concerning how Credit Manager functions

The Millett Plaintiffs claim that Experian deceptively represented what Credit Manager does. Specifically, that it deceptively promises broad forms of identity theft protection and that it scans the purchaser's credit report daily.

The Millett Plaintiff claim that a reasonable consumer would believe that the Credit Manager product provides "broad protection against identity theft," such that any information that would assist the purchaser in detecting incidents of identity theft would be relayed to them. However, for the same reasons described above (section II.B.1 and 2, supra), a reasonable consumer would interpret the Credit Manager product as providing information relevant to detecting identity theft in the context of his or her Experian credit report. It is unreasonable to read the representations on the web pages leading to the purchase page and believe that Credit Manager somehow acts as an all-knowing private investigator, relaying any information relevant to identity theft to the purchaser. The Millett Plaintiffs refer to statements promising that Credit Manager will "guard against fraud and identity theft," and that the product will provide "peace of mind." (Opp'n 9.) However, the web pages also promise "the best things in life." (Williams Decl., Ex. B at EXP 00005.) No reasonable person would read these statements and take them literally and absolutely. It would be clear to any reasonable consumer that the product offers to convey information indicative of identity theft, but only if it appears in the purchaser's Experian credit report.

In addition, the Millett Plaintiffs claim that the web pages deceptively promise to scan the purchaser's credit report, when in fact the product only reviews information used to compile the credit report. (Opp'n 13-14.) The difference is irrelevant. There is no dispute that Credit Manager, every day, reviews information that would appear on a purchaser's Experian credit report for indications of identity theft. It is immaterial if an employee, for example, does not print out the report and literally "scans" it, if the product performs a search of data that would appear on the credit report on a daily basis. The difference would be irrelevant to a reasonable consumer, and so cannot be the basis of a CLRA claim.

Deceptive corporate affiliation claims

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | SACV 05-879 JVS (RNBx) | Date | December 18, 2006 |

Title     Steven G. Millett et al. v. Experian Information Solutions, Inc., et al.

The Millett Plaintiffs also contend that the web pages falsely misrepresents the source of the services provided and the affiliations of the companies providing them. (Opp'n Br. 8-9.) The company and co-defendant that sells the Credit Manager product is Consumerinfo.com, Inc. Several advertisements on its website convey instead, according to the Millett Plaintiffs, that Experian Information Solutions, Inc. is the provider of Credit Manager. (Opp'n 8.) However, Experian Information Solutions and Consumerinfo.com are wholly-owned subsidiaries of the same corporate parent: Experian North America. (Brown Decl. ¶ 3.) It is uncontroverted that the Experian Trademark pertains to the collection of companies under Experian North America, and not to the specific company Experian Information Solutions. (Id.) Therefore, the Court agrees with Experian that the presence of the Experian trademark is not deceptive because it truthfully reflects that the company in question, Consumerinfo.com, is a wholly-owned subsidiary.

    D.      Requests for punitive damages.

    In order to receive punitive damages, the Millett Plaintiffs must demonstrate "by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294. The California Civil Code defines "oppression," "fraud," and "malice" as including a state of mind requirement. Cal. Civ. Code § 3294(c)(1) (defining "malice" as conduct "intended to by the defendant to cause injury" or ". . . carried on by defendant with a willful and conscious disregard of the rights or safety of others"); Cal. Civ. Code § 3294(c)(2) (defining "oppression" as "conduct . . . in conscious disregard of that person's rights"); and Cal. Civ. Code § 3294(c)(3) (defining "fraud" as "an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury").

    Experian has satisfied its burden by asserting that there is no evidence as to the state of mind of the Defendants. To survive summary judgment, the Millett Plaintiffs must show actual malice through clear and convincing evidence. Basich v. Allstate Ins. Co., 87 Cal.App.4th 112, 119 (2001). The Millett Plaintiffs cite to no evidence whatever showing that Experian acted with the requisite state of mind. Accordingly, the Millett Plaintiffs fail to meet their burden.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Case No.   SACV 05-879 JVS (RNBx)                    Date   December 18, 2006

Title      Steven G. Millet et al. v. Experian Information Solutions, Inc., et al.

