UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROBERT V. TOWNES, IV, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>TRANS UNION LLC, and )<br>TRUELINK, INC., )<br>)<br>Defendants. ) | Case No. 04-1488-JJF |

OBJECTION TO CLASS ACTION SETTLEMENT
AND REQUEST FOR ATTORNEY'S FEES

COMES NOW Class Member Debbie Ashley, 3607 Tidalwood Drive, Manvel, Texas 77578, telephone # (281) 489-9877, and hereby objects to the proposed Settlement and request for attorney's fees in this matter for the following reasons. Debbie Ashley purchased Credit Score & Analysis, Single Credit Report from Trans Union in August 2003, and purchased Debt Analysis from TrueLink on August 11, 2003. Debbie Ashley received individual mailed notice of the proposed class action settlement. Ms. Ashley does not intend to appear at the fairness hearing. She has objected to one class action settlement during the past five years, *Vaughn v. American Honda* (E.D. Texas), No. 2-04CV-142.

I. **The Proposed Settlement Represents Inadequate Compensation for the Class' Claims.**

The United States District Court for the Central District of California recently rejected a settlement that consisted largely of free credit reports:

> [F]ew class members are likely to have any use for an additional free credit report, given that each class member is already entitled to at least one free credit report per year from each of the credit reporting bureaus and that fewer than 10% of consumers take advantage of their right to even one free credit report in any given year. It is also significant that the credit report offered have little to no value on the secondary market either, even

> if they would be transferable, given the idiosyncratic nature of the product and the reality that a credit report is available at not cost to any person who wants one from each of the three credit bureaus. Finally, it is worth noting that the cost to TransUnion and Equifax of providing this free credit report is negligible... In total, the free credit report and score component of the Settlement's economic relief is of very marginal, if any, value.

Acosta v. TransUnion, LLC, 240 F.R.D. 564 at **40-41 (C.D. Cal. 2007).

The court in Acosta also noted that the potential value of the plaintiffs' claims in that case was $1 billion, and that this factor weighed against approving a free credit report settlement. Id. at *38. This settlement should be rejected for the same reasons, and the parties returned to litigation

## II. The Notice Fails To Comply With Fed. R. Civ. P. 23(h).

The Notice of Class Action Settlement ("Notice") fails to provide the information required by Fed. R. Civ. P. 23(h). Fed. R. Civ. P. 23(h) provides:

> (1) *Motion for Award of Attorney Fees.* A claim for an award of attorney fees and nontaxable costs must be made by motion under Rule 54(d)(2), subject to the provisions of this subdivision, at a time set by the court. Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner.
>
> (2) *Objections to Motion.* A class member, or a party from whom payment is sought, may object to the motion.

The Notice states in relevant part:

> As part of the Settlement, Class Counsel will seek up to $1.3 million in attorney's fees and expenses. The Court will determine a reasonable fee and expense award at the Fairness Hearing based on Class Counsel's Fee and Expense Application and responses thereto.

The Notice further states that any objections to the settlement *or to class counsel's request for attorney's fees* must be filed by August 20, 2007.

This does not comport with the requirements of Rule 23(h).[1] The Notice merely states that class counsel will apply for a fee "up to $1.3 million," without providing any information that might support a fee request in that amount. Therefore, the Notice fails to convey the actual amount of the fee requested or the basis for it, in violation of Rule 23(h). Class members, whose objections to attorney's fees are due by August 20, 2007, are forced to guess about the basis for class counsel's fee request at the time they file their objections.

The notice is also deficient in that it fails to provide class counsel's lodestar, which is the starting point for a fee award in the absence of a common fund.

This is a case of first impression, as no court has yet construed the notice requirements of two-year-old Rule 23(h).[2] The notice requirement contained in Rule 23(h)(1) must be construed in light of the right to object to the fee request that is enshrined in Rule 23(h)(2). The notice that must be provided is one that permits class members to meaningfully evaluate class counsel's fee request and to make an informed objection to it. In a case within the Fifth Circuit, that would entail, at a minimum, the attorneys' lodestar.

---

[1] Rule 23(h) was added to Rule 23 effective December 1, 2003. Prior to its enactment, class action settlement notices routinely contained a reference to attorney's fees, usually in the form and manner used here, *i.e.*, a statement that class counsel would apply for fees and expenses in an amount not to exceed X. Because it must be presumed that the drafters intended something by enacting Rule 23(h), it cannot be contended that Rule 23(h) was intended merely to codify existing practice. Instead, it should be given its literal meaning – class members must receive notice of class counsel's "motion" for attorney's fees, not just the fee cap contained in the settlement agreement.

[2] The district court in Cobell v. Norton, 407 F. Supp. 2d 140 (D.D.C. 2005) did hold that Rule 23(h), as a procedural rule, applies to suits filed before its enactment.

Sufficiency of notice is not a matter consigned to the court's discretion. A claim of defective notice is reviewed *de novo*. DeJulius v. New Eng. Health Care Emples. Pension Fund, 429 F.3d 935, 942 (10th Cir. 2005).

Class members have been deprived of any meaningful opportunity to object to Class Counsel's fee request, and they have continued to be deprived of the information – namely, class counsel's lodestar -- necessary to evaluate the reasonableness of class counsel's requested fees.

