## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **ROBERT V. TOWNES, IV,** )<br>**Individually and on behalf of** )<br>**all persons similarly situated,** )<br> )<br> **Plaintiff,** )<br> )<br>**vs.** )<br> )<br>**TRANS UNION, LLC, AND** )<br>**TRUELINK, INC.,** )<br> )<br> **Defendants.** ) | **CIVIL ACTION**<br>**04-1488-JJF**<br><br><br><br><br>**CLASS ACTION** |

## BRIEF IN SUPPORT OF CLASS COUNSEL'S MOTION FOR AWARD OF
## ATTORNEYS' FEES AND REIMBURSEMENT OF REASONABLE EXPENSES

ROSENTHAL, MONHAIT & GODDESS, P.A.
Carmella P. Keener (DSBA No. 2810)
919 N. Market Street, Suite 1401
P.O. Box 1070
Wilmington, DE 19801
(302) 656-4433
*Delaware Counsel for the Plaintiff*

OF COUNSEL:

Michael L. McGlamry
Pope McGlamry Kilpatrick Morrison &
Norwood LLP
The Pinnacle, Suite 925
3455 Peachtree Road, N.E.
Post Office Box 191625 (31119-1625)
Atlanta, Georgia 30326-3243
(404) 523-7706

Wade H. Tomlinson, III
Pope McGlamry Kilpatrick Morrison &
Norwood LLP
1111 Bay Ave., Suite 450 (31901)
P.O. Box 2128
Columbus, Georgia 31902
(706) 324-0050

Wilson F. Green
Harlan F. Winn III
Battle Fleenor Green Winn & Clemmer LLP
The Financial Center
505 North 20th Street, Ste. 1150
Birmingham, Alabama 35203
(205) 397-8160

Arthur R. Miller
New York University School of Law
40 Washington Square South
Vanderbilt Hall 409D
New York, NY 10012
212-992-8147
Fax: 212-995-4590

DATED: August 20, 2007

## TABLE OF CONTENTS

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

II. STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

A. BACKGROUND OF THE LITIGATION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

   1.  The *Hillis* and *Slack* Litigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

       a.  History of the *Hillis* Litigation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

       b.  History of the *Slack* Litigation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

       c.  Settlement in *Hillis* and *Slack*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

   2.  This Litigation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

B.      TERMS OF THE SETTLEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

III. ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

A. Attorneys' Fees in Class Actions: The Common Fund Calculation. . . . . . . . . . . . . . . . . . 12

B.  The Fee Request is Also Reasonable Under Lodestar Factors. . . . . . . . . . . . . . . . . . . . . . . 15

C.  Market Forces Drove the Fees. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

## TABLE OF AUTHORITIES

*In re Activision Sec. Litig.*, 723 F. Supp. 1373 (N.D. Cal. 1989) . . . . . . . . . . . . . . . . . . . . . . . . .14

*In re AT&T Corp.*, 455 F.3d 160 (3rd Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15

*In re Beverly Hills Fire Litig.*, 639 F. Supp. 915 (E.D. Ky. 1986) ) . . . . . . . . . . . . . . . . . . . . . . 18

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*In re Cendant Corp*, 243 F.3d 722 (3rd Cir. 2001) ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

*In re Continental Illinois Sec. Litig.*, 962 F.2d 566, 568-70 (7th Cir. 1992) . . . . . . . . . . . . . . . .19

*In re Domestic Air Antitrust Lit.*, 148 F.R.D. 297 (N.D. Ga. 1993) . . . . . . . . . . . . . . . . . . . . . . 13

*Duhaime v. John Hancock Mut. Life Ins. Co.*, 989 F. Supp. 375 (D. Mass. 1997) . . . . . . . . . . 14

*In re GM Trucks Lit.*, 55 F. 3d 768 (3rd Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

*Gunter v. Rigdewood Energy Corp.*, 223 F.3d 190 (3rd Cir.2000) . . . . . . . . . . . . . . . . . . . . . . . 16

*Helms v. Consumerinfo.com, Inc.*, 236 F.R.D. 561 (N.D. Ala. 2005) . . . . . . . . . . . . . . . . . . . 6, 17

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 19

*Hillis v. Equifax Consumer Services, Inc.*, 237 F.R.D. 491 (N.D. Ga. 2006) . . . . . . . . . . . . . . .6

*Hillis v. Equifax Consumer Services, Inc.*,
   -- F.Supp. 2nd --, 2007 WL 1953464 (N.D. Ga. June 12, 2007) . . . . . . . . . . . . . . . 8, 17

*Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714 (5th Cir. 1974)
   overruled on other grounds, *Blanchard v. Bergeron*, 489 U.S. 87 (1989) .. . . . . . . . .12, 16

*M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 829 (D. Mass. 1987) . . 19

*Merola v. Atlantic Richfield Co.*, 515 F.2d 165 (3rd Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . .12

*In re Prudential Ins. Co. of America*, 148 F.3d 283 (3rd Cir. 1998) . . . . . . . . . . . . . . . . . . . .13, 14

