# EXHIBIT A

## AGREEMENT FOR SETTLEMENT OF HILLIS AND SLACK LITIGATION

This Agreement for Settlement of Hillis v. Equifax Consumer Services, Inc. and Fair Isaac Corporation, No. 1:04-CV-3400-TCB (N.D. Ga.) and Slack v. Fair Isaac Corporation and MyFICO Consumer Services, Inc., No. 3:05-CV-00257-MHP (N.D. Cal.) (collectively, the "Litigation") is entered into as of February 5, 2007 between Plaintiffs Robbie Hillis and Christy Slack, acting on their own behalf and on behalf of a proposed Class of similarly situated persons, on the one hand, and Equifax Consumer Services, Inc. and Fair Isaac Corporation, on the other. This Agreement (or "Settlement Agreement") memorializes the Settlement between the Parties on a class-wide basis.

### I.    Recitals[1]

1.    On November 19, 2004, the Plaintiff in the Hillis Action, Robbie Hillis, commenced a putative class action in the United States District Court for the Northern District of Georgia against Equifax and Fair Isaac alleging causes of action for: (1) violations of the Credit Repair Organizations Act, 15 U.S.C. §§ 1679, et seq. ("CROA"); and (2) unjust enrichment.

2.    Defendants denied the allegations in the Hillis Action, denied wrongdoing of any kind, and further denied that this litigation satisfies the requirements for class certification under Federal Rule of Civil Procedure 23.

---

[1] Definitions contained in Section II infra.

UR2009 8663239.10

3.     On January 18, 2005, the Plaintiff in the <u>Slack</u> Action, Christy Slack, commenced a putative class action in the United States District Court for the Northern District of California against Fair Isaac and MyFICO Consumer Services, Inc. alleging substantially similar causes of action as the <u>Hillis</u> Action, including: (1) violations of CROA, (2) violations of the California Credit Services Act, Cal. Civ. Code §§ 1789.10, <u>et seq.</u>, and (3) unjust enrichment and money had and received.  Slack is represented by Class Counsel.

4.     In the <u>Slack</u> Action, Fair Isaac and MyFICO Consumer Services, Inc. denied the allegations, denied wrongdoing of any kind, and further denied that the litigation satisfies the requirements for class certification under Federal Rule of Civil Procedure 23.

5.     For approximately two years, the parties in the <u>Hillis</u> Action engaged in vigorous litigation and extensive discovery.  The parties in the <u>Hillis</u> Action conducted over 15 depositions, answered interrogatories, and responded to document requests. In the course of discovery, Equifax and Fair Isaac produced tens of thousands of documents.  The parties in the <u>Slack</u> Action also conducted substantial discovery, including taking 12 depositions, responding to interrogatories, requests for admissions, and the production of documents, as *well as engaging in extensive motion practice. In addition to the separate* discovery conducted in the <u>Hillis</u> Action, Fair Isaac and Slack stipulated that all

2

of the discovery produced and taken by and between Fair Isaac and Hillis would be treated as if it had also been conducted in the Slack Action.

6.     The negotiations leading up to this Settlement first began in the Hillis Action in October 2005, and included the use of a mediator. The Parties continued to discuss the possibility of settlement. Nevertheless, the Parties in the Hillis and Slack Actions continued to vigorously litigate their respective cases. For example, the parties in the Slack Action completed briefing on Slack's Motions for Class Certification and Partial Summary Judgment and Fair Isaac's Motion for Partial Summary Judgment in August 2006.

7.     On August 18, 2006, the Court in the Hillis Action issued an order denying Hillis' Motion for Class Certification, and granting in part and denying in part Hillis' Motion for Partial Summary Judgment.

8.     On September 1, 2006, Hillis filed a Motion for Partial Reconsideration of the Court's August 18 order. On September 25, 2006, Defendants filed an opposition to Hillis' motion.

9.     A three-hour hearing was held by the Court on October 13, 2006 on Hillis' Motion for Partial Reconsideration. The Court heard argument on the structure and interpretation of the CROA, whether a class action was superior, and whether Hillis was an adequate class representative. The Court invited each

3

party to submit a 12-page supplemental brief to respond to issues raised at the October 13 hearing.

10.    On October 16, 2006, the court in the <u>Slack</u> Action heard argument on Slack's Motions for Partial Summary Judgment and Class Certification and Fair Isaac's Motion to Transfer the <u>Slack</u> Action to the Northern District of Georgia.

11.    Following the above court hearings, the Parties continued settlement negotiations. The Parties obtained three short extensions of time to file their supplemental briefing to the Court in the <u>Hillis</u> Action.

12.    Following several further discussions, an in-person negotiation was held on November 20, 2006. The Parties worked toward reaching an agreement in principle to resolve the <u>Hillis</u> and <u>Slack</u> Actions.

13.    As the settlement negotiations in the <u>Hillis</u> Action developed, it became apparent that any settlement would necessitate a complete resolution of all claims at issue, including those in the <u>Slack</u> Action. Because the claims asserted in the <u>Hillis</u> and <u>Slack</u> Actions are substantially similar, the Parties deemed it more efficient to present this Settlement to the <u>Hillis</u> Court, where all Defendants are parties.

14.    The Parties recognize that the outcome of this Litigation is uncertain, and that a final result through the litigation process would require substantial

4

risk and additional discovery, time, and expense. The Parties and their counsel therefore have agreed and desire to resolve this Litigation as a settlement class action according to the terms of this Settlement Agreement.

15.    The Parties and their counsel believe that the Settlement Agreement is a fair, reasonable, and adequate resolution of the Litigation. The Parties further believe that the prompt implementation of the Settlement Agreement is preferable to further prosecution of the Litigation as a means for resolving all claims, if any, that Hillis, Slack and Settlement Class Members may have concerning: (i) violations of the Credit Repair Organizations Act; (ii) violations of any other federal or state statute or regulation that applies to credit repair; and (iii) any legal or equitable claim relating to the Offerings.

## II.    Definitions

16.    "Associated Literature" means the marketing and advertising used in connection with the Offerings, including radio advertisements, television advertisements, print advertisements, banner advertisements, email campaigns, newsletters, marketing and advertising statements contained in Defendants' Websites, internet keyword purchases/auctions, metatag embedment, and search engine optimization.

17.    "Class Counsel" means Pope, McGlamry, Kilpatrick, Morrison & Norwood, LLP, who are the attorneys of record for Hillis, Slack and the

5

US2000 9645239.10

Settlement Class in the <u>Hillis</u> and <u>Slack</u> Actions; and Battle, Fleenor, Green, Winn & Clemmer LLP, who are the attorneys of record for Slack and the Settlement Class in the <u>Slack</u> Action.

18.    "Consumer List" means a list produced by each of the Defendants containing the following information for each and every consumer from November 19, 1999 through the date of entry of the Preliminary Approval Order who purchased an Offering from the Defendant:  (i) the consumer's first, middle and last name; (ii) the consumer's current address, if known; (iii) the consumer's date of birth; (iv) the consumer's Social Security Number and (v) the consumer's current email address, if known.

