# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **ROBERT V. TOWNES IV, individually and on Behalf of All Others Similarly Situated,** | ) ) ) | |
| | ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **Case No. 04-1488** |
| **TRANS UNION LLC and TRUELINK, INC.,** | ) ) | |
| **Defendants.** | ) ) | |

## REPLY BRIEF IN FURTHER SUPPORT OF JOINT MOTION FOR FINAL APPROVAL OF SETTLEMENT AND RESPONSE IN OPPOSITION TO OBJECTIONS

William M. Lafferty (#2755)
Jay N. Moffitt (#4742)
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
Wilmington, DE 19899
Phone: (302) 658-9200
Fax: (302) 658-3989
*Counsel for Defendants*

OF COUNSEL:

Michael O'Neil
Paula D. Friedman
**DLA Piper US LLP**
203 North LaSalle Street, Suite 1900
Chicago, IL 60601-1293
Phone: (312) 368-4000
Fax:    (312) 236-7516

August 31, 2007

## TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................1

THE KOROMPAI OBJECTION................................................................................2

    A.    The In-Kind Relief Provided to Settlement Class Members is Valuable ...............2

    B.    Mr. Korompai's "Preference" that the 1.3 Million in Plaintiff Attorneys
           Fees Be Divided Equally Among the Settlement Class Members will Give
           the Settlement Class Less Relief than that Agreed to by the Parties ......................4

THE MILLETT OBJECTION ...................................................................................4

    A.    The Milletts Have No Standing To Object To The Townes Settlement.................6

    B.    The Language Of The Release Adequately Carves Out Individuals
           Who Opt Out Of The Settlement, Thereby Rendering The Millett
           Objection Meritless .................................................................................9

CONCLUSION......................................................................................................12

## TABLE OF AUTHORITIES

Page

### FEDERAL CASES

*In re Cendant Corp. Litig*,
    264 F.3d 201 (3d Cir. 2001)....................................................................1

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 ........................................................................................11

*In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995).......................................................................9

*Int'l Union United Auto., Aerospace and Agric. Implement Workers of Amer. v. GM Corp.*, Nos. 06-1475, 06-2064, 2007 WL 2239208, 1 (6th Cir. Aug. 7, 2007) ........1

*In re Lorazepam and Clorazepate Antitrust Litig.*,
    205 F.R.D. 363 (D.D.C. 2001) .................................................................9

*Murphy v. Employee Pension Plan of Fidelity Mutual Life Insurance Co.*,
    No. 92-6483, 1993 U.S. Dist. LEXIS 739 .................................................6

*Shore v. Parklane Hosiery Co., Inc.*,
    606 F.2d 354 (2d Cir. 1979) ....................................................................9

*In re Sunrise  Sec. Lit.*,
    131 F.R.D. 450.......................................................................................6

### STATE STATUTES

California Consumers Legal Remedies Act, Cal. Civ. Code §§1750-85.........................6

Defendants Trans Union LLC ("Trans Union") and TrueLink, Inc. (now known as TransUnion Interactive, Inc. and referred to herein as "TrueLink") (collectively, the "Defendants"), by their attorneys, submit this Reply in Support of Joint Motion for Final Approval of Settlement and Response in Opposition to Objections to the Stipulation of Settlement entered into by the parties in the above-captioned action (the "Settlement") and state as follows:

## INTRODUCTION

After individually notifying more than 3,868,000 potential settlement class members of the preliminarily-approved Settlement, counsel for the parties have received a total of only three objections, one of which the objector has moved to dismiss (Debbie Ashley), and another of which was filed by individuals specifically excluded from the Settlement Class (Steven and Melody Millett).[1]    (See D.I. 87, 89-91).    As the parties articulated in their opening Brief in Support of Joint Motion for Final Approval of Settlement (the "Opening Brief"), the fact that the parties received a total of only three objections when notice went out to over 3.8 million individuals, "cuts strongly in favor of settlement."    (D.I. 96 p. 32) (citing In re Cendant Corp. Litig, 264 F.3d 201, 234 (3d Cir. 2001); see also Int'l Union United Auto., Aerospace and Agric. Implement Workers of Amer. v. GM Corp., Nos. 06-1475, 06-2064, 2007 WL 2239208, *1 (6th Cir. Aug. 7, 2007) (noting that "less than one half of one percent" of settlement class members objected to settlement).