F.   Whether Ms. Millett may bring a CLRA claim

Because the Court grants summary judgment with respect to all of the Millett Plaintiffs' claims under the CLRA, the Court need not examine whether Ms. Millett has standing to bring a CLRA claim.

G.   Whether Experian Information Solutions, Inc. is a party to the contract

The Millett Plaintiffs "have decided to abandon their assertion that Experian Information Solutions, Inc. is a party to the contract." (Opp'n Br. 1.) Accordingly, the Court dismisses all contract claims against Experian Information Solutions, Inc.

IV.   CONCLUSION

Based on the foregoing, the Court grants Experian's Motion for Summary Judgment, except as to the alleged failure to provide notification of renewal. That portion of the Motion is denied.

Initials of Preparer

# Exhibit E

MORRIS, NICHOLS, ARSHT & TUNNELL

1201 NORTH MARKET STREET
P.O. Box 1347
WILMINGTON, DELAWARE 19899-1347

302 658 9200
302 658 3989 FAX

December 19, 2005

WILLIAM M. LAFFERTY
302 575 7341
302 425 4679 Fax
wlafferty@mnat.com

**VIA E-FILING**

Mr. Peter T. Dalleo
Clerk of Court
United States District Court
District of Delaware
844 King Street
Wilmington, Delaware 19801

     Re:   *Townes v. TransUnion LLC, et al, C.A. No. 04-1488-JJF*

Dear Mr. Dalleo:

     Pursuant to Local Rule 3.1(b), I write to inform the Court of the filing of a case that is related to the above-referenced action, which is assigned to Judge Farnan. On August 16, 2005, 2005, a putative class action captioned *Millett v. TrueLink, Inc.*, C.A. No. 05-599-SLR was transferred into this District from the Federal Court in Kansas City, Missouri, and was assigned to Judge Robinson. On December 6, 2005, the plaintiffs in the *Millett* case filed a motion seeking leave to file a second amended complaint to add certain claims against TrueLink similar to those at issue in the above-referenced action against TransUnion and TrueLink (TrueLink is an affiliate of TransUnion). Defendants did not oppose the motion to amend in the *Millett* case and, thus, on December 14, 2005, Judge Robinson granted the motion to amend and the second amended complaint was deemed filed. In light of the overlapping claims and putative classes in the *Millett* and *Townes* cases, we believed it appropriate to identify these cases to the Court as related. Defendants' counsel previously provided notice to the parties of the related nature of these actions.

     If the Court has any questions about the foregoing, counsel for the parties will make themselves available at the convenience of the Court to address them.

     Respectfully,

     William M. Lafferty (#2755)

Mr. Peter T. Dalleo
December 19, 2005
Page 2


cc.    Ralph N. Sianni, Esquire
       Brad Friedman, Esquire
       Michael L. McGlamry, Esquire
       Beth Parr, Esquire
       Christopher J. Curtin, Esquire
       Barry R. Grissom, Esquire
       B. Joyce Yeager, Esquire
       Bryson R. Cloon, Esquire
       Michael W. Blanton, Esquire

Exhibit F

**ERISMAN & CURTIN**
Attorneys at Law
P. O. Box 250
Wilmington, Delaware 19899

Christopher J. Curtin
629 Mt. Lebanon Road
Wilmington, DE 19803

David H. Erisman
Of Counsel

Telephone (302) 478-5577
Telefax (302) 478-5494
E-Mail: CCurtin659@aol.com

December 21, 2005

VIA E-MAIL

Peter T. Dalleo
Clerk of the Court
U.S. District Court for the District of Delaware
844 King Street
Wilmington, DE 19801

Re: *Millett v. TrueLink, Inc.*, CA No. 05-599-SLR

Dear Mr. Dalleo:

I am in receipt of correspondence dated December 19, 2005 from William M. Lafferty sent to you pursuant to Local Rule 3.1(b) apprising the Court of the existence of a case wherein the same defendant is named.

Although the defendant, TrueLink, Inc., is the same in both actions, the underlying product which is the subject of the class claims is not. Additionally, there are several more causes of action raised by the Millett case that are not present in *Townes v. TransUnion, LLC and TrueLink, Inc.*, CA No. 04-1488-JJF. Moreover, while this matter was transferred from U.S. District Court for the District of Kansas on August 8, 2005, the original Millett complaint naming all three major credit reporting agencies was filed on June 16, 2004 and TransUnion, LLC individually was named in that same Court in a separate Millett complaint filed September 9, 2004.