Because of the clear defect in the Notice, supplemental corrective notice that comports with Fed. R. Civ. P. 23(h) is required, setting forth both the exact amount of class counsel's fee request (not just a cap) and the basis on which it is requested, including class counsel's reasonable lodestar.

### III. APPROVAL OF THE REQUESTED ATTORNEYS FEES IS PREMATURE

To the extent that the requested fees of $1.3 million are based on the projected value of free Credit Monitoring multiplied by the number of class members, that is an improper method of valuing non-monetary settlements in federal courts. A $1.3 million fee would be 25% of $5.2 million. The true value of this settlement to the class members may not reach $5.2 million, and the settlement will likely not cost Defendants anything close to that.

The Court should wait until after the claims period expires in order to evaluate Class Counsel's fee request based upon the value of Credit Monitoring claimed. Class counsel cannot receive a percentage fee based upon the assumption that every class member will claim his or her settlement benefits.

If this Court is inclined to award a percentage fee, it should defer awarding class counsel a fee until all of the settlement claims have been submitted and processed. See, In re Compact Disc Minimum Advertised Price Antitrust Litig., 292 F. Supp. 2d 184, 190 (D. Me. 2003) ("CD Case").

> In the CD Case, the court stated:
>
> I am aware of the criticism that has been leveled at class settlements where the cash goes to the lawyers and the class members get only a coupon of dubious value... Recognizing that percentage of funds is the preferred method of assessing fees in a settlement like this, with lodestar analysis providing only a check, I can effectively gauge appropriate attorney's fees only if I know the total value of the settlement. But although I am satisfied that the coupon settlement has value to the class, I am not confident of the redemption rate that has been projected and thus of the settlement's total value. Therefore, I have determined to delay award of attorney's fees until experience shows how many vouchers are exercised and thus how valuable the settlement really is.

292 F. Supp. 2d at 189-190. Similarly, in In re Excess Value Ins. Coverage Litig., 2004 U.S. Dist. LEXIS 14822 (S.D.N.Y. 2004), the court followed the reasoning of the CD Case in holding that:

> The percentage of Settlement approach cannot be reasonably employed at this point because the Settlement's actual value to the Class is unclear and cannot accurately be assessed until the rate at which Class Members redeem UPS Vouchers is known... "Particularly where the common benefits are in the form of discounts, coupons, options or declaratory or injunctive relief, estimates of the value or even the existence of a common fund may be unreliable, rendering application of any percentage-of-recovery approach inappropriate. Where there is no secondary market for coupon redemption, the judge can conclude that the stated value of the coupons ... does not provide a sufficiently firm foundation to support a fee award..."

Id. at *58 (quoting Manual for Complex Litigation § 14.121). Clearly, the preferred practice, and the emerging consensus, is that courts should defer valuation of a claims-made settlement until information about the amount of benefits paid is available. Indeed, that is required by the Class Action Fairness Act.

5

Not surprisingly, the Federal Judicial Center has endorsed the above method of calculating attorney's fees in claims-made settlements:

> In cases dealing with nonmonetary benefits other than injunctive relief, consider two options, either of which links the payment of fees with the actual benefit to the class. The first approach, which appears to be efficient, awards fees in the same coin both to the class and to class counsel... The second approach is simply to hold back the portion of any attorney fee awards that are linked with coupons, discounts, or other nonmonetary benefits until after the redemption period has ended and the value of the discount certificates can be established by calculating class members' actual use.

<u>Managing Class Action Litigation: A Pocket Guide for Judges</u> (2005) at p. 23.

The National Association of Consumer Advocates ("NACA") concurs with the Federal Judicial Center on the issue of valuing non-monetary settlements:

> The amount of the "fund" on which a percentage award is calculated should exclude any amount which may revert or has already reverted back to the defendant as undistributed funds... [T]he benchmark percentage figures (i.e. 20%-30%, in most cases) should be applied after deducting amounts that the defendant does not ultimately pay out as part of the settlement or judgment. It is the actual amount paid by defendant to class members, or in *cy pres* distribution, that represents the recovery in the case from which a percentage fee should be calculated.

NACA Class Action Guidelines – Revised at p. 40.

This Court should heed the Federal Judicial Center's advice to federal judges that non-pecuniary settlements are to be valued based on the settlement benefits claimed and used by the class. The Court should await the final claims data at the claim form submission deadline, and then award a fee that is a reasonable percentage of the total value of all claimed Credit Monitoring. Alternatively, the Court could consider evidence of Class Counsel's reasonable lodestar and award that unenhanced amount as a CROA fee-shifting fee award.

6

## CONCLUSION

Wherefore premises considered, Class Member Debbie Ashley prays that the Court deny approval to the proposed settlement, or defer ruling on attorney's fees until the total value of benefits claimed can be tallied, or award Class Counsel a fee of their unenhanced reasonable lodestar.

Respectfully submitted,

*/s/ Debbie Ashley*

Debbie Ashley

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was served by first class U.S. Mail on August 1, 2007 upon the following:

C. Neal Pope
Pope McGlamry Kilpatrick
1111 Bay Avenue, Suite 450
Columbus, GA 31901

Michael O'Neil
DLA Piper US LLP
203 North LaSalle Street, Suite 1900
Chicago, IL 60601

*/s/ John Pentz*

John Pentz

7