*In re Public Service Co. of New Mexico*, [1992 Transfer Binder] Fed. Sec. L. Rep.
   (CCH) ¶ 96,988, at 94, 291-92 (S.D. Cal. July 28, 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

*In re Rio Hair Naturalizer Prods. Liab. Litig.,*
  No. MDL 1055, 1996 WL 780512 (E.D. Mich. Dec. 20, 1996). . . . . . . . . . . . . . . . . . .4, 17

*In re Rite Aid Corp. Sec. Lit.*, 396 F.3d 294, 300 (3rd Cir. 2005) . . . . . . . . . . . . . . . . . . . . . .13, 15

*Waters v. International Precious Metals Corp.*, 191 F.3d 1291 (11th Cir. 1999) . . . . . . . . . . . . 14

*Williams v. MGM-Pathe Communications Co.,*
  129 F.3d 1026 (9th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

Comes now the Plaintiff, Robbie Townes, and the law firms of Pope McGlamry Kilpatrick Morrison & Norwood, LLP ("Pope McGlamry") and Battle Fleenor Green Winn & Clemmer LLP ("Battle Fleenor"), Class Counsel in the above-referenced action, and pursuant to Fed. R. Civ. P. 23(h) and 54(d), hereby move the Court for an award of attorneys' fees and reimbursement of expenses, in the aggregate amount of $1,200,000.00, as compensation to Class Counsel for the time and effort expended in prosecuting the above-referenced case and in negotiating and effectuating the class action settlement reached therein. Pursuant to the Settlement Agreement between the parties, the attorneys' fees and expenses awarded to Class Counsel will be paid by the Defendants and not deducted from the class recovery.

As set forth more fully herein, the requested fee is reasonable in light of the controlling standards of law and under the facts of this case, of the result obtained for the Class and of the time and effort expended by Class Counsel and associated counsel in this case. In support of this Motion, Plaintiff and Class Counsel rely upon the entire record in this case, including but not limited to, the Motion for Final Approval and Brief in Support, and the contemporaneously filed Declarations of Michael L. McGlamry, Carmella P. Keener, Wilson F. Green, Michael C. O'Neil, Jennifer Keough, Professor Michael Daniels and Robbie Townes.

## I.    INTRODUCTION

Through difficult and time-consuming litigation, and in the face of a series of significantly adverse rulings in similar cases, Plaintiff and Plaintiff's Counsel have achieved a fair settlement for the Class that provides benefits to some 3.8 million Class Members, which benefits have a potential retail value of at least $29.85 per class member ($9.95 per month for three months) and cumulatively at approximately $113,430,000.00 (3.8 million x $29.85). This value is increased to $347,220,000.00 when the up to $25,000.00 value of the insurance included

in the offering is considered. See generally, Declaration of Professor Michael Daniels, attached as Exhibit 6 to Declaration of Michael L. McGlamry.

It is. of course, highly unlikely that every Class member will elect to participate in the benefits provided by the settlement. Clearly, however, in this era of credit-related problems, including the importance of knowing and monitoring one's credit score and credit report to assure the most favorable credit terms and to prevent identity theft, the credit monitoring offering available to Class members has real value. Congress and the Federal Trade Commission ("FTC") have recognized these values, as Congress has enacted legislation requiring that the credit reporting agencies (like Trans Union) make available to each consumer one free credit report per year and has charged the FTC with setting reasonable maximum charges for the purchase of other credit reports and for the purchase of a credit score. See McGlamry Declaration, ¶¶ 17, 18. Based on this and other information, Plaintiff's expert economist Professor Michael Daniels has estimated the potential retail settlement value of $347,220,000. In that the exact number of persons taking advantage of the settlement will not be known until well after any final approval of this Settlement, Professor Daniels has discounted these values to account for relatively low take rates of 5% and 10%, thereby establishing a range of potential settlement values of $17,360,500 to $34,722,000, respectively. See Daniels Declaration, ¶ 3, Exhibit 6 to McGlamry Declaration. Even at these lower settlement values, the attorneys' fees requested equate to a small percentage of the total potential settlement value.[1]

---

[1] Class counsel negotiated a somewhat unique feature of the settlement which provides that, after final approval by this Court, a reminder notice will be sent to the Settlement Class advising Class members of such final approval and reminding and urging them to take advantage of what would then be certain benefits available as a consequence of a finally approved settlement. See Stipulation of Settlement Between Lead Plaintiff and Defendants at ¶ 6.3.3 (Docket No. 66.)

2

This result was not obtained in a week, or a month, or a year. Rather, this settlement was achieved after Plaintiff and Plaintiff's counsel prosecuted this action, and with respect to Plaintiff's counsel, several other similar actions, over a two-plus year period. This action involved numerous depositions including extensive travel for days at a time. Class Counsel sought, received and reviewed tens of thousands of documents in production. In the aggregate, the firms prosecuting these cases on behalf of Plaintiff have to date expended approximately 2500 hours in attorney time, and they have incurred and/or will incur by the conclusion of the Settlement process approximately $125,000 - $150,000 in reasonable case-related expenses. Although the past work and expenses incurred would alone support the requested fee award, the attorneys' fee includes compensation for all future services to be performed by Plaintiff's Counsel – services which, based upon first-hand experience, will constitute a substantial continuing commitment of time, effort and resources.