19.    "Contractual Associate" means any entity with which the Defendants have a contractual relationship whereby the entity (i) posts a link to a Defendant's Website on its website and receives a commission (or other compensation) for driving traffic to the Defendant's Website; (ii) advertises, promotes, markets, provides, and/or sells any Offering; or (iii) offers a private label or co-branded version of any of Defendants' Offerings; provided however, that Contractual Associate shall not include Trans Union LLC, Experian Information Solutions, Inc. and their corporate parents, affiliates and subsidiaries.

US2008 9665239.10

20.    "Court" means the United States District Court for the Northern

District of Georgia.

21.    "Defendants" means Equifax and Fair Isaac.

22.    "Defendants' Websites" means the Equifax Consumer Website and

the Fair Isaac Consumer Website.

23.    "Effective Date" shall mean the date on which the Judgment

becomes Final.

24.    "Equifax" means Equifax Consumer Services, Inc.

25.    "Equifax Consumer Website" means www.equifax.com.

26.    "Fair Isaac" means Fair Isaac Corporation.

27.    "Fair Isaac Consumer Website" means www.myfico.com.

28.    "FICO® Kit" means the Suze Orman FICO® Kit.

29.    "Final" means the termination of the Litigation after each of the

following events: (i) the Settlement Agreement is approved in all respects by the

Court; and (ii) a Judgment of dismissal with prejudice is entered with respect to

the Plaintiffs and all Settlement Class Members who do not Opt-Out as provided

by Rule 23 of the Federal Rules of Civil Procedure and the time for the filing of

any appeals has expired or, if there are appeals, approval of the Settlement and

Judgment has been affirmed in all respects by the appellate court of last resort to

7

which such appeals have been taken and such affirmances are no longer subject to further appeal or review.

30.  "Hillis" means Robbie Hillis.

31.  "Hillis Action" means the action entitled Hillis v. Equifax Consumer Services, Inc. and Fair Isaac Corporation, No. 1:04-CV-3400-TCB (N.D. Ga.).

32.  "Injunctive Relief" means the injunctive relief that will be provided by Defendants as described in Section V of this Agreement.

33.  "Judgment" means the judgment and order entered by the Court approving the Settlement in all respects and dismissing with prejudice the claims of the Plaintiffs and the Class who do not Opt-Out as provided by Rule 23 of the Federal Rules of Civil Procedure.

34.  "Long-Form Notice" means the notice of the Settlement (in a form substantially similar to that mutually agreed upon by the Parties and approved by the Court) provided to the Settlement Class that provides the Class with all the information necessary to be provided to the Class pursuant to Federal Rule of Civil Procedure 23 and the requirements of due process.

35.  "Offering" means those products or services that are offered by Equifax or Fair Isaac for sale to consumers in return for the payment of money and are further identified as one of the following (including all components, features, content and variants thereof, regardless of the website from which the

8

purchase is made): Score Power; Credit Watch; Score Watch; 3-in-1 Monitoring; Credit Rankings with Score Power; Credit Rankings with 3-in-1 with Score Power; Credit Rankings with Credit Report; Credit Rankings with 3-in-1; 3-in-1 with Score Power; Score Power by mail; Credit Watch by mail; FICO® Score (with Equifax, TransUnion or Experian reports); FICO® Deluxe; Suze Orman FICO® Kit; CreditSync; and Credit Advantage.

36.   "Opt-Out" means to timely request exclusion from the Settlement pursuant to Federal Rule Civil Procedure 23(c)(2)(B).

37.   "Parties" or "Settling Parties" means Plaintiffs, Equifax and Fair Isaac.

38.   "Plaintiffs" means Hillis and Slack.

39.   "Preliminary Approval Order" means the order of the Court: (i) certifying the Settlement Class under Federal Rule of Civil Procedure 23(b)(3); (ii) preliminarily approving the proposed Settlement Agreement; and (iii) approving the proposed notices.

40.   "Released Claims" means any and all claims, actions, demands, causes of action, suits, obligations, damages, rights or liabilities, of any nature and description whatsoever, known or unknown, present or future, concealed or hidden, liquidated or unliquidated, fixed or contingent, anticipated or unanticipated, whether in tort, contract, law, equity or otherwise, that have been,

9

could have been or might in the future be asserted by Plaintiffs in the <u>Hillis</u> or <u>Slack</u> Actions or the Settlement Class Members or any of their respective heirs, spouses, executors, administrators, partners, attorneys, predecessors, successors, assigns, agents and/or representatives, and/or anyone acting or purporting to act on their behalf, arising out of the marketing, sale, purchase, representations and advertisements concerning or use of the Offerings. Released Claims include, but are not limited to, all claimed or unclaimed compensatory damages, damages for emotional distress, damages for physical injury, damages for reputational injury, statutory damages, consequential damages, incidental damages, punitive and exemplary damages, as well as all claims for equitable, declaratory or injunctive relief under any federal or state statute or common law or other theory that was alleged or could have been alleged in the <u>Hillis</u> or <u>Slack</u> Actions with respect to the marketing, sale, purchase, representations concerning or use of the Offerings, including but not limited to any and all claims under the Credit Repair Organizations Act, 15 U.S.C. § 1679, *et seq.*, State CROA Statutes, deceptive or unfair practices statutes, common law, or any other statute, regulation or judicial interpretation. Released Claims further include interest, costs and fees arising out of any of the claims asserted or that could have been asserted in the <u>Hillis</u> or <u>Slack</u> Actions. Released Claims do not include claims under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA") and/or the Fair and Accurate

10

US2000 9665339.10

Credit Transactions Act of 2003, Pub. L. 108-159, 111 Stat. 1952 ("FACTA").

Notwithstanding the foregoing, nothing in this Agreement shall be deemed a

release of the Parties' respective rights and obligations under this Agreement.

    41.   "Released Parties" means and refers to:  (i) Equifax Consumer

Services, Inc. and its present, former and future officers, directors, employees,

agents, attorneys, shareholders, predecessors, successors, subsidiaries, corporate

affiliates, parents, representatives, insurers, vendors and assigns, or interest

therein, jointly and severally; (ii) Fair Isaac Corporation and its present, former

and future officers, directors, employees, agents, attorneys, shareholders,

predecessors, successors, subsidiaries, corporate affiliates, parents,

representatives, insurers, vendors and assigns, or interest therein, jointly and

severally; and (iii) Contractual Associates who (a) acknowledge receipt of the

terms of Injunctive Relief, in accordance with Paragraph 66 hereof, and

(b) marketed, sold, or made representations concerning any of the Offerings;

provided however, that a Contractual Associate is a Released Party only with

respect to claims arising from the marketing, sale, purchase, representations

concerning, or use of the Offerings.

    42.   "Settlement" means the agreement between Plaintiffs, on behalf of

themselves and on behalf of the Settlement Class, and Equifax and Fair Isaac to

settle and compromise the issues arising out of Plaintiffs' Complaints (and

11

amendments thereof) in the <u>Hillis</u> and <u>Slack</u> Actions and the issues arising out of said Actions, finally and forever, as memorialized in this Settlement Agreement.

43.    "Settlement Administrator" means a third-party settlement administrator chosen by the Parties.