The objections addressed herein were filed by Edward Korompai ("Mr. Korompai") and Steven and Melody Millett (collectively, "the Milletts").    As this Court is aware, the Milletts

---

[1]    Unless otherwise specified, terms used herein are defined as they are in the Settlement Agreement.

currently have a lawsuit pending against Defendant TrueLink before Judge Robinson, Millett v. TrueLink, Inc., No. 05-599 (the "Millett Action"). In light of this Court's August 30, 2007 Order denying the Milletts' Motion for Leave to Intervene, which ruled that "the Milletts have no interest in this litigation," and stated that "the Court will not hear the Milletts' Objections . . . to the Settlement at the September 11, 2007 Hearing," it appears that the Milletts' objection, if it is considered at all, will be overruled. (D.I. 101).

## THE KOROMPAI OBJECTION

On August 20, 2007, Mr. Korompai filed his two-page Objection to the Settlement and Request to Attend the Fairness Hearing (the "Korompai Objection"). Although not cleanly set forth, it appears to identify two reasons for his objection to the Townes Settlement. (D.I. 91). First, Mr. Korompai objects because he alleges "one-third of the offered settlement is already offered to the public by the defendants on their website." (Id. at ¶(c)). Second, Mr. Korompai objects because he would "prefer that the 1.3 million dollars in plaintiff attorney fees be equally divided among the class members." (Id.) Neither reason is sufficient to derail the Settlement and this Court should reject Mr. Korompai's Objection as meritless.

**A.    The In-Kind Relief Provided to Settlement Class Members is Valuable.**

As an initial matter, the in-kind relief provided under the Settlement gives more relief to the Settlement Class than the finally approved – and related – class settlement in the consolidated cases of Hillis v. Equifax Consumer Services, Inc. and Fair Isaac Corp., No. 1:04 CV 03400 BBM, and Slack v. Fair Isaac Corp et al., No. 3:05 CV 00257 MEJ, pending in the United States District Court for the Northern District of Georgia (the "Equifax/Fair Isaac litigation"), discussed at length in the Opening Brief. (D.I. 96, pp. 5-8). Here, Settlement Class members will receive three free months of the free credit monitoring product, with 24-hour email notice of certain

changes in their credit reports, as well as unlimited access to their credit reports and scores during the three-month subscription, and up to $25,000 in identity theft insurance. (Settlement, Secs. 6.1, 6.2). While TrueLink at times offers **one** free month of credit monitoring to new subscribers who purchase a subscription to the credit monitoring product, that offer requires that the customer give their credit card number and agree to be charged monthly after the initial month. Further, as the parties previously discussed in their Opening Brief, none of the other settlement agreements entered into by Defendants' competitors resolving lawsuits over similar products offer unlimited access to credit reports and credit scores to the Settlement Class during the free subscription period. (D.I. 96, pp. 5-9). Further, by their respective enactment of, and rule-making under, the Fair Credit Reporting Act (the FCRA"), Congress and the Federal Trade Commission (the "FTC") have recognized the value of the credit monitoring offering, as such legislation requires that credit reporting agencies – such as Defendant Trans Union here – make available to consumers one free credit report per year. Accordingly, Settlement Class members here will receive in-kind relief of significant value.

Mr. Korompai also fails to acknowledge the valuable injunctive relief that will be provided to the Settlement Class. Pursuant to the Settlement, the Defendants have agreed to restrictions on their marketing of their Offerings, such as agreeing not to use certain language in marketing their products to consumers. (Settlement, Sec. 5). The Settlement also requires the Defendants to include disclaimers in the Terms and Conditions available on their websites and in their marketing materials. (Id. at ¶5.1.6) Defendants must now expressly advise consumers that they are not credit repair organizations and that they do not offer credit repair services. (Id.) The Defendants must also expressly advise that their credit monitoring product monitors only the

3

credit file of the purchaser and not of anyone else. (Id.) Notably, Mr. Korompai's Objection makes no mention of these significant benefits created by the Settlement.