Based upon our belief that our case is dissimilar, with the exception of the defendant, we will be filing our motion to be appointed interim counsel as to our class with Judge Robinson for her consideration.

If the Court has any questions about the foregoing, counsel for the Milletts would be happy to make themselves available at the convenience of the Court to address them.

Respectfully submitted,

s/Christopher J. Curtin

cc: Barry R. Grissom, Esquire
    Bryson Cloon, Esquire
    B. Joyce Yeager, Esquire
    Michael Blanton, Esquire
    William Lafferty, Esquire
    Ralph N. Sianni, , Esquire
    Brad Friedman, , Esquire
    Michael L. McGlamry, Esquire
    Beth Parr, Esquire
    Paula Friedman, Esquire

# Exhibit G

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

STEVEN G. MILLETT, MELODY J.        )
MILLETT, on behalf of               )
themselves and all others           )
similarly situated,                 )
                                    )
            Plaintiffs,             )
                                    )
      v.                            )     Civ. No. 05-599-SLR
                                    )
TRUELINK, INC., a Trans Union       )
Company,                            )
                                    )
            Defendant.              )

MEMORANDUM ORDER

Pending before the court is plaintiffs' motion to appoint interim counsel. (D.I. 58) For the reasons discussed, the motion will be denied.

I.  BACKGROUND

On September 9, 2004, plaintiffs filed their complaint in the United States District Court for the District of Kansas. On August 16, 2005, the case was transferred to this court. In their second amended complaint,[1] plaintiffs allege breach of contract and violations of the Delaware Consumer Fraud Act, the Delaware Consumer Contracts Act, the Credit Repair Organizations Act, and the Credit Reporting Agencies Act.

By their motion, plaintiffs seek the appointment of Bryson

---

[1] Plaintiffs have amended their complaint twice. (D.I. 36 at Part 18, D.I. 55) Currently pending before the court is plaintiffs' motion for leave to file third amended complaint. (D.I. 70)

R. Cloon, Barry R. Grissom, B. Joyce Yeager, and Michael W. Blanton as interim class counsel. In support of their motion, plaintiffs contend that these lawyers have experience in class actions and complex litigation and have been responsible for handling this case to date. Plaintiffs further contend that discovery will be necessary prior to class certification and that it is in the best interest of the putative class for the court to designate counsel for the discovery and certification processes.

In response, defendant contends that this action is related to another action pending in the District of Delaware, <u>Townes v. TransUnion, LLC and TrueLink, Inc.</u>, Case No. 04-1488-JJF, in which Judge Joseph J. Farnan, Jr. has already appointed interim class counsel. Defendant contends that the appointment of different interim counsel in this case may create the rivalry among lawyers and uncertainty among the putative class that Judge Farnan intended to avoid by appointing interim counsel in <u>Townes</u>.

II. DISCUSSION

As a rule, the lawyer who files a potential class action conducts discovery, files motions, and prepares for the certification decision prior to the appointment of class counsel. However, Federal Rule of Civil Procedure 23 allows a court to designate interim counsel when such a designation is "necessary to protect the interests of the putative class." Fed. R. Civ. P. 23(g)(2)(A). Designation of interim class counsel may be

particularly helpful where there is rivalry among lawyers or
where "overlapping, duplicative, or competing class suits are
pending before a court." Donaldson v. Pharmacia Pension Plan,
2006 U.S. Dist. LEXIS 28607, at *2-3 (S.D. Ill. May 10, 2006).

The court concludes that, at this juncture, appointment of
interim counsel is not necessary. There has been no showing that
other lawyers are competing to handle this litigation. Further,
plaintiffs contend that this case is unrelated to Townes. (D.I.
57). Accepting that contention as true for the purposes of the
instant motion only, the court concludes that there are not
overlapping, duplicative, or competing class suits. Accordingly,
the court will deny plaintiffs' motion to appoint interim
counsel. (D.I. 58)

### ORDER

NOW, THEREFORE, IT IS HEREBY ORDERED that plaintiffs' motion
to appoint interim counsel (D.I. 58) is denied.

August. 31 , 2006

_____
UNITED STATES DISTRICT JUDGE

3