In light of these efforts, the favorable result obtained, and the continuing effectuation of the settlement, Class Counsel seek an aggregate award of attorneys' fees and expenses of $1,200,000.00. Defendants do not object to and have agreed to pay this requested amount. The fee negotiations between Class Counsel and Defendants were conducted at arm's-length and only after all material terms of the Settlement had been agreed upon.

As shown in greater detail below, Class Counsel's request is entirely reasonable, and they respectfully urge that such request be approved by the Court because:

- the requested fee is well within the standards established by the Third Circuit for the award of common fund attorneys' fees in class actions;

- the Settlement provides extraordinary benefits for the Class that are well within the range of possible recoveries when continued litigation might well have resulted in no recovery at all; and

- Plaintiff's Counsel undertook the litigation of this matter on a completely contingent basis, advancing all expenses and accepting all risk that they work for years and receive no compensation or reimbursement whatsoever.

It is only through the dogged efforts of Plaintiff and Plaintiff's Counsel – performed at their own risk – that the range of potential benefits referenced supra have been obtained for this Class. Cf. In re Rio Hair Naturalizer Prods. Liab. Litig., No. MDL 1055, 1996 WL 780512, at *17 (E.D. Mich. Dec. 20, 1996) ("Absent Petitioners' efforts, there would be no fund whatsoever for distribution to class members."). [2] Accordingly, as discussed herein, the Court should approve the requested attorneys' fee and reimbursement of expense award in the aggregate amount of $1,200,000, which amount represents a small percentage of the potential values of this settlement.

## II.    STATEMENT OF THE CASE

This action is the final one in a series of lawsuits brought against affiliate corporations or entities of the major credit reporting agencies for claimed violations of the Credit Repair Organizations Act, 15 U.S.C. §§ 1679 et seq. (the "CROA"). The CROA, which became effective March 31, 1997, provides a framework of requirements that must be adhered to by "credit repair organizations," which are specifically defined in the CROA, 15 U.S.C. § 1679a(3). The plaintiffs in each of these cases, including Mr. Townes in this case, have alleged that through a number of the products or services that they offer to consumers, the credit reporting

---

[2]    See Daniels Declaration, Exhibit 6 to McGlamry Declaration (opining a range of settlement values from $17,360,500 - $34,722,000.)

4

agencies and/or their selling affiliates (in this case, the Defendants Trans Union LLC and True

Link LLC) are "credit repair organizations" under the CROA, and that Defendants have failed to

observe the CROA's statutory safeguard requirements, including the provision of certain written

disclosures, the requirement of a written contract, the provision of a three-day right of rescission,

and the prohibition on receiving payment in advance of providing credit repair services. In

addition, the Plaintiffs in these cases (including Mr. Townes in this case) have asserted claims

under the anti-fraud provisions of the CROA, found in 15 U.S.C. § 1679b(3) and (4).

## A.    BACKGROUND OF THE LITIGATION

Because this case is part of a larger tapestry of several similar cases against the credit

reporting agencies, and because rulings in those parallel cases have impacted the status of this

case and Plaintiff and Class Counsel's analysis of the risks associated with protracted litigation,

Plaintiff and Class Counsel provide the Court with an overview of these cases.

## 1.    The *Hillis* and *Slack* Litigation

### a.    History of the *Hillis* Litigation

On November 19, 2004, Plaintiff Robbie Hillis filed a putative class action captioned

Hillis v. Equifax Consumer Services, Inc. and Fair Isaac Corporation, bearing case number 1:04-

CV-3400-TCB, in the United States District Court for the Northern District of Georgia. (Hillis,

Rec. Doc. No. 1.) The Defendants in Hillis were Equifax Consumer Services, Inc. ("Equifax")

and Fair Isaac Corporation ("Fair Isaac"). The lawsuit was brought as a putative nationwide

class action and alleged claims for CROA violations and for unjust enrichment in connection

with Hillis' purchase of "Score Power" from those defendants.

After initial motions to dismiss were denied, the parties in Hillis engaged in vigorous

litigation and extensive discovery over a one-plus year time period. Following the close of

5

discovery, in January of 2006, Hillis filed a Motion for Class Certification and a Motion for Partial Summary Judgment on liability under CROA. Defendants filed lengthy and vigorous oppositions to both Motions.

On August 18, 2006, the Court in <u>Hillis</u> entered a lengthy opinion and order denying Hillis' Motion for Class Certification, and granting in part and denying in part Hillis' Motion for Partial Summary Judgment. <u>See generally,</u> <u>Hillis v. Equifax Consumer Services, Inc.,</u> 237 F.R.D. 491 (N.D. Ga. 2006). Following a prior denial of certification in another similar CROA case brought against Experian Information Systems, Inc.'s consumer affiliate, the <u>Hillis</u> Court reasoned that the potential liability facing the Defendants was so grossly disproportionate to the alleged misconduct that class certification should not be granted. <u>Hillis,</u> 237 F.R.D. at 505-07, <u>citing and discussing</u> <u>Helms v. Consumerinfo.com, Inc.,</u> 236 F.R.D. 561, 566-68 (N.D. Ala. 2005). As to the merits of the case, moreover, the Court concluded that the CROA was not designed to prohibit sellers of credit information from giving advice to consumers on prospective actions which could positively affect their credit score or rating. <u>Hillis,</u> 237 F.R.D. at 515-16. Plaintiff Hillis moved for reconsideration, and that motion was pending when the <u>Hillis</u> case was settled.