44.    "Settlement Class" or "Class" means all consumers residing in the United States who, between November 19, 1999, and the date of entry of the Preliminary Approval Order, entered into an agreement with any of the Defendants to purchase any of the Offerings, paid any of the Defendants for that Offering but did not later obtain a complete refund from any source and received said Offering.  Settlement Class or Class, however, shall not include:  (i) all judicial officers in the United States and their families through third degree of relationship; (ii) all officers, directors, employees or counsel of the Released Parties; (iii) all persons who have already settled or otherwise compromised their claims against the Defendants; (iv) all persons who Opt-Out; and (v) all persons who have pending against any of the Defendants on the date of entry of the Preliminary Approval Order any action wherein the recovery sought is encompassed by the Released Claims.

45.    "Slack" means Christy Slack.

46.    "<u>Slack</u> Action" means <u>Slack v. Fair Isaac Corporation and MyFICO Consumer Services, Inc.</u>, No. 3:05-CV-00257-MHP (N.D. Cal.).

12

47.    "State CROA Statutes" means any state statute that is substantially similar, in scope and purpose, to the Credit Repair Organizations Act, 15 U.S.C. §§ 1679, et seq.

### III.    General Terms and Conditions.

48.    Coordination of Litigation. As soon as reasonably practicable after the execution of the Settlement Agreement, the Parties and their counsel will take all reasonable steps and use best efforts to join with, support, and cooperate fully in the request that the court before which the Slack Action is pending transfer the Slack Action to the Court, where it will be coordinated for settlement purposes only with the Hillis Action. The Parties contemplate conferring with the respective courts before making formal requests to those courts regarding transfer or settlement.

49.    Benefit to Plaintiffs. Plaintiffs and Class Counsel have concluded, under the circumstances and considering the pertinent facts and applicable law, that it is in Plaintiffs' and the Settlement Class' best interests to enter into this Settlement Agreement to avoid the uncertainties of litigation and to ensure a benefit to Plaintiffs and all members of the Settlement Class. Plaintiffs and Class Counsel consider this Settlement Agreement to be fair, reasonable, and adequate and in the best interests of the members of the Settlement Class.

13

US2000.9665239.10

50.    <u>No Admission of Liability.</u>  By entering into this Agreement, the
Settling Parties agree that Defendants are not admitting any liability to the
Plaintiffs, the Settlement Class, or any other person or entity, and Defendants
expressly deny all such liability.  Defendants' sole motivation for entering into
this Settlement Agreement is to dispose expeditiously of the claims that have
been asserted against them in the Litigation by settlement and compromise
rather than incur the expense and uncertainty of protracted litigation.  No
portion of this Agreement may be admitted into evidence in any action, except as
required to enforce this Agreement and/or to cease or enjoin other litigation.

51.    <u>Settlement Class Definition.</u>  Plaintiffs shall propose, and
Defendants shall join or not oppose, for settlement purposes only, that the
District Court certify the Settlement Class under Rule 23(b)(3) of the Federal
Rules of Civil Procedure, as the term "Settlement Class" is defined herein.

52.    <u>Cessation of Litigation Activity.</u>  Plaintiffs and Class Counsel agree
not to initiate any additional litigation against Defendants concerning the claims
alleged in the Litigation.  Immediately upon execution of this Agreement,
Plaintiffs, Class Counsel and Defendants agree to cease all litigation activity in
the Litigation (other than any activity to implement and/or enforce this
Settlement Agreement) and to request the courts in the <u>Hillis</u> and <u>Slack</u> Actions
to stay all motions or other pre-trial matters and to continue any hearing or trial

14

settings until each of the conditions precedent to the Settling Parties' obligations to proceed to consummate the Settlement provided for herein has been satisfied or waived.

53.    <u>Class Certification</u>.  The Court's certification of the Settlement Class shall not be deemed to be the adjudication of any fact or issue for any purpose other than the accomplishment of the settlement provisions set forth herein and shall not be considered as law of the case, res judicata, or collateral estoppel in this or any other proceeding unless the settlement receives final approval and the Judgment approving the terms of this Settlement Agreement is entered and becomes Final.  In the event the Settlement provided for herein is not accomplished according to all the terms of this Agreement, the Litigation for all purposes will revert to its status prior to the execution of this Settlement Agreement and the Court's certification order shall be null and void and shall be vacated, and thereafter no class will remain certified; provided that, thereafter Plaintiffs and Class Counsel may seek certification of a new class before the Court, and Defendants may oppose such certification on any grounds, as described below.  In such event, the <u>Slack</u> Action will be transferred back to Judge Patel in the Northern District of California without prejudice Fair Isaac's right to request from Judge Patel that the <u>Slack</u> Action be litigated in the Northern District of Georgia.

15

DE3000 9665239.10

IV.    Notice to the Settlement Class

54.    For purposes of providing Court-approved class notices and establishing that the best practicable notice has been given, membership in the Settlement Class and the provision of class notice will be accomplished in accordance with the provisions of this Section IV.

55.    <u>Combining of Consumer Lists</u>:  The Parties shall cause the Settlement Administrator to merge the Consumer Lists of the Defendants, eliminate any duplicative/overlapping entries, retain any and all of the email addresses associated with each consumer, and track which Defendant provided each consumer's name.  The list produced at the end of this process shall be a conclusive list of the members of the Settlement Class (hereafter the "Class List").

56.    <u>Email Notice</u>:  Within thirty (30) days after the Court's entry of the Preliminary Approval Order, the Defendants shall cause the Settlement Administrator to send the Email Notice (in a form substantially similar to that mutually agreed upon by the Parties and approved by the Court) by email to each Settlement Class Member at each member's last known email address(es) as provided by the Defendants.  A Class Member who purchased an Offering from both of the Defendants will only be sent one Email Notice.  The Email Notice will set forth the objection and Opt-Out dates, will contain the HTML or web address for the Settlement Website where pertinent information concerning the

16

Settlement will be available, and will include a toll-free telephone number at which assistance will be available. Not later than seven (7) days before the Final Fairness hearing, Defendants and/or the Settlement Administrator will cause proof of the emailing of the Email Notice to be filed with the Court.

57. <u>Postcard Notice</u>: In the event that an Email Notice sent to a particular Settlement Class Member is "bounced back" from or is otherwise identified as having been undeliverable to the recipient's email server, or no email address is located, within twenty-one (21) days of the sending of the Email Notice, Defendants shall cause the Settlement Administrator to send Postcard Notice (in a form substantially similar to that mutually agreed upon by the Parties and approved by the Court) by first-class mail to each such Settlement Class Member. The Postcard Notice shall be sent to the last known address reflected in the Defendants' Consumer Lists, as updated by utilizing the National Change of Address process. The Postcard Notice will set forth the objection and Opt-Out dates, will contain the HTML or web address for the Settlement Website where the Long-Form Notice and pertinent information concerning the Settlement will be available, and will include a toll-free telephone number at which assistance will be available. Not later than seven (7) days before the Final Fairness hearing, Defendants and/or the Settlement Administrator will cause proof of the mailing of the Postcard Notice to be filed with the Court. Neither

US2000 966529.10

the Defendants nor the Settlement Administrator shall have any further

obligation to send the Class Members notice of the Settlement, except as

provided in Paragraph 72 hereof.