**B.    Mr. Korompai's "Preference" that the 1.3 Million in Plaintiff Attorneys Fees Be Divided Equally Among the Settlement Class Members will Give the Settlement Class Less Relief than that Agreed to by the Parties.**

The in-kind relief of three months of free credit monitoring agreed to by the parties to the Settlement is currently offered by TrueLink for approximately $9.95/month. (D.I. 80, pp. 16-17). If, as Mr. Korompai suggests, the $1.3 million in plaintiff's attorney's fees and costs that may be awarded under the Settlement were divided equally among the Settlement Class members, each Settlement Class member would receive less than $.50, whereas the value of the in-kind relief agreed to by the parties is approximately $30.00 per person. Further, as the parties have stated previously, based on plaintiff's counsel's efforts, the attorneys fees are believed to be fair and appropriate. Based on the foregoing, Mr. Korompai's suggestion makes little sense and this Court should reject in its entirety Mr. Korompai's Objection.

### THE MILLETT OBJECTION

On August 20, 2007, the Milletts – although specifically excluded from the Settlement Class (Settlement, Sec. 2.24) - filed their Objections of Steven and Melody Millett to Proposed Class Action Settlement (the "Millett Objection").[2] (D.I. 89). To the extent that this Court

---

[2]    The Millett Objection is riddled with references to Expert Reports that the Milletts have submitted in the Millett Action, but which fail to include the basic requirements of Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure. Counsel for Defendants here is also counsel for Defendant TrueLink in the Millett Action and has, by letter, informed the Milletts' counsel of the deficiencies in the Expert Reports. The Milletts' counsel have agreed to provide supplemental reports to address those deficiencies and, as of August 31, 2007, counsel for Defendants has not yet received such reports. TrueLink's rebuttal expert reports are due August 31, 2007. Because the Milletts have not yet provided their supplemental reports, and TrueLink has not taken the witnesses' depositions, TrueLink has not had an opportunity to fully rebut the positions taken by the Milletts' Experts. Accordingly, the Expert Reports attached as Exhibits E and F to the Millett Objection should not be considered by this Court. In any event, the content

considers the Millett Objection, although it has already stated that it will not hear the Objection at the Final Fairness Hearing (D.I. 101), the Defendants briefly respond here.[3]

As noted above and in previous submissions to this Court, the Milletts are currently engaged in litigation against TrueLink in this same Court and regarding the same credit monitoring product at issue in the Townes Action. The Millett Action pending before Judge Robinson, relies almost entirely on a single, isolated statement on TrueLink's TrueCredit website which stated that the credit monitoring product at issue in both the Townes Action and the Millett Action provided "complete identity theft protection." On the web pages allegedly viewed by Objector Melody Millett when purchasing the credit monitoring product, TrueLink advised that its credit monitoring product provided "quarterly access to your credit report" and "weekly email alerts to changes in your credit report," specifying that the credit monitoring product monitored only the credit report of the purchaser and not that of other individuals.

If they are to be believed, however, the Milletts ignored this language and instead relied on a single statement taken out of context, and then used it as the basis for their lawsuit on behalf of both a nationwide class for breach of contract and on behalf of a Kansas state-wide class for

---

of the Milletts' "Expert" Reports are not relevant to the substance of the Milletts' individual objection currently before this Court. For that reason, the Expert Reports should be disregarded.

[3] However, to the extent that any response is necessary at this time, defendants do so below, and reserve their right to more fully address the Milletts' objection if, for example, the Court's August 30, 2007 Order were modified or reversed.

violations of the Kansas Consumer Protection Act (the "KCPA").[4]  The Millett class, however, has not been certified, although the Milletts did file their Motion for Class Certification on August 10, 2007.  (D.I. 124 in <u>Millett</u>).

**A.**    **The Milletts Have No Standing To Object To The Townes Settlement.**

The Milletts are not members of the Settlement Class, and therefore have no standing to object to the Settlement.  Indeed, this Court has already ruled that the Milletts are not members of the Settlement Class, and have no interest in the Settlement.  (D.I. 100, p. 6; D.I. 101).  As a rule, "only class members have standing to object to a proposed class settlement."  <u>In re Sunrise Sec. Lit.</u>, 131 F.R.D. 450, 459 (E.D. Pa. 1990); <u>Murphy v. Employee Pension Plan of Fidelity Mut. Life Ins. Co.</u>, No. 92-6483, 1993 U.S. Dist. LEXIS 739, *10-11 (E.D. Pa. Jan. 27, 1993) ("non-class members do not have standing to object to proposed class settlement agreements . . .").