### b.   **History of The *Slack* Litigation**

On January 18, 2005, Plaintiff Christy Slack ("Slack") filed a putative class action captioned <u>Slack v. Fair Isaac Corporation and MYFICO Consumer Services, Inc.,</u> bearing case No. 3:05-CV-00257-MHP, in the United States District Court for the Northern District of California. (<u>Slack,</u> Rec. Doc. No. 1.) The <u>Slack</u> lawsuit was brought as a putative nationwide class action and alleged claims against Fair Isaac for violations of the CROA and the California Credit Services Act of 1985 ("CSA"), Cal. Civ. Code §§ 1789.10 <u>et seq.,</u> and for unjust

6

enrichment. Slack's claims arose from her purchase of the "Suze Orman FICO Kit" (the "Kit") from Fair Isaac. Slack alleged that Fair Isaac was a "credit repair organization" within the meaning of the CROA, in connection with its sale of the Kit, and that Fair Isaac was also a "credit services organization" within the meaning of the CSA, Cal. Civ. Code § 1789.12. Similar to the Hillis action, Slack alleged that Fair Isaac failed to comply with the statutory safeguard requirements of the CROA (and the CSA), and that Fair Isaac violated the anti-fraud provisions of the CROA (and the CSA) by making untrue or misleading representations concerning Fair Isaac's offerings.

Following initial Motions to Dismiss and partial grants and denials of those motions, the parties in Slack engaged in substantial discovery, including a number of depositions and written discovery. Those depositions took over nine (9) months to complete. In that time frame, Class Counsel here was appointed as interim class counsel under Fed. R. Civ. P. 23(g). On July 19, 2006, Slack filed her Motion for Class Certification and Motion for Partial Summary Judgment against Fair Isaac on liability under CROA and the CSA. While those Motions were pending, and as discussed supra, the Hillis Court ruled on the Motions pending there, substantially altering the legal landscape by narrowly construing the CROA and by following the Helms Court in also denying class certification in a CROA case against another credit bureau. The Slack Court did not rule on the motions for class certification and summary judgment pending in that case.

### c.   **Settlement in *Hillis* and *Slack***

Settlement discussions in Slack and Hillis began in October of 2005, culminating initially in a April 2006 "global" mediation in Atlanta which, as explained below, included representatives of the Defendants in the Townes case. Following the August 18, 2006 Order in Hillis, discussions resumed, and ultimately, after months of intense and time-consuming

7

negotiations, the parties reached an agreement in January of 2007 which would effect the settlement of both Hillis and Slack. The parties agreed to consolidate the Slack case with the Hillis case for purposes of settlement, and so the Slack case was transferred to the Northern District of Georgia. The primary terms of the Hillis-Slack settlement are the same as the primary terms of the settlement in this case. The class in the Hillis-Slack Settlement approximated some seven million persons. Only 835 persons opted-out. Only five objections were filed ostensibly representing 15 persons. The Hillis-Slack Court overruled these few objections. The Hillis-Slack settlement was approved as fair, reasonable, and adequate by the Hillis court in June of 2007. Hillis v. Equifax Consumer Services, Inc., --- F. Supp. 2d ---, 2007 WL 1953464 (N.D. Ga. June 12, 2007). Currently, one objector is pursuing an appeal, and both the District Court and the Eleventh Circuit Court have inquired as to the viability of that appeal. See McGlamry Declaration, Exhibits 2 (Eleventh Circuit's jurisdictional question) and 3 (District Court's Notice of Hearing).

## 2.    This Litigation

After consulting with counsel and after a thorough pre-filing investigation, Plaintiff Robbie Townes commenced this action in December of 2004. See Townes Declaration, at ¶¶ 1, 2. In his Complaint, Townes alleged that True Link, Inc. sold him services through its website, www.truecredit.com, through which services the Defendants promised to improve his credit score, or which promised to provide him advice for credit score improvement. Townes alleged that True Link and its parent corporation Trans Union LLC violated the CROA in connection with these offerings by failing to comply with the statutory safeguard requirements of the CROA, and that Defendants also violated the anti-fraud provisions of the CROA by making untrue or misleading representations concerning the offerings.

8

After Defendants answered, the parties began engaging in extensive discovery. Plaintiff and Defendants propounded interrogatories and document requests on each other, which were answered. Defendants produced tens of thousands of pages of documents concerning their web-based offerings. Class Counsel employed internet archive resources to research and reproduce the various manifestations of the Defendants' websites over the class period. Class Counsel took the depositions of a number of Defendants' employees, depositions which took months to complete and which took place across the country, including a number of depositions in Chicago and more than one week of depositions in San Luis Obispo, California, where Defendants maintain some of their business operations. Class Counsel thus developed a thorough record on which to assess the gravity of Defendants' conduct, as well as the risks to the Class in litigating the case to conclusion. Class Counsel also had the benefit of having prosecuted the Hillis and Slack cases and having seen the potentially adverse results which could befall this Class.