    58.   <u>Internet Notice</u>: Defendants shall establish an internet web site

containing information about the Settlement. The Settlement Website will be

accessible no later than five (5) days prior to the emailing of the Email Notice

described above. The Settlement Website will set forth the following

information: (i) the full text of the Settlement Agreement; (ii) a Long-Form

Notice (in a form substantially similar to that mutually agreed upon by the

Parties and approved by the Court); (iii) the Preliminary Approval Order and

other relevant orders of the Court; and (iv) contact information for Class Counsel

and the Settlement Administrator. Nationwide access to the Settlement Website

will be ensured via the following methods: (i) the Settlement Website will be

registered with Google so that appropriate queries on Google will yield a link to

the Settlement Website; (ii) a web link will be posted on the Defendants'

Websites so that visitors to the Defendants' Websites may jump directly to the

Settlement Website; and (iii) the Email Notice and Postcard Notice will reference

the Settlement Website. Not later than seven (7) days before the Final Fairness

hearing, Defendants and/or the Settlement Administrator will cause proof of the

establishment and maintenance of the Settlement Website to be filed with the Court.

59.   <u>Telephone Assistance Program</u>:  Defendants will establish a toll-free telephone number, which will be staffed by the Settlement Administrator, to answer questions from the Settlement Class Members.  At Defendants' sole election, the toll-free number will provide access to live support, a voice response unit ("VRU") or a combination of VRU and live support; provided however, that the Class Members will have the option to leave a voice mail message with the Settlement Administrator, which message will be responded to, as appropriate. Not later than seven (7) days before the Final Fairness hearing, Defendants and/or the Settlement Administrator will cause proof of the establishment and maintenance of the Telephone Assistance Program to be filed with the Court.

60.   All costs associated with the notice program described in Section IV of the Agreement shall be paid by the Defendants.

61.   It is stipulated and agreed that the foregoing terms with respect to notice are material conditions precedent to Defendants' obligations under this Agreement.  If the extent, manner or form of notice provided for in this Agreement are not approved by the Court in all material respects, it is understood that Defendants will not be obligated to proceed with the Settlement provided for herein.

19

## V.    Injunctive Relief

62.    All of the affirmative relief contemplated by this Settlement is expressly contingent upon the proposed Settlement receiving the Court's Final Approval, the Court entering the Judgment and the Judgment becoming Final. Defendants shall implement the following changes for a term not to exceed two (2) years from the Effective Date:

i.    Defendants agree that their Offerings and Associated Literature will not use the following terms: "improve," "enhance," "boost," "raise" and "increase" in the same phrase as "score" or "rating"; however, an exception will be allowed when discussing hypothetical examples in the Score Simulator, such as "These Actions May Improve My Score";

ii.    Defendants agree that their Offerings and Associated Literature will not use the phrases "credit repair," "credit rebuilding," "credit fix," "repair your credit," "fix your credit" or combinations of those words; provided however, that the Defendants may use such terms in the disclaimer described in Paragraph 62.v. below and may post links on their Websites to the FTC's or similar state agencies' web sites.

iii.    Defendants agree that their Offerings and Associated Literature will not use the terms "advice", "tips", "suggestions" and

20

"instructions" in the same phrase as "improving," "enhancing," boosting,"

"raising" and "increasing" a credit score or credit rating;

iv.    Defendants agree that their Offerings and Associated Literature that refer to the Score Simulator will add an explanation regarding the general nature of the simulated score associated with the Score Simulator, and will not suggest that the simulated score is "always" (or its equivalent) predictive of one's actual score;

v.    A disclaimer that Defendants are not credit repair organizations, or similarly regulated organizations under other applicable laws, and do not provide credit repair advice shall be prominently displayed in bold at the top of the Terms of Use displayed by Defendants during the purchase process on the Defendants' Websites;

vi.    Fair Isaac agrees that Associated Literature that refers to the Personal Coaching modules in its FICO® Kit will make clear that any such modules will focus on issues such as debt relief, buying a car, etc., and not the improvement of an individual consumer's credit score;

vii.    Fair Isaac agrees that its FICO® Kit will delete the "Suze's FICO School" and "FICO Improvement Plan" modules;

viii.    Fair Isaac agrees that it will also offer on its Website for free a module similar to that offered in the FICO® Kit to assist a consumer to write a

21

letter to a credit bureau listing potential errors identified by the consumer in his

or her credit report, and that Associated Literature related to this module will

only list that feature as one of the several features of the FICO® Kit but will not

emphasize that feature over any other feature or suggest that it has any

independent value;

      ix.    Equifax agrees to maintain a link to

www.annualcreditreport.com on the Equifax Consumer Website; and

      x.    Fair Isaac agrees that it will place a link to www.ftc.gov/credit

on the home page of the Fair Isaac Consumer Website.

    63.    To the extent that a webpage on a Defendant's Website does not

comply with the Injunctive Relief defined above, such webpage shall not:

(i) contain any marketing or advertisement of the Defendants' Offerings; or

(ii) contain any links to web pages that market, advertise or offer for sale

Defendants' Offerings; provided however, that such a webpage may contain the

"Navigation Bar" that is the same as and contained on all of Defendants' web

pages and such "Navigation Bar" may include an option that links to a webpage

that describes, promote or offers for sale the Defendants' Offerings or similar

products.

    64.    Within sixty (60) days after the Effective Date, the Defendants shall

implement the Injunctive Relief described above.  Without any admission of

22

US2000 9665239.10

liability by the Defendants for their prior actions and statements, upon implementation of the Injunctive Relief described above, the Settling Parties believe that none of the Defendants will fall within the statutory definition of a "credit repair organization" contained in 15 U.S.C. § 1679a, a "credit services organization" contained in Cal. Civ. Code § 1789.12 or the equivalent term defined in a substantially similar manner contained in a State CROA Statute.

65.    Without any admission of liability by the Defendants for their prior actions and statements, the Settling Parties further agree to request that the Court find, as part of its overall approval of the Settlement, that upon implementation of the Injunctive Relief described above, none of the Defendants will fall within the statutory definition of a "credit repair organization" contained in 15 U.S.C. § 1679a, a "credit services organization" contained in Cal. Civ. Code § 1789.12 or the equivalent term defined in a substantially similar manner contained in a State CROA Statute.

66.    Within sixty (60) days after the Effective Date, the Defendants shall cause a summary of the Injunctive Relief terms of this Settlement applicable to Contractual Associates to be sent (via email or mail) to each of their Contractual Associates and Defendants shall (i) advise the Contractual Associates that the Defendants will require the Contractual Associates to comply with the Injunctive Relief terms applicable to Contractual Associates and (ii) request that the

23

Contractual Associate acknowledge receipt of the terms. Defendants will not encourage Contractual Associates to circumvent, or use Contractual Associates for the purpose of circumventing the Injunctive Relief terms of this Settlement. This Agreement does not create any additional obligation on the Defendants to monitor the compliance of their Contractual Associates with the Injunctive Relief herein. If either Defendant becomes aware that any of its Contractual Associates is not in compliance with the Injunctive Relief terms applicable to Contractual Associates, such Defendant shall contact the Contractual Associate and demand that the Contractual Associate comply with the Injunctive Relief. Beginning thirty (30) days after the Court's entry of the Preliminary Approval Order, the Defendants shall incorporate into all contracts that are executed in the future with their Contractual Associates a provision that the contract will incorporate the Injunctive Relief terms applicable to Contractual Associates contained herein as of the Effective Date.