---

[4]    The Milletts have been unsuccessful in pursuing similar claims against Experian.  In the Milletts' lawsuit against Experian and Consumerinfo.com (collectively "Experian"), No. SACV-05-879-JVS, the U.S. District Court for the Central District of California rejected the Milletts' literal interpretation of language similar to that of TrueLink's Website.  (<u>See</u> D.I. 80 in <u>Townes</u>, pp. 9-10).  In the Experian case, the Milletts asserted claims on behalf of a nationwide class for deceptive marketing in violation of the California Consumers Legal Remedies Act, Cal. Civ. Code §§1750-85 (the "CLRA") and breach of contract.  (D.I. 113 in <u>Experian</u>).  Experian filed a motion for summary judgment on October 24, 2006, seeking dismissal of both claims.  (D.I. 116 in <u>Experian</u>).

The <u>Townes</u> Settlement defines the "Class" as all individuals who from December 1, 1999 through April 16, 2007, purchased "any of the Offerings through Defendants' Websites," (Settlement, Sec. 2.24), and expressly excludes "all persons who are named plaintiffs in any action pending against any of the Defendants on the date of entry of Hearing Order wherein the recovery sought is encompassed by the Released Claims." (Settlement, ¶2.24 (v)). As the Milletts concede, they are the named plaintiffs in a lawsuit against Defendant TrueLink pending in this Court before Judge Robinson for claims arising out of one of the same products at issue in the above-captioned action. Accordingly, based on the foregoing, the Milletts have no standing to object here.

The Milletts' Objection to the Settlement also contravenes the terms of this Court's April 16, 2007 Hearing Order. (D.I. 69). In that Hearing Order, the Court explicitly states that:

> any <u>Class member</u> may be heard and/or appear at the Fairness Hearing to show cause why the proposed Settlement should or should not be approved as fair, reasonable and adequate and why Judgment should or should not be entered thereon; why the Settlement Class should not be certified; or why Class Counsel should or should not be awarded attorneys' fees and payment of expenses in the amounts sought by Class Counsel; *provided, however,* that no <u>Class member</u> shall be heard or be entitled to contest the approval of the terms and conditions of the proposed Settlement, the Judgment to be entered, the certification of the Settlement Class, or Class Counsels' application for an award of attorneys' fees and payment of expenses, unless on or before August 20, 2007, the <u>Class member</u> has served by hand or by first-class mail written objections

---

On December 18, 2006, the Court granted in part Experian's motion for summary judgment, finding that Experian's credit monitoring product performed as promised, and that its marketing of the product did not mislead consumers. The district court found that Experian's credit monitoring product was intended to advise whether a purchaser's Experian credit report had changed in five specific ways commonly associated with identity theft. (<u>Id</u>. at p. 4). The Court further found that "it is clear that there was no offer to search for information that would not appear on a purchaser's credit report," and held that the Milletts' views as to how the product should perform were "impractical and undesirable." (<u>Id</u>.) Based upon similar reasoning, the Court also dismissed the Milletts' California statutory deceptive marketing claims. Even though defendant's website stated that its credit monitoring product will "guard against fraud and identity theft," and will "provide peace of mind," the court held that "no reasonable person would read these statements and take them literally and absolutely." (<u>Id</u>. at p. 6).

(<u>Id</u>. at ¶12) (emphasis added). As set forth above, the Milletts are not members of the Settlement Class in the <u>Townes</u> Action. Therefore, pursuant to established case law and this Court's Hearing Order, the Milletts' objection is not properly before this Court.

Not only do the Milletts lack standing to make their own objection, but they also lack standing to represent a class of people in making an objection to the Settlement. In an apparent acknowledgement that they have no standing to challenge the Settlement, the Milletts filed a Motion for Leave to Intervene in order to establish some other type of standing. (D.I. 72). That motion was premised upon the same argument for standing made in their objection. In their Objection, the Milletts presumptively seek to assert "the interests of the class they represent." (Millett Objection, D.I. 89, p. 2). However, there has been no class certified in the Millett Action, nor have the Milletts' counsel been appointed class counsel. In fact, Judge Robinson *denied* the Milletts' motion to be appointed interim class counsel in the Millett Action. (<u>See</u> D.I. 73 in <u>Millett</u>). In recently denying the Milletts' Motion for Leave to Intervene, this Court noted the proceedings in their own action, and further ruled that the Milletts' wholly speculative "interest" in representing a class not yet certified was insufficient. (<u>See</u> D.I. 100, p.6). Accordingly, because the putative Millett class is entirely subsumed within the <u>Townes</u> Class, counsel for Townes, who **have** been appointed interim class counsel (D.I. 27), represent the interests of the class.