Settlement discussions in this case first took place in the Spring of 2006, in the "global mediation" of the Hillis-Slack litigation and this case. Those discussions occurred in conjunction with the settlement talks in Hillis and Slack because of the defendants' parallel conduct and the common issues raised in the various cases. After the "global mediation" sessions (which took two days), the parties in this case conducted a mediation in this Courthouse, under the direction of Magistrate Judge Thynge.    Class Counsel and Mr. Townes personally appeared and participated in that mediation, as did the Defendants and their representatives.    Settlement discussions accelerated in this case after the parties in Hillis and Slack reached the settlement in those cases. The parties ultimately reached settlement in this action in May of 2007, after well over a year of intense negotiations, and as the time for the filing of class certification papers approached. See McGlamry Declaration at ¶¶ 13, 14, 15, 16 (discussing settlement negotiations

9

and noting that Class Counsel had been actively preparing Plaintiff's motion for class certification).[3]

### B. TERMS OF THE SETTLEMENT

The Settlement provides significant relief to Class Members, both in the form of free and valuable offerings and in injunctive relief, all of which are designed to compensate Class Members for the alleged violations of law on which these lawsuits were based. The Class, comprising over four million persons in the United States, generally includes all persons who purchased Offerings from the Defendants' websites. Notice has been sent to all Class Members by electronic mail (Class Members did business with the Defendants by e-mail and over the internet), and for those Class Members whose emails were not delivered, notice has been sent by postcard, directing Class Members to the Settlement Website established under the Agreement.

The benefits to Class Members under the Settlement are substantial. In broad outline, all Class Members who elect not to exclude themselves will receive a redemption code, which can be used on Defendants' websites for Class Members to obtain three (3) free months of Defendants' Credit Monitoring offering (which carries a retail value of about $29.85 per Class Member). This offering provides unlimited access to the consumer's credit reports and credit scores, notification within 24 hours of changes to the consumer's credit report, toll-free support, and up to $25,000.00 identify theft insurance. In the current environment of "living through credit," and in light of the constant vigilance required to stave off identity theft, such an offering

---

[3]   Though the Hillis, Slack and Townes cases were litigated and settled relatively contemporaneously, and though each case has benefited significantly from Class Counsel's involvement in three similar actions, Class Counsel does not seek an award of fees or the reimbursement of expenses in this case as a consequence of time and effort expended in furtherance of the Hillis and Slack cases. Nor did Class Counsel include time, effort or expense incurred in this matter (Townes) in its petition for an award of fees and reimbursement of expenses in Hillis and Slack. See McGlamry Declaration at ¶ 14.

has real value to every Class member. Congress and credit experts all emphasize the importance of individuals' maintaining constant watch over their credit files. The Fair Credit Reporting Act, 15 U.S. C. 1681 et seq ("FCRA"), and the Fair and Accurate Credit Transaction Act ("FACTA"), incorporated as part of FCRA, cumulatively provides that consumers may obtain one credit report annually at no cost, and those Acts charge the Federal Trade Commission ("FTC") with the responsibility of ensuring that additional credit reports, and credit scores, are provided to consumers upon request at a fair and reasonable cost. In agency action effective January 1, 2006, the FTC increased the maximum allowable charge for a credit report to $10.00. Though the FTC has not yet acted, in a notice of proposed rulemaking, the FTC found that the market rate for credit scores ranged from $4 to $8. See McGlamry Declaration, ¶¶ 17, 18, and Exhibits 4 and 5, thereto. See also Daniels Declaration. The Congress and the FTC have determined that just these components of the Trans Union credit monitoring offering have a value of from $14 to $18, and such value does not include the value associated with a 24 hour monitoring service designed to prevent or timely become aware of identity theft and with insurance for such an occurrence.

As a part of the Settlement, Defendants have also agreed to implement significant injunctive relief designed to restrict the manner in which Defendants market their Offerings, and specifically by prohibiting Defendants from representing that their Offerings are designed to "improve" or "boost" a purchaser's credit record, history, or rating. In exchange for these in-kind and injunctive benefits, Class Members will release all claims which were brought in these cases, including but not limited to CROA or state-law based CROA claims.

III.    ARGUMENT

A.    Attorneys' Fees In Class Actions: The Common Fund Calculation

Fee agreements between plaintiffs and defendants in class actions of this nature are encouraged where, as here, the fees are negotiated separately from and after all material terms of the settlement on behalf of the class have been agreed to by the parties. As the former Fifth Circuit has said, "[i]n cases of this kind, we encourage counsel on both sides to utilize their best efforts to understandingly, sympathetically, and professionally arrive at a settlement as to attorneys' fees." Johnson v. Georgia Highway Exp., Inc., 488 F.2d 714, 720 (5th Cir. 1974), overruled on other grounds, Blanchard v. Bergeron, 489 U.S. 87 (1989); see also Williams v. MGM-Pathe Communications Co., 129 F. 3d 1026, 1027 (9th Cir. 1997) ("parties to a class action properly may negotiate not only the settlement of the action itself, but also the payment of attorneys' fees"). The fee agreement here was negotiated only after all of the substantive provisions of the Settlement were determined. See McGlamry Declaration, ¶ 15; O'Neil Declaration.