67. The Court shall retain jurisdiction of the Hillis and Slack Actions for the purpose of interpretation of, compliance with and enforcement of this Agreement, including enforcement of the Injunctive Relief herein.

68. Nothing in this Settlement or Settlement Agreement shall prevent the Defendants from complying with the law as it may exist now or in the future, or from making future changes to adjust their websites if consistent with

24

US2000 9665239.10

applicable statutes, statutory amendments, exemptions, regulations or case law precedent. Furthermore, nothing in this Settlement or Settlement Agreement shall prevent Defendants from complying with their obligations under state and federal law.

69. <u>Relation to Other Agreements, Laws, and Interpretations, Future Exemption from the CROA or Similar Statutes</u>: The Parties recognize that situations may arise in which provisions of the Agreement may conflict with, or differ from, other laws, rules, regulations, statutes, agreements, and the like. In that regard, the parties have agreed as follows:

i. <u>Other Agreements or Legal Requirements</u>: In the event that in the future, in conjunction with any other matter, lawsuit, regulatory matter, or similar event, Equifax or Fair Isaac (or any of their successors, if applicable) enters into any agreement, consent judgment, settlement, injunction, consent decree, or other binding document regarding the subject matter of the Injunctive Relief or any section herein, or is otherwise required by a court or state or governmental agency to do something or refrain from doing something regarding the subject matter of any section herein, or concerning or relating to the subject matter of the Litigation ("Other Agreement or Requirement"), then, after notice to and consultation with Class Counsel, Equifax and/or Fair Isaac may petition the Court for relief from any provision of the Injunctive Relief or

25

this Agreement. If the Court grants such relief, then the Settlement will be modified accordingly without the requirement of notice to the Settlement Class or additional consideration by the requesting party or any other Defendant.

      ii.   <u>New Law or New Legal Interpretation</u>: In the event any federal or state law, rule, regulation, or a judicial, agency, or administrative interpretation including but not limited to formal policy statement or letter ruling is passed, adopted, communicated or rendered after the Effective Date of this Agreement concerning or relating to the Injunctive Relief or the subject matter of any provision of the Injunctive Relief or this Agreement, or concerning the subject matter of the Litigation (a "New Law or Interpretation"), then, after notice to and consultation with Class Counsel, Equifax and/or Fair Isaac may petition the Court for relief from any provision of the Injunctive Relief or this Agreement. If the Court grants such relief, then the Settlement will be modified accordingly without the requirement of notice to the Settlement Class or additional consideration by the requesting party or any other Defendant.

      iii.   <u>Inconsistent Agreements, Law, or Legal Interpretation</u>: In the event any New Law or Interpretation, or Other Agreement or Requirement, imposes requirements that are inconsistent with any provision of this Agreement, or Equifax and/or Fair Isaac directly or indirectly becomes bound by any agreement, consent judgment, settlement, or other binding document

26

regarding the subject matter of any provision or section herein, or is otherwise required by a court or state or governmental agency to do something or refrain from doing something regarding the subject matter of any provision herein, or concerning or relating to the subject matter of the Injunctive Relief or the Litigation, then, in the good faith exercise of their discretion, Defendants may comply with such inconsistent requirement(s) or inconsistent agreement(s), and such actions will constitute compliance with this Agreement and shall not be deemed a breach thereof. Provided, however, that Defendants (either individually or jointly) shall timely provide written notice to Class Counsel and the Court of the inconsistent New Law or Interpretation, or Other Agreement or Injunction, with which either or both Defendants intend to comply, and if Class Counsel disputes the inconsistency, then Class Counsel may petition the Court for an order requiring Defendants to comply with the claimed inconsistent provision of this Agreement.

        iv.    For purposes of this Agreement, a requirement of a New Law or Interpretation, or Other Agreement or Requirement, shall be deemed to be inconsistent with a provision or provisions of this Agreement if Equifax and/or Fair Isaac cannot comply with the New Law or Interpretation, or Other Agreement or Requirement, without violating a corresponding provision or provisions in this Agreement.

27

v.    <u>Future Exemption from the CROA</u>: If, following the Effective Date, Equifax and/or Fair Isaac qualifies for one of the exemptions currently or in the future provided in 15 U.S.C. § 1679a(3)(B) or in any similar provisions under federal or state law then, after notice to Class Counsel and the Court, said party shall be relieved from the Injunctive Relief provisions in this Agreement. If Class Counsel disputes that the notifying Party falls within the exclusion, then Class Counsel may petition the Court for an order requiring the requesting party to continue to comply with the Injunctive Relief provisions of this Agreement.

## VI.    In-Kind Relief

70.    In addition to the Injunctive Relief described above, each Defendant agrees to offer, without charge, to any eligible Settlement Class Member who purchased an Offering from it the following In-Kind Relief. If a Class Member purchased Offerings from both of the Defendants, then the Class Member will be eligible to receive In-Kind Relief from each of the Defendants.

71.    <u>In-Kind Relief</u>: Each of the Defendants will provide three (3) months of Score Watch (the "In-Kind Relief") to each Class Member who purchased any Offering from it. If a Class Member purchased an Offering from both of the Defendants, the Class Member will be eligible to receive two (2) units of In-Kind Relief, one from each of the Defendants. To obtain the In-Kind Relief, the Class Member must complete the Authentication Process described below.

28

72.    <u>Authentication Process</u>:

    i.    The Class Member must fully complete the Authentication Form (in a form substantially similar to that mutually agreed upon by the Parties and approved by the Court). The Authentication Form will request that the Class Member provide the following information: (a) name; (b) current address; (c) previous address, if the Class Member has changed addresses within the prior two (2) years; (d) date of birth; (e) the last four (4) digits of his Social Security Number; and (f) current email address. The Authentication Form will be available online at the Settlement Website from the date of sending of the Email Notice through seventy-five (75) days after the Effective Date. The Authentication Form may be submitted either on-line or by U.S. mail. The Authentication Form, if completed on-line, must be submitted not later than seventy-five (75) days after the Effective Date. The Authentication Form, if submitted by U.S. mail, must be postmarked not later than seventy-five (75) days after the Effective Date and mailed to the Settlement Administrator, at the address so designated on the Authentication Form.

    ii.    Upon receipt of a completed Authentication Form, the Defendants and/or the Settlement Administrator will verify that the person submitting it is a Class Member by comparing the information on the Authentication Form to the information contained in the Class List. Defendants

29

and/or the Settlement Administrator will review the completed Authentication

Form and determine if there is sufficient evidence that the person submitting it is

likely to fit within the Settlement Class. If there is a reasonable probability that

the person submitting a Authentication Form is a Class Member, he or she will

be treated as a Class Member. If Defendants and/or the Settlement

Administrator regard the Authentication Form as deficient (i.e., the form

contains insufficient information from which to determine whether the person

submitting the form is a Class Member), Defendants and/or the Settlement

Administrator will notify the person who submitted it and give him an

opportunity to cure the deficiency. If Defendants and/or the Settlement

Administrator continue to regard any Authentication Form as deficient,

Defendants or the Settlement Administrator will provide the person's

information (excluding Social Security Number) to Class Counsel. If Class

Counsel and Defendants cannot resolve the dispute, the Authentication Form

will be rejected and the person who submitted it will be notified of the rejection

by Defendants or the Settlement Administrator with a copy of the notice of

rejection served upon Class Counsel. Neither the Defendants nor the Settlement

Administrator shall have any further obligation to any person whose

Authentication Form is rejected.