Moreover, because every Settlement Class member (and therefore every member of the putative Millett class) has received individual notice, there is no reason to believe that they cannot adequately decide for themselves whether to object to the Settlement. It is not for the Milletts to unilaterally decide what is in the interest of a subset of the Settlement Class that they have **not** been appointed to represent.

8

The Milletts also have no basis for challenging the settlement as to Trans Union. They devote a tremendous portion of their Objection to attacking the credit bureau industry. (D.I. 89, pp. 9-17). Such arguments relating to the "credit reporting process," "problems arising from incomplete information in the consumer's credit report" and the "failure to properly match data" are directed at Defendant Trans Union, which is a credit bureau. Defendant TrueLink is not a credit bureau. However, these arguments — even if premised upon accurate, admissible facts — which they are not — fail for two simple reasons. First, the Milletts previously sued Trans Union, making many of these same claims under the FCRA. However, the Milletts voluntarily dismissed these claims. Second, under the terms of the Settlement, claims arising under the FCRA are not released. (Settlement, Sec. 2.20) ("Released claims do not include claims under the [FCRA] . . . "). Therefore, such issues raised by the Milletts are wholly irrelevant to the Settlement and the merits of the Millett Objection.

**B.    The Language Of The Release Adequately Carves Out Individuals Who Opt Out Of The Settlement, Thereby Rendering The Millett Objection Meritless.**

The Milletts argue that they believe that "the interests of the class of persons for whom they seek certification [in the Millett Action] will be substantially impaired by the Settlement Agreement." (D.I. 89, p.3). As this Court points out in its August 30, 2007 Memorandum Opinion, the Milletts, however, fail to recognize that individuals who believe that they will be "substantially impaired" by the Townes Settlement may easily exclude themselves, or opt-out, of the settlement. (D.I. 100, p. 7). "The presence of the opt-out provision prevents the impairment of any legal interests held by those who may also be part of the proposed putative class in the Millett action." (D.I. 100 p. 7)(citing In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig., 55 F.3d 768, 792 (3d Cir. 1995); In re Lorazepam and Clorazepate Antitrust Litig., 205 F.R.D. 363, 367 (D.D.C. 2001); and Shore v. Parklane Hosiery Co., Inc., 606 F.2d 354, 357-358 (2d Cir. 1979)).

The Release in the Townes Settlement explicitly provides that it releases "any and all claims, actions, demands, causes of action, suits, obligations, damages, rights or liabilities" of the **named Plaintiff or Settlement Class members**.  (Settlement, Sec. 2.20)(emphasis added).  In citing the scope of "Released Claims" under the Settlement, the Milletts ignore the definition of "Settlement Class," which specifically and explicitly <u>excludes</u> "all persons who Opt-Out." (<u>Id</u>. at Section 2.24).[5] Further, the email notice, the settlement website and the long-form notice all included prominently displayed language alerting Settlement Class members of their ability to opt-out of the Settlement. Settlement Class members could easily follow the directions in the notices provided via email, long-form notice or available on the Settlement website created specifically to administer this Settlement.

1.  *The Notice Program Was Reasonably Calculated To Apprise Settlement Class Members of Their Opportunity to Opt Out.*

As detailed in the Opening Brief, the Notice program outlined in the Settlement and Hearing Order, was multi-faceted and designed to provide each potential Settlement Class member with individual notice of the Settlement and their options to participate in, or to opt-out of, the Settlement.    Through E-Mail Notice, follow-up Postcard Notice, and a dedicated Settlement Website (and various means of publishing the Settlement Website and directing potential class members to it), it is believed that at least 3.8 million potential members of the Settlement Class have received individual notice of the Settlement, including their opportunity to opt-out or to object to the Settlement, the manner for doing so, and the binding effect of a class judgment on class members who do not opt-out.    (<u>See</u> Decl. of Jennifer Keough (D.I. 94), ¶¶ 4-5).  Such notice is more than sufficient to meet the demands of due process, and the requirement that individual notice be given to class members whose contact information can be ascertained

---

[5]  As noted above, the "Settlement Class" also excludes the Milletts, as persons who are named plaintiffs in a pending action against TrueLink.  (Settlement, Sec. 2.24).

through reasonable effort.   <u>Eisen v. Carlisle & Jacquelin</u>, 417 U.S. 156, 173 (1974); <u>See generally</u> Opening Brief (D.I. 96) at pp. 21-26 .  Significantly, no objector has suggested that the notice program was insufficient.[6]

The Milletts fail to recognize the significance of the fact that while over 3.8 million people received individual notice of the Settlement, there were effectively only 2 objections: Mr. Korompai's and the Milletts'.  This fact undercuts the Milletts' argument that the release is too broad, and that the Settlement may impair the class claims being pursued in the <u>Millett</u> Action.