Attorneys who create a common fund or benefit for a group of persons are entitled to have their fees and costs based on the common benefit achieved. As the United States Supreme Court stated in Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980): "a lawyer who recovers a common fund for the benefit of persons other than . . . his client is entitled to a reasonable attorneys' fee from the fund as a whole. . ." This method of awarding attorneys fees is used whether the benefits conferred on class members are in cash or through non-monetary benefits, such as free services or other consideration. Merola v. Atlantic Ritchfield Co., 515 F. 2d 165, 172 (3rd Cir. 1975) (awarding common fund fees based on value of non-monetary benefits); See

also In re Domestic Air Antitrust Lit., 148 F.R.D. 297, 349-50 (N.D. Ga. 1993) (applying common fund principles to award of fees with benefits in the form of airline discounts).

Until Plaintiffs initiated and litigated this action, Defendants did not intend to provide benefits to these Class Members. It was only through the efforts of Plaintiffs and their attorneys that, at a minimum, some $17,360,500 - $34,722,000 million in tangible potential benefits were obtained for the Class, and thus, Class Counsel is entitled to receive a reasonable attorneys' fee for conferring that benefit on the Class.

The Third Circuit has adopted the "common fund" or "percentage of recovery" method for determining the reasonableness of attorneys' fees in class action cases. In re AT&T Corp., 455 F.3d 160, 164 (3rd Cir. 2006); In re Prudential Ins. Co. of America, 148 F.3d 283, 333 (3rd Cir. 1998). "[T]he percentage of recovery method is generally favored because it allows courts to award fees from the fund in a manner that rewards counsel for success and penalizes it for failure." In re AT&T Corp., 455 F.3d at 164 (internal quotations omitted); accord In re Rite Aid Corp. Sec. Lit., 396 F.3d 294, 300 (3rd Cir. 2005); In re Prudential, 148 F.3d at 333.

Compensating counsel in common benefit and common fund cases on a percentage basis makes eminently good sense. First, it is consistent with the practice in the private marketplace where contingent fee attorneys in similar actions are customarily compensated on a percentage-of-the-recovery method, with percentages usually exceeding one-third, and sometimes reaching 50 percent. In re Public Service Co. of New Mexico, [1992 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 96,988, at 94, 291-92 (S.D. Cal. July 28, 1992) ("If this were a non-representative litigation, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 30% to 40% of the recovery"); In re M.D.C. Holdings, ¶ 95, 474 at 97, 490 ("In private contingent litigation, fee contracts have traditionally ranged between 30% and 40% of the total

recovery"). Second, it provides plaintiffs' counsel with a strong incentive to effectuate the maximum possible recovery in the shortest amount of time necessary under the circumstances, which is precisely what occurred here. Duhaime v. John Hancock Mut. Life Ins. Co., 989 F. Supp. 375, 377 (D. Mass. 1997) (the advantage of the percentage method is that it focuses on result, rather than process, which better approximates the workings of the marketplace). Third, use of the percentage method decreases the burden imposed upon the Court by the "lodestar" method and assures that Class Members do not experience undue delay in receiving their share of the settlement. See In re Activision Sec. Litig., 723 F. Supp. 1373 (N.D. Cal. 1989).

In this case, a discounted potential value of the settlement benefits is $17,360,000 million. The expenses incurred by Class Counsel, which will be reimbursed from the $1.2 million requested fee and expense award, exceed $150,000 at present, and additional expense will be incurred to complete the settlement. Thus, Class Counsel is requesting less than $1,050,000 as an award of attorneys' fees, representing less than .003% of the total potential value of benefits conferred on the Class Members and approximately 6% of a discounted total settlement value.

This fee request of a small percentage of the discounted settlement value is more than reasonable. The Third Circuit has repeatedly noted that ranges of common-fund fee awards can go as low as four percent, but as high as 45 percent. In re GM Trucks Lit., 55 F.3d 768, 822 (3rd Cir. 1995) (noting that "the fee awards have ranged from nineteen percent to forty-five percent of the settlement fund"); In re Prudential, 148 F.3d 283, 339 (3rd Cir. 1998) (noting ranges from 4.1% to 17.92%). See also Waters v. International Precious Metals Corp., 191 F.3d 1291 (11th Cir. 1999) (awarding 33% fee in connection with settlement). Notably, the Third Circuit has not held that a fee of the percentage sought here is unreasonable.