LIB2000 9665239.10

    iii.    Within fifteen days (15) after the Effective Date, the Defendants shall cause the Settlement Administrator to send a Notice of Eligibility (in a form substantially similar to that mutually agreed upon by the Parties and approved by the Court) by email to the Class Members. Neither the Defendants nor the Settlement Administrator shall have any further obligation to send the Notice of Eligibility to the Class Members. The Notice of Eligibility shall (i) advise the Class Members of the last date on which Authentication Forms may be submitted; and (ii) provide an estimated timeframe for the distribution of Benefit Code Notices.

    iv.    On or about ninety days (90) after the Effective Date, but in no event sooner than August 1, 2007, the Defendants shall cause the Settlement Administrator to begin sending the Benefit Code Notice (in a form substantially similar to that mutually agreed upon by the Parties) by email to the Class Members who completed and timely submitted a Authentication Form at the email address provided on the Authentication Form. Either or both of the Defendants, in their sole discretion, may elect to stagger the distribution the Benefit Code Notices over a six (6) month period; provided however that for every 30-day period following the initial distribution of the Benefit Code Notices, at least one-sixth of the Benefit Code Notices must be distributed. If a Defendant elects to stagger the distribution of the Benefit Code Notices, the order of

31

distribution will be alphabetical. Neither the Defendants nor the Settlement Administrator shall have any further obligation to send the Benefit Code Notice to the Class Members.

   v.    The Benefit Code Notice will provide the Class Member with the website address at which the In-Kind Relief may be obtained, a benefit code that will be used in place of payment and instructions on how to obtain the In-Kind Relief. In order for the Class Members to obtain the In-Kind Relief, they will be required to successfully complete the authentication process required by the Defendants for all purchasers of Defendants' Offerings and otherwise must be eligible to receive Score Watch. The Defendants agree that at the time the Class Member redeems his benefit code, the Class Member will not be solicited to purchase any additional products or services, unless such solicitation is made in the normal course of the purchase process and is made to all purchasers of Score Watch. The Defendants shall not have any further obligation to provide In-Kind Relief other than as outlined above.

   vi.    If a Class Member is eligible to receive In-Kind Relief from only one Defendant, the Benefit Code will expire ninety (90) days after it is delivered to the Class Member. If a Class Member is eligible to receive In-Kind Relief from both of the Defendants, he will receive two (2) benefit codes, one for

US2000 9665239.10

each Defendant, and the Benefit Codes will expire one hundred and eighty (180) days after they are delivered to the Class Member.

       vii.   For any Class Member who (a) is currently enrolled in Score Watch through one of the Defendants, (b) submits a Authentication Form and (c) uses the benefit code, the three (3) months of Score Watch provided in this Settlement will be added to end of the Class Member's current Score Watch enrollment period. If the Class Member's membership in Score Watch is paid on a monthly basis, the applicable Defendant will suspend the automatic credit card deduction for the three-month period following use of the benefit code. Upon expiration of the three-month period, the Defendant may resume the automatic credit card deduction at the end of the then current monthly term without further notice to the Class Member. If the Class Member's membership in Score Watch is paid on a yearly basis, the applicable Defendant will suspend the automatic credit card deduction at the end one-year enrollment period for the three-month period following use of the benefit code. Prior to charging the Class Member's credit card for the next one-year enrollment period, the Defendant will provide the Class Member with its customary notice regarding charging the Class Member for the next one-year enrollment period.

US2000 9665239.10

## VII.  Releases

73.  <u>Release</u>:  Upon the Effective Date, Plaintiffs and each member of the Settlement Class, their respective spouses, heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors and assigns and all those acting or purporting to act on their behalf with respect to the Offerings marketed and sold by the Defendant(s), shall conclusively be deemed to have fully, finally and forever released, relinquished and discharged the Released Parties from and against any and all of the Released Claims.

74.  <u>Waiver of Unknown Claims</u>:  Plaintiffs and the Settlement Class Members, on behalf of themselves and their respective spouses, heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors and assigns, and all those acting or purporting to act on their behalf, hereby warrant, represent and agree that unknown losses or claims could possibly exist and that present losses may have been underestimated in amount or severity.  Plaintiffs and the Settlement Class Members, on behalf of themselves and their respective spouses, heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors and assigns, and all those acting or purporting to act on their behalf, explicitly take that into account in entering into this Agreement, and a portion of the consideration and the mutual covenants contained herein have been bargained for between Plaintiffs and the

34

Settlement Class Members, on the one hand, and Defendants, on the other hand, with the knowledge of the possibility of such unknown claims and losses, and were given in exchange for a full accord, satisfaction and discharge of all such Released Claims. Consequently, Plaintiffs and the Settlement Class Members expressly waive and are deemed to waive all rights under California Civil Code Section 1542, which provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASES, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

75.    Plaintiffs and all Settlement Class Members do and are deemed to understand and acknowledge the significance of this waiver of California Civil Code Section 1542 and/or of any other applicable law relating to limitations on releases. In connection with such waiver and relinquishment, Plaintiffs and all Settlement Class Members do and are deemed to acknowledge that they are aware that they may hereafter discover facts in addition to, or different from, those facts which they now know or believe to be true with respect to the subject matter of this Settlement, but that it is their intention to release fully, finally and

35

US2000 9665239.10

forever all claims against the Released Parties relating to the Offerings, the <u>Hillis</u>

Action, and the <u>Slack</u> Action, and in furtherance of such intention, the release of

all claims will be and remain in effect notwithstanding the discovery or existence

of any such additional or different facts.

**VIII.  Attorneys' Fees and Costs**

   76.    Defendants agree to pay reasonable attorney's fees and costs as

determined by the Court up to $4,000,000.00 (Four Million Dollars and No Cents)

Defendants further agree that they will not oppose any request by Class Counsel

for attorney's fees and costs to the extent such request does not exceed

$4,000,000.00.  In no event shall Defendants be liable for attorney's fees and costs

of more than $4,000,000.00.  That amount includes not only the payment of all

attorney's fees, costs, and expenses to Class Counsel, but also payment for all

attorneys and other persons working under the direction of Class Counsel in the

<u>Hillis</u> and <u>Slack</u> actions.  Class Counsel agrees not to request attorney's fees and

costs exceeding $4,000,000.00.  Defendants shall pay the amount of attorney's

fees and costs approved by the Court (not to exceed $4,000,000.00) within seven

days (7) of the Effective Date.  No other agreement exists between the Parties as

to attorney's fees and costs.