     2.     *The Proposed Release is not "Ureasonably Broad."*

Notwithstanding the ability of any Class member to opt out of the Settlement, the Milletts attempt to mischaracterize the breadth of the proposed release vis-à-vis the breadth of the class alleged in the <u>Townes</u> Complaint.  Specifically, the Milletts argue that "the problem with the Settlement Agreement is that it purports to settle claims that are not the subject of the underlying complaint."  (D.I. 89, p. 25).  This is simply not true.  The claims asserted in the <u>Townes</u> and <u>Millett</u> Actions are not completely separate;  both involve TrueLink's sale of credit monitoring to consumers.

Specifically, the class alleged in the <u>Townes</u> Complaint included all persons who purchased anything from either Trans Union or TrueLink at any time after December 1, 1999. (D.I. 1, p.6) ("[a]ll persons who, at any time after [December 1, 1999], purchased any 'consumer' or 'personal' service from a Defendant . . .").  This included, in particular, purchasers

---

[6]  Debbie Ashley filed an objection (D.I. 87) that included a suggestion that the notice was insufficient with regard to the specific attorneys' fees requested by Class counsel.  However, Ms. Ashley has since effectively withdrawn that objection by voluntarily moving for its dismissal.  (D.I. 90).

of Credit Monitoring from TrueLink, as well as purchasers of other offerings, such as credit reports, credit scores, credit analyses, etc. In contrast, the class alleged in the <u>Millett</u> Complaint includes only such persons who purchased Credit Monitoring from TrueLink on or after September 9, 2001. (D.I. 76 in <u>Millett</u>, pp. 22-23). As such, and as defense counsel advised the Court and the Milletts back in January 2006, the alleged <u>Millett</u> class is entirely subsumed within the class alleged in the <u>Townes</u> Action.

Contrary to the Milletts' unsupported assertions, the Settlement does not reach beyond the claims that were at issue in the <u>Townes</u> Complaint. In fact, the Settlement and the release contemplated therein, is actually narrower insofar as it does not encompass claims arising from defendants' sale of credit reports or other products or services not specifically identified as "Offerings" in the Settlement.

## CONCLUSION[7]

WHEREFORE, for all the foregoing reasons, defendants Trans Union LLC and TrueLink, Inc. (now known as Trans Union Interactive, Inc.), respectfully request that this Court reject all of the objections as meritless and grant final approval of the <u>Townes</u> Settlement.

---

[7] In addition to the foregoing points in response to the objections, Defendants incorporate by reference its previous submissions to the Court in support of the Joint Motion For Final Approval Of Settlement and in opposition to the Milletts' Motion to Intervene, to wit: the Joint Motion for Final Approval of Settlement, Brief in Support of Joint Motion for Final Approval of Settlement and all supporting Declarations (D.I. 95-97); Defendants' Brief in Opposition to Motion for Leave to Intervene, all supporting Declarations, Defendants' Motion for Leave to File the Attached Supplemental Brief in Opposition to Motion for Leave to Intervene and the Supplemental Brief in Opposition to Motion for Leave to Intervene itself. (D.I. 77, 78, 80, 81, 84, 85, 101).

**TRANS UNION, LLC and TRUELINK, INC.**


By: /s/ William M. Lafferty
      William M. Lafferty (#2755)
      Jay N. Moffitt (#4742)
      Morris, Nichols, Arsht & Tunnell LLP
      1201 N. Market Street
      Wilmington, DE 19899
      Phone: (302) 658-9200
      Fax: (302) 658-3989


OF COUNSEL:

Michael O'Neil
Paula D. Friedman
DLA Piper US LLP
203 North LaSalle Street, Suite 1900
Chicago, IL 60601-1293
Phone: (312) 368-4000
Fax:    (312) 236-7516


August 31, 2007