14

B.    The Fee Request Is Also Reasonable Under Lodestar Factors

The Third Circuit has cautioned that district courts considering common-fund fee awards should also conduct a lodestar "cross-check" to determine the "multiplier" over and above an hourly fee which the requested common-fund fee yields. In re AT&T Corp., 455 F.3d 160, 164 (3rd Cir. 2006); accord In re Rite Aid, 396 F.3d at 300. "The lodestar cross-check, while useful, should not displace the district court's primary reliance on the percentage-of-recovery method." In re AT&T Corp., 455 F.3d at 164. In this case, the attorneys for the Class and the Plaintiff have worked nearly 2500 hours in prosecuting this case. They have incurred expenses that will approximate $150,000.00.    Thus, the $1,050,000 fee award being requested (the total of $1,200,000 less the $150,000 in expenses) represents an hourly fee paid at $420.00 per hour. While Class Counsel here does not typically bill by the hour for consumer class action litigation, an examination of billable hourly rates for attorneys with experience similar to that of the attorneys who worked on this case reveals a range of reported hourly rates of $400.00 to $450.00.  Considering these rates and the hours worked, the requested fee is exactly equal to a lodestar fee, without any multiplier (or, resulting in a multiplier of approximately 1.0).  See McGlamry Declaration, ¶¶ 22, 23.

Courts have traditionally looked at a number of factors in considering a fee and expense award in lodestar settings, and especially in considering whether a multiplier is appropriate (even though, in this case, such multiplier is neutral or exceedingly small). Those factors include the following:

1.    the time and labor involved;

2.    the novelty and difficulty of the questions involved;

3.    the skill necessary to perform the legal service properly;

15

    4.      the preclusion of other employment by the attorney due to the acceptance of the

case;

    5.      the customary fee;

    6.      whether the fee is fixed or contingent;

    7.      time limitation imposed by the client or the circumstances;

    8.      the amount involved and the results obtained;

    9.      the experience, reputation, and ability of the attorneys;

    10.    the "undesirability" of the case;

    11.    the nature and length of the professional relationship with the client; and

    12.    awards in similar cases.

Johnson v. Georgia Highway Exp., Inc., 488 F.2d 714, 720 (5th Cir. 1974); overruled on other

grounds, Blanchard v. Bergeron, 489 U.S. 87 (1989); accord Gunter v. Rigdewood Energy Corp.,

223 F.3d 190, 195 (3rd Cir.2000) (noting seven of these factors for use in lodestar

determinations). Although all of these factors weigh heavily in favor of the requested fee,

Plaintiff and Class Counsel focus on only a few to illustrate the point succinctly.

       First, Plaintiffs' Counsel has obtained an excellent settlement despite seriously adverse

rulings in other similar cases on critical questions at the class certification and summary

judgment stage. In Hensley v. Eckerhart, 461 U.S. 424 (1983), the United States Supreme Court

held that the "most critical factor is the degree of success obtained." Hensley, 461 U.S. at 436.

Considering the rulings in both Helms (denying class certification) and Hillis (denying class

certification and narrowly construing the CROA), there was substantial risk that this Court might

adopt the reasoning of those courts. Either ruling would have been devastating to this case and

to the chances of any individual and/or of the Class prevailing on its claims. The fact that Class

16

Counsel recovered any settlement for Class Members – much less a settlement with potential values in the ranges here -- is remarkable given the repeated denials of certification by other federal courts on this theory, and it warrants the fee and expense award requested by Plaintiff's Counsel.

Second, Plaintiff's Counsel undertook this litigation on a purely contingent basis, thereby bearing the full risk of non-recovery. Cf. In re Rio Hair, 1996 WL 780512, at *18 (recognizing the risk entailed in a major investment of attorney time and financial resources over a period of nearly two years). Lost time and effort was not the only risk; Plaintiff's Counsel had advanced significant litigation expenses as well. This factor also weighs in favor of approval.

Third, the legal issues in this case are novel. There is little case law under the CROA at all, much less case law on the issue of whether entities such as the Defendants can be considered "credit repair organizations" and therefore be subject to the requirements of the CROA. The two district courts which have weighed in on the issue, in the Hillis and Helms cases, have split on the substantive question. There is no appellate authority on that seminal and foundational issue in the case. The law extant on the availability of class certification was entirely negative.

Fourth, Plaintiff's Counsel is comprised of experienced class action counsel. The Settlement is the fruit of Plaintiff's Counsel's experience, reputation and ability in these types of cases. Additionally, Defendants are represented by experienced and highly skilled counsel who vigorously defended this action on every front. Obviously, defense counsel presented formidable opposition, and Plaintiffs rightly anticipated and received a superior caliber of legal work performed by defense counsel. Both sides know that difficult and protracted appellate litigation posed significant risks.

17

Fifth, the fee being requested is well within line of the customary fee awards in similar cases. As discussed above in Section A, the common fund attorneys' fee and expense request in this case is actually well below the typical range of common fund awards to counsel in other class actions in the Third Circuit. This factor also weighs in favor of approval.