36

US2000 9465239.10

### IX.  Incentive Award Payment to Plaintiffs

77.    In recognition of the time and effort the Plaintiffs Hillis and Slack expended in pursuing the lawsuits, in participating in discovery, in fulfilling their obligations and responsibilities as Class Representatives, and of the benefits conferred on all of the Class Members by the Settlement, Class Counsel will ask the Court to award an Incentive Award to each Plaintiff in an amount not to exceed $7,500.00 (Seven Thousand Five Hundred Dollars) per award. Defendants agree that they will not oppose any request by Class Counsel for Incentive Awards to the extent such requests do not exceed $7,500.00 (Seven Thousand Five Hundred Dollars) per Plaintiff. Defendants shall pay the Incentive Award approved by the Court (not to exceed $7,500.00 (Seven Thousand Five Hundred Dollars) per Plaintiff) within seven days (7) of the Effective Date. No other agreement exists between the Parties as to payments to be made to the Plaintiffs.

### X.  Court Approval

78.    Court Submission: Class Counsel and Defendants' counsel will submit this Settlement Agreement, along with such other supporting papers as may be appropriate, to the Court for preliminary approval of this Settlement Agreement pursuant to Rule 23 of the Federal Rules of Civil Procedure. If the Court declines to grant preliminary approval of this Settlement Agreement and

US2008 9669239.10

to order notice of hearing with respect to the proposed Settlement Class, or if the Court declines to grant final approval to the foregoing after such notice and hearing, this Settlement Agreement will terminate as soon as the Court enters an order unconditionally and finally adjudicating that this Settlement Agreement will not be approved.  In the event the Court grants preliminary approval of the Settlement Agreement, the parties will request that the Court enter a scheduling order setting the dates by which Class Members must Opt-Out of the Settlement and file any objections, as well as schedule the Final Fairness hearing in this matter.

79.    Final Judgment:  The Settling Parties agree that the Settlement is expressly conditioned upon dismissal with prejudice of the Litigation, entry of a Judgment and the Judgment becoming Final.  The Settling Parties will jointly submit a proposed Judgment prior to the Final Fairness hearing.

80.    The Hillis Action was commenced on November 19, 2004 and the Slack Action was commenced on January 18, 2005.  No amendment to the originally filed complaints or other event in the Actions has caused either Action to be recommenced for purposes of the Class Action Fairness Act ("CAFA").  Therefore, no notices are required to be sent under CAFA and the Preliminary Approval Order shall so recite.

38

US2000 9663239.10

## XI.   Termination

81.   Any Party shall have the unilateral and unfettered right to individually terminate this Agreement and the Settlement and declare it null and void, if any of the following conditions occurs:

    i.   The Court (or any other court) requires a Notice Program materially different from the Notice Program outlined in Section IV of this Agreement or as finally agreed upon by the Parties as reflected in the Settlement Agreement;

    ii.   The Court fails to issue a Preliminary Approval Order in accordance with the terms of the Settlement Agreement;

    iii.   The Court fails to enter a Judgment dismissing the <u>Hillis</u> and <u>Slack</u> Actions with prejudice and integrating the material terms of the Settlement Agreement, including but not limited to the scope of the Released Claims and Released Parties;

    iv.   The Judgment is appealed and such Judgment is finally reversed or modified on appeal; and

    v.   The <u>Slack</u> court fails to transfer the <u>Slack</u> Action to this Court.

82.   Each Defendant shall have the unilateral and unfettered right to individually terminate this Agreement and the Settlement and declare it null and

US2000 9665239.10

void if more than 0.7% of the Settlement Class Members who purchased an Offering from that Defendant elect to Opt-Out.

83.    If any of conditions described above occur and any of the Parties elect to terminate the Settlement and the Settlement Agreement then: (i) the Settlement and the Settlement Agreement (including without limitation the class certification provisions thereof) shall have no further force and effect with respect to any Party to the <u>Hillis</u> and <u>Slack</u> Actions and shall not be offered in evidence or used in the <u>Hillis</u> Action, the <u>Slack</u> Action or any other proceeding; (ii) counsel for the Parties shall seek to have any Court orders, filings, or other entries on the Court's file that result from the Agreement, the Settlement and the Settlement Agreement set aside, withdrawn, and stricken from the record; (iii) the Settlement and the Settlement Agreement, and all negotiations, proceedings, and documents prepared, and statements made in connection with either of them, shall be without prejudice to any Party and shall not be deemed or construed to be an admission or confession by any Party of any fact, matter, or proposition of law; and (iv) all Parties to the <u>Hillis</u> Action and the <u>Slack</u> Action shall stand in the same procedural position as if the Settlement and the Settlement Agreement had not been negotiated, made, or filed with the Court.  In such event, the <u>Slack</u> Action will be transferred back to Judge Patel in the Northern District of California without prejudice Fair Isaac's right to request

40

from Judge Patel that the <u>Slack</u> Action be litigated in the Northern District of Georgia.

## XII.  Miscellaneous Provisions

84.    <u>Integration Clause</u>:  This Settlement Agreement contains a full, complete, and integrated statement of each and every term and provision agreed to by and among the Settling Parties and supersedes any prior writings or agreements (written or oral) between or among the Settling Parties, which prior agreements may no longer be relied upon for any purpose.  This Settlement Agreement shall not be orally modified in any respect and can be modified only by the written agreement of the Settling Parties.  In the event a dispute arises between the Settling Parties over the meaning or intent of this Agreement, the Settling Parties agree that prior drafts, notes, memoranda, discussions or any other oral communications or documents regarding the negotiations, meaning or intent of this Agreement shall not be offered or admitted into evidence.  Plaintiffs and Class Counsel acknowledge that, in entering into this Settlement Agreement, they have not relied upon any representations, statements, actions, or inaction by Defendant or its counsel that are not expressly set forth herein.

85.    <u>Headings</u>:  Headings contained in this Agreement are for convenience of reference only and are not intended to alter or vary the construction and meaning of this Agreement.

41

86.    <u>Governing Law</u>: To the extent not governed by the Federal Rules of Civil Procedure, the contractual terms of this Agreement shall be interpreted and enforced in accordance with the substantive law of the State of Georgia without regard to principles of conflict of laws.

87.    <u>Arbitration</u>: By participating in this Settlement, some members of the Settlement Class are waiving their existing rights to pursue individual arbitration claims against Equifax and Fair Isaac for the Released Claims as defined in Paragraph 40. Pursuant to the Terms of Use between Equifax or Fair Isaac and some members of the Class, the parties generally agreed to resolve all claims and disputes by binding arbitration. By participating in the Settlement, neither Equifax, Fair Isaac nor members of the Settlement Class are waiving their rights under the Terms of Use to pursue arbitrations involving claims other than the Released Claims or from seeking to compel arbitration of similar claims that may arise in the future. Nothing in this Agreement shall be deemed to create a right of any Party to seek arbitration.