Finally, and perhaps most importantly -- the vast amount of time and effort expended by Plaintiff's Counsel must be considered.    Plaintiff's Counsel expended an aggregate of approximately 2500 hours of attorney time in these cases -- in filing and defending against motions, in propounding and responding to discovery, and in taking weeks of necessary depositions in far-off places. See McGlamry Declaration, ¶ ¶ 6, 8, 10, 23; Green Declaration, ¶8; and Keener Affidavit. These fee and expense Declarations confirm the reasonableness of the agreed-to-fee under a "lodestar/multiplier" cross check. As detailed in the Declarations attached hereto, Class Counsel has expended approximately 2500 hours in the aggregate prosecuting these two cases. The requested fee award would thus result in a multiplier of no more than 1.0 (using hourly rates consistent with the hourly rates of similarly experienced counsel), which is fully warranted. In fact, this multiplier is at or below the low range of multipliers deemed appropriate in other courts. Multipliers have ranged from 1 to 4, and have reached as high as 10. 3 Newberg on Class Actions § 14.03 at 14-5 n. 21; see e.g., In re Beverly Hills Fire Litig., 639 F. Supp. 915 (E.D. Ky. 1986) (applying a multiplier of 5); see also In re Cendant Corp, 243 F.3d 722, 737 (3rd Cir. 2001) (containing chart of lodestar multipliers in various cases, none below 1.0).    The multiplier requested here – 1.0 -- is far below the multipliers approved in other similar class action cases.

C.    Market Forces Drove The Fees

Finally, we note that the "clear sailing" provision within the attorneys' fee provision in the Settlement Agreement is the product of a market-driven settlement. In Hensley, the United States Supreme Court held that negotiated, agreed-upon attorneys' fee provisions, such as the one here, are the "ideal" toward which the parties should strive: "A request for attorney's fees should not result in a second major litigation. Hensley, 461 U.S. at 437. Ideally, of course, litigants will settle the amount for a fee." Accord In re Continental Illinois Sec. Litig., 962 F.2d 566, 568-70 (7th Cir. 1992) (market factors, best known by the negotiating parties themselves, should determine the quantum of attorneys' fee); M. Berenson Co. v. Faneuil Hall Marketplace, Inc., 671 F. Supp. 819, 829 (D. Mass. 1987) ("The authorities encourage parties situated as those herein to agree as to the amount of the counsel fees to be paid. Whether a defendant is required by statute, or agrees as part of the settlement of a class action, to pay the plaintiffs' attorneys' fees, ideally the parties will settle the amount of the fee between themselves").

The parties followed the recommended procedure here: Plaintiff's Counsel and Defendants' Counsel separated the issues of settlement and fees, negotiating all substantive terms of the Settlement first and deferring negotiation of attorneys' fees and expenses until after all substantive terms were in place. The fee was negotiated under market conditions. Plaintiff's Counsel wished to maximize their fees to compensate, as courts encourage, for the substantial risk, contingency, innovation and creativity. Defendants' counsel, on the other hand, had a direct interest in negotiating the lowest amount their clients would be willing to pay. The result is an arm's-length, negotiated, reasonable fee that was set by market forces. Because the fee was negotiated after all of the other material aspects of the Settlement were resolved, there is no

concern that the Class Members were prejudiced. And because the fee which is requested is well below the acceptable ranges set forth in the law, it should be approved.

## CONCLUSION

For the reasons stated above, Plaintiff and Class Counsel respectfully request that the

Court award attorneys' fees and expenses, in the aggregate amount of $1.2 million.

/s/ *Carmella Keener*
Carmella P. Keener (DSBA No. 2810)
ROSENTHAL, MONHAIT & GODDESS, P.A.
919 N. Market Street, Suite 1401
P.O. Box 1070
Wilmington, DE 19801
(302) 656-4433
ckeener@rmgglaw.com
*Delaware Counsel for Plaintiff*

OF COUNSEL:
Michael L. McGlamry
Pope McGlamry Kilpatrick Morrison & Norwood LLP
The Pinnacle, Suite 925
3455 Peachtree Road, N.E.
Post Office Box 191625 (31119-1625)
Atlanta, Georgia 30326-3243
(404) 523-7706

Wade H. Tomlinson, III
Pope McGlamry Kilpatrick Morrison & Norwood LLP
1111 Bay Ave., Suite 450 (31901)
P.O. Box 2128
Columbus, Georgia 31902
(706) 324-0050

Wilson F. Green
Harlan F. Winn III
Battle Fleenor Green Winn & Clemmer LLP
The Financial Center
505 North 20th Street, Ste. 1150
Birmingham, Alabama 35203
(205) 397-8160

Arthur R. Miller
New York University School of Law
40 Washington Square South
Vanderbilt Hall 409D
New York, NY 10012
212-992-8147
Fax: 212-995-4590

21

## CERTIFICATE OF SERVICE

I, Carmella P. Keener, hereby certify that on this 20th day of August, 2007, I

caused the foregoing document to be electronically filed with the Clerk of the Court using

CM/ECF, which will send notification of such filing to the following:

William M. Lafferty, Esquire
Morris, Nichols, Arsht & Tunnell, LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347

Christopher J. Curtin, Esquire
Erisman & Curtin
P.O. Box 250
Wilmington, DE 19899-0250

*/s/ Carmella P. Keener*
Carmella P. Keener (DSBA No. 2810)
ROSENTHAL, MONHAIT & GODDESS, P.A.
919 Market Street, Suite 1401
Citizens Bank Building
Wilmington, DE 19899-1070
(302) 656-4433
ckeener@rmgglaw.com

*DELAWARE COUNSEL FOR PLAINTIFF*

22