88.    <u>Mutual Interpretation</u>: The Settling Parties agree and stipulate that this Agreement was negotiated on an "arms'-length" basis between parties of equal bargaining power. Also, the Agreement has been drafted jointly by Class Counsel and counsel for Defendants. Accordingly, this Agreement shall be

42

neutral, and no ambiguity shall be construed in favor of or against any of the Settling Parties.

89.    <u>Notice</u>: Except as otherwise specifically provided herein, whenever any written notice is required by the terms of this Agreement, it shall be deemed effective on the date received, addressed as follows:

If to Plaintiffs or the Class to:

C. Neal Pope
Wade H. Tomlinson, III
Pope, McGlamry, Kilpatrick,
    Morrison & Norwood
1111 Bay Avenue, Suite 450
P.O. Box 2128 (31902-2128)
Columbus, GA 31901

Michael L. McGlamry
Pope McGlamry, Kilpatrick,
    Morrison & Norwood
The Pinnacle, Suite 925
3455 Peachtree Road, N.E.
P.O. Box 191625 (31119-1625)
Atlanta, GA 30326-3243

If to Fair Isaac to:

Charles M. Osborne
Chief Executive Officer
Fair Isaac Corporation
901 Marquette Avenue
Suite 3200
Minneapolis, MN 55402

Frederick Brown
Gibson Dunn & Crutcher
One Montgomery Street
Suite 3100
San Francisco, CA 94104

If to Equifax to:

Kent E. Mast
Corporate Vice President and
    General Counsel
Equifax Inc.
1550 Peachtree Street
Atlanta, GA 30309

A. Stephens Clay
Kilpatrick Stockton LLP
1100 Peachtree Street
Suite 2800
Atlanta, GA 30309

43

US2000 9665239.10

90.    <u>Counterpart Execution</u>:  This Agreement may be executed in any number of counterparts and will be binding when it has been executed and delivered by the last signatory hereto to execute a counterpart.  A facsimile signature shall be deemed to constitute an original signature for purposes of this Agreement.  After execution of counterparts by each designated signatory, Defendants agrees to furnish each Party with a composite conformed copy of this Agreement reflecting all counterparts signatures.

91.    <u>Binding Upon Successors</u>:  This Agreement shall be binding upon and inure to the benefit of the Settling Parties hereof and their representatives, heirs, successors, and assigns.

92.    <u>Severability</u>:  In the event any one or more of the provisions contained in this Agreement shall for any reason be held invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provisions if the Settling Parties and their counsel mutually elect by written stipulation to be filed with the Court within twenty (20) days to proceed as if such invalid, illegal, or unenforceable provisions had never been included in this Agreement.

93.    <u>Warranty of Counsel</u>:  Class Counsel unconditionally represent and warrant that they are fully authorized to execute and deliver this Agreement on behalf of the Class Plaintiff.  Defendants unconditionally represent and warrant

44

that they are fully authorized to execute and deliver this Agreement on behalf of Defendants.

94.    The Parties to this Settlement and their counsel agree that they shall act in good faith and exercise their best efforts to effectuate this Settlement and its Final Approval.

45

US2000 9665239.10

The undersigned Parties have executed this Agreement as of the date first above written.

Dated: February ⌊, 2007

ROBBIE HILLIS

By: _Robbie Hillis_
          Robbie Hillis

Dated: February __, 2007

CHRISTY SLACK

By: _____
          Christy Slack

Dated: February __, 2007

EQUIFAX CONSUMER SERVICES, INC.

By: _____

Its:

Dated: February __, 2007

FAIR ISAAC CORPORATION

By: _____

Its:

The undersigned Parties have executed this Agreement as of the date first above written.

Dated: February ___, 2007            ROBBIE HILLIS

                                     By: _____
                                              Robbie Hillis

Dated: February ⌐, 2007             CHRISTY SLACK

                                     By: _____
                                              Christy Slack

Dated: February ___, 2007            EQUIFAX CONSUMER SERVICES, INC.

                                     By: _____
                                     Its: _____

Dated: February ___, 2007            FAIR ISAAC CORPORATION

                                     By: _____
                                     Its: _____

The undersigned Parties have executed this Agreement as of the date first above written.

Dated: February ___, 2007                ROBBIE HILLIS

                                          By: _____
                                                    Robbie Hillis


Dated: February ___, 2007                CHRISTY SLACK

                                          By: _____
                                                    Christy Slack


Dated: February 5, 2007                   EQUIFAX CONSUMER SERVICES, INC.

                                          By: _____
                                              Kent B. Mast
                                          Its:    Vice President & General Counsel


Dated: February ___, 2007                 FAIR ISAAC CORPORATION

                                          By: _____
                                          Its:

The undersigned Parties have executed this Agreement as of the date first above written.

Dated: February __, 2007          ROBBIE HILLIS

By: _____
                                                            Robbie Hillis

Dated: February __, 2007          CHRISTY SLACK

By: _____
                                                            Christy Slack

Dated: February __, 2007          EQUIFAX CONSUMER SERVICES, INC.

By: _____

Its: _____

Dated: February 5, 2007          FAIR ISAAC CORPORATION

By: _____

Its:  CEO / CFO

APPROVED AS TO FORM:

Dated: February 5, 2007  POPE, McGLAMRY, KILPATRICK,
           MORRISON & NORWOOD LLP
           C. NEAL POPE
           MICHAEL McGLAMRY
           WADE H. TOMLINSON, III


           By: _____

           Attorneys for Robbie Hillis, Christy Slack
           and the Settlement Class


Dated: February 5, 2007  KILPATRICK STOCKTON LLP
           A. STEPHENS CLAY
           CRAIG E. BERTSCHI
           CINDY D. HANSON


           By: _Cindy D Hanson_____

           Attorneys for Equifax Consumer Services,
           Inc.


Dated: February __, 2007  GIBSON, DUNN & CRUTCHER LLP
           FREDERICK BROWN
           REBECCA JUSTICE-LAZARUS
           JAYESH HINES-SHAH


           By: _____

           Attorneys for Fair Isaac Corporation

APPROVED AS TO FORM:

Dated: February __, 2007     POPE, McGLAMRY, KILPATRICK,
                                MORRISON & NORWOOD LLP
                                C. NEAL POPE
                                MICHAEL McGLAMRY
                                WADE H. TOMLINSON, III

                                By: _____

                                Attorneys for Robbie Hillis, Christy Slack
                                and the Settlement Class

Dated: February __, 2007     KILPATRICK STOCKTON LLP
                                  A. STEPHENS CLAY
                                CRAIG E. BERTSCHI
                                CINDY D. HANSON

                                By: _____

                                Attorneys for Equifax Consumer Services,
                                Inc.

Dated: February _5_, 2007     GIBSON, DUNN & CRUTCHER LLP
                                  FREDERICK BROWN
                                REBECCA JUSTICE-LAZARUS
                                JAYESH HINES-SHAH

                                By: _____

                                Attorneys for Fair Isaac Corporation